# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                           No. CR 10-1915 JB

MYRON HARRY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the on Defendant Myron Harry's Motion and Memorandum to Compel Investigative Notes and Early Disclosure of Jenks Material, filed August 31, 2012 (Doc. 85)("Motion to Compel").  The Court held a hearing on September 19, 2012. The primary issues are: (i) whether the Court should compel the production of investigative notes in the possession of Plaintiff United States of America which relate to interviews the United States conducted of potential trial witnesses; and (ii) whether the Court should compel the production of the evidence Harry seeks no later than thirty days before trial.  The Court will grant in part and deny in part Harry's Motion to Compel.  The United States must turn over to Harry any investigative notes which contain statements made by witnesses whom the United States calls at trial.  The United States may redact the notes so that only the witnesses' statements, whether as quoted or as annotated second-hand by the interviewer, are turned over to Harry.  The United States must turn over these statements, at the latest, after those witnesses testify at trial, and must do so earlier, if doing so would create a reasonable doubt of Harry's guilt.

**FACTUAL BACKGROUND**

On May 6, 2010, Harry allegedly sexually abused Jane Doe, an adult female, who was incapable of understanding the nature of Harry's conduct and physically incapable of declining participation in the sexual act Harry committed.  See United States' Response to Defendant's Motion and Memorandum to Compel Investigative Notes and Early Disclosure of Jencks Material at 1, filed September 14, 2012 (Doc. 89)("Response").  Harry allegedly entered a room at a residence where a number of females were sleeping after a social party, and had vaginal intercourse with Jane Doe while she was asleep in the early morning hours of May 6, 2010.  See Response at 1.  A witnesses saw Harry on top of Jane Doe.  After being confronted, Harry apologized and quickly left the residence.  See Response at 1.  Harry asserts that he was "blacked out" from alcohol intoxication at the time.  Response at 2.  Harry's DNA was found inside Jane Doe's vagina.  See Response at 2.

**PROCEDURAL BACKGROUND**

Harry is charged with criminal penetration of an adult who was incapable of consenting.  See Indictment, filed June 24, 2010 (Doc. 14); 18 U.S.C. §§ 1153(a), 2241.  Specifically, on June 24, 2010, a grand jury indicted Harry on a single count of sexual abuse in violation of 18 U.S.C. §§ 1153, 2242(2), and 2246(A).  See Indictment at 1.  Trial in this matter is presently set for March 4, 2013, at 9:00 a.m.  See Agreed Order to Vacate and Reset Trial and Extend the Time for the Filing of Pre-Trial Motions, filed January 16, 2013 (Doc. 110).

Harry moves the Court to compel the United States to produce "investigative notes taken by the prosecution's witnesses and any law enforcement officer who has been involved in this case."  Motion to Compel ¶ 1, at 1.  Specifically, he seeks all "notes taken at any time by any law

enforcement officer since May 6, 2010, including the notes taken by the forensic examiners."

Motion to Compel at 6.   He also moves the Court to compel the production, at least thirty days

before trial, of statements of witnesses "that would normally be subject to disclosure under

Jencks,[1] such as grand jury testimony."   Motion to Compel at 6.   See Motion to Compel ¶ 11, at 3

(citing 18 U.S.C. § 3500, Fed. R. Crim. P. 16, United States v. Vella, 562 F.2d 275 (3d Cir. 1977);

United States v. Harris, 543 F.2d 1247 (9th Cir. 1976)).

Harry asserts that law enforcement officers' notes "form the basis for reports and

recollection and tend to be recorded contemporaneously to the investigation which forms the basis

for this prosecution."   Motion to Compel ¶ 2, at 1.   Harry asserts that these notes are maintained

pursuant to standards and protocols.   See Motion to Compel ¶ 3, at 1 (citing United States v.

Harrison, 542 F.2d 421 (D.C. Cir. 1975)).   Harry represents that he cannot obtain these notes

absent a Court order, because they are in the United States' exclusive control.   See Motion to

Compel ¶ 4, at 1.   Harry notes that the United States possesses greater resources than he does.

See Motion to Compel ¶¶ 5, 7-8, 10 at 2-3.   Harry argues that, absent "early disclosure of the

Jenks material, the defense cannot competently prepare effective cross-examination of prosecution

witnesses and will have no choice but to ask for trial recess [sic]."   Motion to Compel ¶ 13, at 3.

Harry asserts that, because he will not be in trial until "over two years after the events" giving rise

to his Indictment, the importance of disclosing the documents he requests is of "greater

---

[1] In Jencks v. United States, 353 U.S. 657 (1957), the Supreme Court of the United States held that a criminal defendant in a federal prosecution has the right to any "relevant statements or reports" in the United States' possession relating to its witnesses and "touching the subject matter of their testimony at trial." 353 U.S. at 671-72.   This holding was codified in 18 U.S.C. § 3500, which provides that the United States does not have to produce the statements or reports until after a witness testifies at trial.   See 18 U.S.C. §§ 3500(a),(b).

significance."   Motion to Compel at 4.   Harry asserts that the law enforcement report which the United States disclosed to him does not contain the information in officer's notes used in preparation of the report.   Harry contends that the United States' redaction of officer's notes "from the discovery provided makes it extremely difficult for the defense to effectively exercise its rights to interview non-law enforcement witnesses."   Motion to Compel at 6.   Harry contends that, because he does not have the benefit of a pre-trial interviews, "any reasonable evidence that may lend to exculpatory evidence or enhance the prospects for a fair trial should be disclosed." Motion to Compel at 6.

The United States opposes Harry's Motion to Compel.   The United States asserts that Harry already has "all the discovery in the case including early copies of grand jury testimony . . . of each witness who testified in the case," and informs the Court that it "has adopted a liberal approach to discovery in this case and will continue to do so."   Response at 2.   The United States contends that Harry's Motion to Compel, however, "goes beyond the scope of discovery and . . . should be denied."   Response at 2.   The United States asserts that Harry has not suggested that there has been impropriety in the discovery process.   See Response at 2.   The United States further argues that the "mere possibility . . . that the agents' notes may contain Brady[2] material is insufficient to compel their production."   Response at 3.   The United States asserts that Harry has not shown that any law enforcement officer's notes contain "exculpatory and material information . . . that . . . was not included in a formalized report generated after the interview."   Response at 3 (citing United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986)).   The United States

_____

    [2] In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."   373 U.S. at 87.

further contends that "'most courts . . . have held that investigative notes, made in the course of interviewing witnesses, that are later incorporated in the agent's formal report, are not statements within the meaning of the <u>Jencks</u> Act.'"   Response at 4 (quoting <u>United States v. Lujan</u>, 530 F. Supp. 2d 1224, 1266 (D.N.M. 2008)(Brack, J.)).   The United States argues that the Jencks Act, 18 U.S.C. § 3500, requires it to produce a witnesses' testimony only after the witness has testified on direct examination.   <u>See</u> Response at 4 (citing 18 U.S.C. § 3500(a)).   The United States asserts that the purpose of the Jencks Act is to allow a defendant to have access to material for the purpose of impeaching a witness, not for pretrial preparation, as Harry requests.   <u>See</u> Response at 5 (citing 18 U.S.C. § 3500(a); <u>Palermo v. United States</u>, 360 U.S. 343, 349 (1959); <u>United States v. Chanthadara</u>, 230 F.2d 1237, 1254 (10th Cir. 2000)).

The United States "agrees that pursuant to Federal Rule of Criminal Procedure 16 (a)(1)(B)(ii), Defendant is entitled to the portion of any 'rough notes' containing the substance of any relevant oral statement he made to a known government agent."   Response at 5.   The United States states that it will produce any such material, but also maintains that, because Harry's statement was recorded, the need to take notes was "obviated under the circumstances." Response at 5-6.

The Court held a hearing on September 19, 2012.   <u>See</u> Transcript of Hearing, taken September 19, 2012 ("Tr.").[3]   The Court noted that the United States has already produced copies of the grand-jury testimony, and any physical evidence, so the only issue is whether Harry is able to compel the production of certain Federal Bureau of Investigation ("FBI") agents' notes.   Tr. at

---

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and/or line numbers.

4:13-23 (Court).   The Court stated that, if the United States represents that there is no exculpatory information in the FBI agents' handwritten notes, then the notes are not discoverable under Brady v. Maryland, 373 U.S. 83 (1963).   See Tr. at 5:1-4 (Court).   The Court noted, however, that, if there were witness statements in the handwritten notes, the United States would have to turn those over, but only after the witness testifies on direct examination.   See Tr. at 5:4-16 (Court).   Harry expressed that he is most concerned about having notes from FBI agents' interviews of individuals at the party when the incident allegedly took place.   See Tr. at 6:4-17 (Court, Samore).   The United States expressed concern about turning over all of the notes containing witness statements, but the Court indicated that it did not know why all notes containing witness statements would not be discoverable.   See Tr. at 7:4-20 (Nayback, Court).

The Court inquired whether Harry required notes from interviews with all of the witnesses or just some particular witnesses.   See Tr. at 8:15-18 (Court).   Harry stated that he is most concerned about having the notes from the young people at the party when the incident allegedly occurred.   See Tr. at 8:19-21 (Samore).   The Court suggested that the United States produce the portions of the interview notes containing statements from only the witnesses the United States intended to call at trial.   See Tr. at 9:22-4 (Court).   Harry stated that that product would be sufficient for him.   See Tr. at 10:18-20 (Samore).   The Court noted that it will not require the United States to produce those documents in any particular time frame before trial.   See Tr. at 10:21 (Court).

## LAW REGARDING THE UNITED STATES' DUTY TO DISCLOSE IN CRIMINAL CASES

During a criminal prosecution, the Federal Rules of Criminal Procedure and the United States Constitution impose upon the United States an obligation to disclose certain evidence to a

criminal defendant.   Rule 16 of the Federal Rules of Criminal Procedure is one source that imposes such a duty on the United States.   The Due Process Clause of the United States Constitution is another source imposing a duty to disclose on the United States.   See U.S. Const. amend. V.

     **1.**     **Rule 16.**

Rule 16 of the Federal Rules of Criminal Procedure provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
>     (i)     the item is material to preparing the defense;
>
>     (ii)    the government intends to use the item in its case-in-chief at trial; or
>
>     (iii)   the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).   Criminal defendants may not, however, embark on a "broad or blind fishing expedition among documents possessed by the Government." Jencks v. United States, 353 U.S. 657, 667 (1957)(quoting Gordon v. United States, 344 U.S. 414, 419 (1953)). Rule 16(a)(2) provides, in part, that rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2).   The Supreme Court has interpreted the term "defense" in this statute as referring to "an argument in response to the prosecution's case in chief."   United States v. Armstrong, 517 U.S. 456, 462 (1996)("[W]e conclude that in the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief."). Additionally, rule 16 does not require the United States to produce "reports, memoranda, or other

internal government documents. . . [or] statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."   Fed. R. Crim. P. 16 (a)(2).

    2.    **Due Process Clause.**

    "The Due Process Clause of the Constitution requires the United States to disclose information favorable to the accused that is material to either guilt or to punishment."   United States v. Padilla, No. CR 09-3598, 2011 WL 1103876, at *5 (D.N.M. Mar. 14, 2011)(Browning, J.).   In Brady v. Maryland, the Supreme Court explained that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."   373 U.S. at 87.   In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court extended the prosecution's disclosure obligation to evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory.   See 405 U.S. at 153; United States v. Torres, 569 F.3d 1277, 1282 (10th Cir. 2009)("Impeachment evidence is considered exculpatory for Brady purposes."); Douglas v. Workman, 560 F.3d 1156, 1172-73 (10th Cir. 2009)("[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [United States'] witnesses by showing bias and interest.'" (quoting United States v. Bagley, 473 U.S. 667, 676 (1985))); United States v. Abello-Silva, 948 F.2d 1168, 1179 (10th Cir. 1991)("Impeachment evidence merits the same constitutional treatment as exculpatory evidence.").[4]   Finally, the

_____

    [4] In the context of voluntariness of guilty pleas, the Supreme Court has drawn a distinction by stating: "It is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant."   United States v. Ruiz, 536 U.S. 622, 630 (2002).

Supreme Court has refined <u>Brady v. Maryland</u> and clarified that it is not necessary that a defendant request exculpatory evidence; "regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  <u>Kyles v. Whitley</u>, 514 U.S. 419, 433 (1995)(quoting <u>United States v. Bagley</u>, 473 U.S. at 682).  <u>See</u> <u>Douglas v. Workman</u>, 560 F.3d at 1172 ("The government's obligation to disclose exculpatory evidence does not turn on an accused's request."); <u>United States v. Summers</u>, 414 F.3d 1287, 1304 (10th Cir. 2005)("[T]he prosecution has an affirmative duty to disclose exculpatory evidence clearly supporting a claim of innocence even without request."). "[T]he Due Process Clause does not require the government to disclose before trial the names of its witnesses, just so the defense can have sufficient time to investigate their backgrounds for

---

In the context of voluntariness of guilty pleas, the Tenth Circuit has drawn a distinction between evidence that has only impeachment value, and evidence that has exculpatory value as to the defendant's guilt or innocence for the charged offense:

> <u>Ruiz</u> is distinguishable in at least two significant respects.  First, the evidence withheld by the prosecution in this case is alleged to be exculpatory, and not just impeachment, evidence.  Second, Ohiri's plea agreement was executed the day jury selection was to begin, and not before indictment in conjunction with a "fast-track" plea.  Thus, the government should have disclosed all known exculpatory information at least by that point in the proceedings.  By holding in <u>Ruiz</u> that the government committed no due process violation by requiring a defendant to waive her right to impeachment evidence before indictment in order to accept a fast-track plea, the Supreme Court did not imply that the government may avoid the consequence of a <u>Brady</u> violation if the defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession.

<u>United States v. Ohiri</u>, 133 F. App'x 555, 562 (10th Cir. 2005)(unpublished).  Because both the Supreme Court and the Tenth Circuit have drawn a distinction between exculpatory and impeachment evidence in the context of voluntariness of guilty pleas, the Court will also draw a distinction between the two categories of evidence.

impeachment information."   United States v. Ashley, 274 F. App'x 693, 697 (10th Cir. 2008)(unpublished).[5]   See Weatherford v. Bursey, 429 U.S. 545, 559 (1977)("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably.").

   **a.** **Timing of the Disclosure.**

  The prosecution's obligation to disclose evidence under Brady v. Maryland can vary depending on the phase of the criminal proceedings and the evidence at issue.   As a general matter, "[s]ome limitation on disclosure delay is necessary to protect the principles articulated in Brady v. Maryland."   United States v. Burke, 571 F.3d 1048, 1054 (10th Cir. 2009).   The Tenth Circuit has recognized that "[i]t would eviscerate the purpose of the Brady rule and encourage gamesmanship were we to allow the government to postpone disclosures to the last minute, during trial."   United States v. Burke, 571 F.3d at 1054.   "[T]he belated disclosure of impeachment or exculpatory information favorable to the accused violates due process when an 'earlier disclosure would have created a reasonable doubt of guilt.'"   United States v. Burke, 571 F.3d at 1054 (quoting United States v. Young, 45 F.3d 1405, 1408 (10th Cir. 1995)).   As the Tenth Circuit has stated:

  Where the district court concludes that the government was dilatory in its

---

   [5] United States v. Ashley is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .   However, if an unpublished opinion . . .   has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."   United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that United States v. Ashley has persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

> compliance with Brady, to the prejudice of the defendant, the district court has discretion to determine an appropriate remedy, whether it be exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, or even mistrial.

United States v. Burke, 571 F.3d at 1054.   On the other hand, "not every delay in disclosure of Brady material is necessarily prejudicial to the defense." United States v. Burke, 571 F.3d at 1056.   "To justify imposition of a remedy, the defense must articulate to the district court the reasons why the delay should be regarded as materially prejudicial." United States v. Burke, 571 F.3d at 1056.   Courts should, "[w]hen assessing the materiality of Giglio information, . . . consider the significance of the suppressed evidence in relation to the entire record." United States v. Gonzalez-Montoya, 161 F.3d 643, 650 (10th Cir. 1998).

When a prosecutor's obligations under Brady v. Maryland are triggered, however, they "continue[] throughout the judicial process." Douglas v. Workman, 560 F.3d at 1173.   For instance, the obligation to disclose material under Brady v. Maryland can arise during trial. See United States v. Headman, 594 F.3d at 1183 (10th Cir. 2010)("Although Brady claims typically arise from nondisclosure of facts that occurred before trial, they can be based on nondisclosure of favorable evidence (such as impeachment evidence) that is unavailable to the government until trial is underway.").   Additionally, the disclosure obligation continues even while a case is on direct appeal. See United States v. Headman, 594 F.3d at 1183; Smith v. Roberts, 115 F.3d 818, 819, 820 (10th Cir. 1997)(applying Brady v. Maryland to an allegation that the prosecutor failed to disclose evidence received after trial but while the case was on direct appeal).

The Supreme Court has held that the restrictions from Brady v. Maryland do not require "preguilty plea disclosure of impeachment information." United States v. Ruiz, 536 U.S. 622, 629 (2002)("We must decide whether the Constitution requires that preguilty plea disclosure of

- 11 -

impeachment information. We conclude that it does not.").   The Supreme Court recognized that "impeachment information is special in relation to the <u>fairness of a trial</u>, not in respect to whether a plea is <u>voluntary</u>."   536 U.S. at 632 (emphasis in original).   It acknowledged that, "[o]f course, the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be," but concluded that "the Constitution does not require the prosecutor to share all useful information with the defendant." 536 U.S. at 632.   It stated: "It is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant."   536 U.S. at 630.   It further related:

> [T]his Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor.

<u>United States v. Ruiz</u>, 536 U.S. at 630.   The Supreme Court concluded that "a constitutional obligation to provide impeachment information during plea bargaining, prior to entry of a guilty plea, could seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice."   <u>United States v. Ruiz</u>, 536 U.S. at 630.

The Tenth Circuit has reiterated these principles from <u>United States v. Ruiz</u>:

> Despite these representations of a knowing and voluntary plea in the plea agreement and at the plea colloquy, Mr. Johnson asserts that his plea was not knowing and voluntary because he did not know that he was giving up a claim that the government failed to disclose impeachment evidence.   The Supreme Court, however, foreclosed this exact argument in <u>United States v. Ruiz</u>, by holding that the government has no constitutional obligation to disclose impeachment

- 12 -

> information before a defendant enters into a plea agreement. Ruiz emphasized that "impeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary." Rather, "a waiver [is] knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances-even though the defendant may not know the specific detailed consequences of invoking it." Mr. Johnson understood that he was giving up his right to cross examine government witnesses. He therefore generally knew what he was giving up, and his appeal waiver was not unknowing or involuntary.

United States v. Johnson, 369 F. App'x 905, 906 (10th Cir. 2010)(unpublished). The Tenth Circuit has stated in another case: "As the Supreme Court stated in United States v. Ruiz, '[t]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.'" United States v. Dighera, 217 F. App'x 826, 828 (10th Cir. 2007)(unpublished)(citation omitted). The Tenth Circuit, in an unpublished opinion, however, held that the standard outlined in United States v. Ruiz does not apply to exculpatory evidence but rather only to impeachment evidence:

> Ruiz is distinguishable in at least two significant respects. First, the evidence withheld by the prosecution in this case is alleged to be exculpatory, and not just impeachment, evidence. Second, Ohiri's plea agreement was executed the day jury selection was to begin, and not before indictment in conjunction with a "fast-track" plea. Thus, the government should have disclosed all known exculpatory information at least by that point in the proceedings. By holding in Ruiz that the government committed no due process violation by requiring a defendant to waive her right to impeachment evidence before indictment in order to accept a fast-track plea, the Supreme Court did not imply that the government may avoid the consequence of a Brady violation if the defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession.

United States v. Ohiri, 133 F. App'x 555, 562 (10th Cir. 2005)(unpublished). The Tenth Circuit qualified its holding in United States v. Ohiri, stating that the case presented "unusual circumstances." United States v. Ohiri, 133 F. App'x at 562. Additionally, the prosecution is not required to disclose impeachment evidence before a suppression hearing. See United States

v. Harmon, 871 F. Supp. 2d 1125, 1166-1170. 1173-74 (D.N.M. 2012)(Browning, J.)(citing

United States v. Ruiz, 536 U.S. at 629, 632); United States v. Johnson, 117 F.3d 1429, 1997 WL

381926, at *3 (10th Cir. 1997)(unpublished table decision)).

      **b.**        **Material Exculpatory Evidence.**

The holding in Brady v. Maryland requires disclosure only of evidence that is both

favorable to the accused, and "material either to guilt or to punishment."  373 U.S. at 87.

"Evidence is material only if there is a reasonable probability that, had the evidence been disclosed

to the defense, the result of the proceeding would have been different."  United States v. Bagley,

473 U.S. at 682.  See United States v. Allen, 603 F.3d 1202, 1215 (10th Cir.), cert denied 131

S.Ct. 680 (2010).  A "reasonable probability" is a "probability sufficient to undermine confidence

in the outcome."  United States v. Bagley, 473 U.S. at 682 (internal quotation marks omitted).

The Tenth Circuit has noted that "[t]he mere possibility that evidence is exculpatory does not

satisfy the constitutional materiality standard."  United States v. Fleming, 19 F.3d 1325, 1331

(10th Cir. 1994).  The Tenth Circuit has also found that "[d]uplicative impeachment evidence is

not material."  Douglas v. Workman, 560 F.3d at 1173.  "To be material under Brady,

undisclosed information or evidence acquired through that information must be admissible."

Banks v. Reynolds, 54 F.3d 1508, 1521 n.34 (10th Cir. 1995)(quoting United States v. Kennedy,

890 F.2d 1056, 1059 (9th Cir. 1989)).

The Supreme Court, in Cone v. Bell, 556 U.S. 449 (2009), recently noted:

> Although the Due Process Clause of the Fourteenth Amendment, as interpreted by Brady, only mandates the disclosure of material evidence, the obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations.  See Kyles, 514 U.S. at 437 ("[T]he rule in Bagley (and, hence, in Brady) requires less of the prosecution than the ABA Standards for Criminal Justice Prosecution Function and Defense Function 3-3.11(a)

(3d ed. 1993)”).  <u>See</u> <u>also</u> ABA Model Rule of Professional Conduct 3.8(d)
(2008)(“The prosecutor in a criminal case shall” “make timely disclosure to the
defense of all evidence or information known to the prosecutor that tends to negate
the guilt of the accused or mitigates the offense, and, in connection with sentencing,
disclose to the defense and to the tribunal all unprivileged mitigating information
known to the prosecutor, except when the prosecutor is relieved of this
responsibility by a protective order of the tribunal”).

556 U.S. at 470 n.15.   Favorable evidence is only material and thus subject to mandated

disclosure when it “could reasonably be taken to put the whole case in such a different light as to

undermine confidence in the verdict.”   <u>Cone v. Bell</u>, 556 U.S. at 470 (quoting <u>Kyles v. Whitley</u>,

514 U.S. at 435).

The burden is on the United States to produce exculpatory materials; the burden is not on

the defendant to first point out that such materials exist.   <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. at 437

(stating that the prosecution has an affirmative duty to disclose evidence, because “the

prosecution, which alone can know what is undisclosed, must be assigned the consequent

responsibility to gauge the likely net effect of all such evidence and make disclosure when the

point of ‘reasonable probability’ is reached.”); <u>United States v. Deutsch</u>, 475 F.2d 55, 57 (5th Cir.

1973)(granting a mistrial for failure to produce personnel files of government witnesses),

<u>overruled on other grounds by</u> <u>United States v. Henry</u>, 749 F.2d 203 (5th Cir. 1984); <u>United States</u>

<u>v. Padilla</u>, 2011 WL 1103876, at *6.   The United States’ good faith or bad faith is irrelevant.   <u>See</u>

<u>Brady v. Maryland</u>, 373 U.S. at 87; <u>United States v. Quintana</u>, 673 F.2d at 299 (“Under <u>Brady</u>, the

good or bad faith of government agents is irrelevant.”).   “This means, naturally, that a prosecutor

anxious about tacking too close to the wind will disclose a favorable piece of evidence.”   <u>Kyles v.</u>

<u>Whitley</u>, 514 U.S. at 439.   The United States has an obligation to “volunteer exculpatory evidence

never requested, or requested only in a general way,” although the obligation only exists “when

suppression of the evidence would be of sufficient significance to result in the denial of the defendant's right to a fair trial." Kyles v. Whitley, 514 U.S. at 433 (internal quotation marks omitted). On the other hand, "[t]he Constitution, as interpreted in Brady, does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant." Smith v. Sec'y of N.M. Dep't of Corr., 50 F.3d 801, 823 (10th Cir. 1995). Additionally, "[t]he constitution does not grant criminal defendants the right to embark on a broad or blind fishing expedition among documents possessed by the" United States. United States v. Mayes, 917 F.2d 457, 461 (10th Cir. 1990)(quoting Jencks v. United States, 353 U.S. at 667)(internal quotation marks omitted).

### c. Evidence Must Be in the United States' Possession.

"It is well settled that there is no 'affirmative duty upon the government to take action to discover information which it does not possess.'" United States v. Tierney, 947 F.2d 854, 864 (8th Cir. 1991)(quoting United States v. Beaver, 524 F.2d 963, 966 (5th Cir. 1975)). Accord United States v. Kraemer, 810 F.2d 173, 178 (8th Cir. 1987)(explaining that the prosecution is not required "to search out exculpatory evidence for the defendant"); United States v. Badonie, No. CR 03-2062 JB, 2005 WL 2312480, at *3 (D.N.M. Aug. 29, 2005)(Browning, J.). On the other hand, "a prosecutor's office cannot get around Brady by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case." Carey v. Duckworth, 738 F.2d 875, 878 (7th Cir. 1984). Under Brady v. Maryland, "[a] prosecutor must disclose information of which it has knowledge and access." United States v. Padilla, 2011 WL 1103876, at *7 (citing United States v. Bryan, 868 F.2d 1032, 1037 (9th Cir. 1989)). "A prosecutor may have a duty to search files maintained by other 'governmental agencies closely aligned with the

- 16 -

prosecution' when there is 'some reasonable prospect or notice of finding exculpatory evidence.'" United States v. Padilla, 2011 WL 1103876, at *7 (quoting United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992)).   A prosecutor does not have a duty, however, to obtain evidence from third parties.   See United States v. Combs, 267 F.3d 1167, 1173 (10th Cir. 2001)(observing that Brady v. Maryland does not oblige the government to obtain evidence from third parties). See also United States v. Huerta-Rodriguez, No. CR 09-3206, 2010 WL 3834061 JB, at **4, 10 (D.N.M. Aug. 12, 2010)(Browning, J.)(noting that the United States cannot be compelled to produce the New Mexico State Police officers' personnel files, because the New Mexico State Police, which was not a party to the case, possessed the files, and the United States was only able to review the files at the New Mexico State Police office, and could not remove or photocopy any documents without a subpoena); United States v. Badonie, 2005 WL 2312480, at *3 (denying a motion to compel because the New Mexico State Police possessed the documents, and the United States did not possess the documents, a defendant sought to be produced, even though the United States "could get the information [Defendant] Badonie seeks merely by requesting them").

### 3.       The Jencks Act.

In Jencks v. United States, the Supreme Court held that a "criminal action must be dismissed when the Government, on the ground of privilege, elects not to comply with an order to produce, for the accused's inspection and for admission in evidence, relevant statements or reports in its possession of government witnesses touching the subject matter of their testimony at trial." 353 U.S. at 672.   In so holding, the Supreme Court recognized that the

> rational of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense.

353 U.S. at 671.   The holding of Jencks v. United States was later codified into 18 U.S.C. § 3500.

See United States v. Kimoto, 588 F.3d 464, 475 (7th Cir. 2009)(explaining that, "the Jencks Act,

18 U.S.C. § 3500[,] . . . was enacted in response to the Supreme Court's holding in Jencks v.

United States, 353 U.S. 657 . . . ").

Section 3500 of Title 18 of the United States Code provides:

> **(a)** In any criminal prosecution brought by the United States, no statement or report
> in the possession of the United States which was made by a Government witness or
> prospective Government witness (other than the defendant) shall be the subject of
> subpoena, discovery, or inspection until said witness has testified on direct
> examination in the trial of the case.
>
> **(b)** After a witness called by the United States has testified on direct examination,
> the court shall, on motion of the defendant, order the United States to produce any
> statement (as hereinafter defined) of the witness in the possession of the United
> States which relates to the subject matter as to which the witness has testified.   If
> the entire contents of any such statement relate to the subject matter of the
> testimony of the witness, the court shall order it to be delivered directly to the
> defendant for his examination and use.

18 U.S.C. §§ 3500(a),(b).   "The Jencks Act requires the government to disclose to criminal

defendants any statement made by a government witness that is 'in the possession of the United

States' once that witness has testified."   United States v. Lujan, 530 F. Supp. 2d at 1232 (quoting

18 U.S.C. §§ 3500(a) & (b)).   The Jencks Act "manifests the general statutory aim to restrict the

use of such statements to impeachment."   Palermo v. United States, 360 U.S. 343, 349 (1959).

The Jencks Act's purpose is "not only to protect Government files from unwarranted disclosure

but also to allow defendants materials usable for the purposes of impeachment."   United States v.

Smaldone, 544 F.2d 456, 460 (10th Cir.1976)(citing Palermo v. United States, 360 U.S. at 352).

The Jencks Act defines statements specifically:

**(e)** The term "statement", as used in subsections (b), (c), and (d) of this section in

relation to any witness called by the United States, means--

> **(1)** a written statement made by said witness and signed or otherwise adopted or approved by him;
>
> **(2)** a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
>
> **(3)** a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e).   The Tenth Circuit has held: "Interview notes could be 'statements' under the [Jencks] Act if they are substantially verbatim."   United States v. Smith, 984 F.2d 1084, 1086 (10th Cir. 1993), cert denied, 510 U.S. 873 (1993).   At least one district court within the Tenth circuit has distinguished interview notes from reports that "embody only the agent's epitomization, interpretation, or impression of an interview," finding that the latter are not producible under the Jencks Act.   United States v. Jackson, 850 F. Supp. 1481, 1508 (D. Kan. 1994).   In United States v. Lujan, the Honorable Robert C. Brack, United States District Judge for the District of New Mexico, explained that rough interview notes may be discoverable under the Jencks Act, when a defendant makes "at least . . . a colorable claim that an investigator's discarded rough notes contained exculpatory evidence not included in any formal interview report provided to the defense."   530 F. Supp. 2d at 1266.   Judge Brack went on to hold that, "[b]ecause the contents of rough interview notes may in some cases be subject to disclosure and because the potential impeachment value of the notes may not become evident until trial," the United States must preserve its rough interview notes "made by law enforcement agents during interview of potential witnesses" under 18 U.S.C. § 3500.   530 F. Supp. 2d at 1267.   See United States v. Cooper, 283 F. Supp. 2d 1215, 1238 (D. Kan. 2003)(noting that rough interview notes may be

- 19 -

discoverable under the Jencks Act); <u>United States v. Jackson</u>, 850 F. Supp. at 1508-09 (finding that interview notes may be producible under the Jencks Act).

The defendant bears the initial burden of showing that particular materials qualify under the Jencks Act, but the defendant's burden is not heavy.   <u>See</u> <u>United States v. Smaldone</u>, 544 F.2d at 460 ("[T]he burden is on the defendant to show that particular materials qualify as 'Statements' and that they relate to the subject matter of the testimony of the witness.").   To satisfy this burden, the defendant need not prove that particular materials are within the scope of the Jencks Act, as the documents are not in the defendant's possession, but rather, "must plainly tender to the Court the question of the producibility of the document at a time when it is possible for the Court to order it produced, or to make an appropriate inquiry."   <u>United States v. Smith</u>, 984 F.2d at 1086 (quoting <u>Ogden v. United States</u>, 303 F.2d 724, 733 (9th Cir. 1962)).   The defendant's demand for documents under the Jencks Act must be sufficiently precise for a court to identify the requested statements.   <u>See</u> <u>United States v. Smith</u>, 984 F.2d at 1086.   For example, in <u>United States v. Smith</u>, the Tenth Circuit found that a defendant had met his burden and made a prima facie showing that a statement of a witness existed which may be producible under the Jencks Act when a government witness testified during the United States' case-in-chief that she had been interviewed by a government agent before testifying, and the defense counsel moved for production of the notes.   <u>See</u> 984 F.2d at 1085-86.   Once the defendant makes a prima facie showing that a witness statement exists that may be producible under the Jencks Act, the court should conduct a hearing or *in camera* review of the statement.   984 F.2d at 1086.

In <u>United States v. Fred</u>, No. CR 05-801 JB, the Court ordered the United States to produce "any personal notes or investigative materials that Federal Bureau of Investigation" agents "may

have created regarding an interview" with the defendant.   See No. CR 05-801 JB, Order at 1, filed November 8, 2006 (Doc. 86).   The Court required the United States to disclose the notes and investigative materials in a timely manner, so that the defendant could properly prepare for cross-examination of the FBI agent who conducted the interview at trial.   See No. CR 05-801 JB, Order at 1-2.   The Court has applied the Jencks Act to Drug Enforcement Agency ("DEA") agents' notes, generated from interviews with defendants, holding that the notes must be turned over to the defendants after the agents testify at trial.   See United States v. Goxcon-Chagal, No. CR 11-2002 JB, 2012 WL 3249473, at *2, *6 (D.N.M. Aug. 4, 2012)(Browning, J.).   In United States v. Tarango, 760 F. Supp. 2d 1163 (D.N.M. 2009)(Browning, J.), the Court, applying 18 U.S.C. § 3500, held that the United States must produce Federal Bureau of Investigation ("FBI") agents' 302s, after the United States' witnesses testified at trial, to the extent those reports contained statements from witnesses who testified at trial.   See 760 F. Supp. 2d at 1164, 1167.

## ANALYSIS

Harry seeks to compel the production of law enforcement agents' notes from their interviews with potential witnesses.   See Motion to Compel at 5.   He has identified that the statements which other young people made at the house the evening the sexual abuse allegedly occurred would be particularly important.   See Tr. at 8:19-21 (Samore).   The United States opposes this motion, but concedes, correctly, that it must turn over all exculpatory evidence to Harry.   See Response at 3.

The United States has the duty to produce any exculpatory material evidence to Harry and has promised that it will do so.   See United States v. Padilla, 2011 WL 1103876, at *5 ("The Due Process Clause of the Constitution requires the United States to disclose information favorable to

the accused that is material to either guilt or to punishment."). The United States has also agreed to produce any "rough notes" containing the substance of Harry's oral statements, in accordance with rule 16(a)(1)(B)(ii) of the Federal Rules of Criminal Procedure. Response at 5. Harry has already received the grand jury testimony from the United States, in accordance with 18 U.S.C. § 3500(e). See Motion to Compel at 5.

Beyond that which the United States is required to produce under Brady v. Maryland, and rule 16 of the Federal Rules of Criminal Procedure, Harry does not have a right to compel the production of any FBI agents' notes from interviews with potential witnesses until those witnesses testify at trial. See Fed. R. Crim. P. 16(a)(2) (stating rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case"). The United States must turn over to Harry, after the witness testifies at trial, any investigative notes containing statements from those witnesses, whether in quotation or which are substantially verbatim. See 18 U.S.C. § 3500(b) ("After a witness called by the United States has testified on direct examination, the court shall . . . order the United States to produce any statement . . . of the witness in possession of the United States which relates to the subject matter as to which the witness has testified."); United States v. Smith, 984 F.2d at 1086 ("Interview notes could be 'statements' under the [Jencks] Act if they are substantially verbatim."); United States v. Tarango, 760 F. Supp. 2d at 1164, 1167 (requiring the United States to produce FBI reports, including any 302's, which contain statements from prosecution witnesses after those witnesses testify at trial); United States v. Fred, No. CR 05-801, Order at 1 (Doc. 86)(requiring the United States to turn over investigative notes from an FBI agent's interview of the defendant, after the agent testified at trial).

- 22 -

Although the United States asserts that as "a basic proposition," "'most courts . . . have held that investigative notes, made in the course of interviewing witnesses, that are later incorporated in the agent's formal report, are not statements within the meaning of the Jencks Act.'"   Response at 4 (quoting United States v. Lujan, 580 F.2d at 1266)(citing United States v. Shovea, 580 F.2d 1382, 1389-90 (10th Cir. 1978)).   The United States, however, has taken Judge Brack's statement out of context.   In United States v. Lujan, Judge Brack held that "rough interview notes may in some cases be subject to disclosure," under the Jencks Act, and thus ordered the United States to preserve interview notes from law enforcement agents' interviews until after the United States' witnesses testified at trial.   530 F. Supp. 2d at 1267.   Judge Brack's statement that "'[m]ost courts . . . have held that investigative notes, made in the course of interviewing witnesses . . . are not statements within the meaning of the Jencks Act,'" is in relation to his discussion of the result of a court's in camera review or hearing after a defendant identifies materials potentially containing witness statements; Judge Brack did not indicate that investigative or interview notes are always beyond the scope of the Jencks Act.   530 F. Supp. 2d at 1266.   Indeed, the two cases which Judge Brack cited in support of that statement arise in the context of a defendant's assertion that the United States' destruction of notes was a violation of the defendant's rights under the Jencks Act, and in both cases the courts found that, because the notes were not destroyed in bad faith, the destruction did not violate the Jencks Act.   See United States v. Hinton, 719 F.2d 711, 717, 722 (4th Cir. 1983); United States v. Shovea, 580 F.2d 1382, 1389-90 (10th Cir. 1978). Judge Brack ultimately ordered the United States to preserve the rough interview notes for trial. See 530 F. Supp. 2d at 1266-67.

        Harry has plainly tendered that law enforcement reports generated from interviews with

potential witnesses may contain statements that are producible under the Jencks Act, and the Court is able to determine which statements Harry desires the United States to produce.   See United States v. Smith, 984 F.2d at 1086 (noting that the burden is on the defendant to "plainly tender . . . the question of the producibility of the documents," and the defendant must identify the document with sufficient precision for a court to identify the statements seeking to be produced).   The Court finds it difficult to say that these notes are not "statements," and the law is such that Harry may obtain "any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified," after the witness testifies on direct examination.   18 U.S.C. § 3500(b).   If the notes do not purport to be verbatim statements, then the United States can approach the Court about an *in camera* review; otherwise, it is likely that there are statements of the witnesses in these materials.[6]   See United States v. Lujan, 530 F. Supp. 2d at 1267 ("If there is a close question of whether information in the notes is subject to disclosure, the Government should present the notes to the Court for *in camera* inspection.").   While the United States asserted at the hearing that the Court may be "breaking new ground . . . maybe for the district court here in New Mexico," by ordering the United States to turn over the portions of the investigative notes which contain statements from its witnesses, at least four cases within the Tenth Circuit, and three within New Mexico, support the Court's order.   Tr. at 12:4-9 (Nayback). See United States v. Goxcon-Chagal, 2012 WL 3249473, at **2, 6; United States v. Lujan, 530 F. Supp. 2d at 1267; United States v. Fred, No. CR 05-801 JB, Order at 1; United States v. Jackson, 850 F. Supp. at 1508-09 (requiring the United States to submit interview notes for the court to determine whether they contain statements, as defined in the Jencks Act).

---

[6] The Court has no qualms whether law enforcement agents' notes may be producible under the Jencks Act, but has not yet seen a defendant use the interview notes obtained pursuant to the Jencks Act for cross-examination of a government witness.

The investigative notes may be redacted so that the United States turns over only the statements, and not any of the interviewing agent's thoughts or impressions, as Harry only has a right to the statements, and not more, contained in any investigative notes, under Brady v. Maryland.  See 18 U.S.C. §§ 3500(a),(b); United States v. Jackson, 850 F. Supp. at 1508-09 (explaining that the United States may redact interview notes which are discoverable under the Jencks Act).  If an earlier disclosure would create a reasonable doubt of Harry's guilt, then the United States must produce such evidence before the witness testifies at trial.  See United States v. Burke, 571 F.3d at 1054 (holding that the "belated disclosure of impeachment or exculpatory information favorable to the accused violates due process when an earlier disclosure would have created a reasonable doubt of guilt." (secondary citation omitted)).  However, the Court does not find that there is a strong inference that the evidence Harry seeks will be of aid to him at trial, as he appears to be requesting the investigative notes for the purposes of impeachment alone.  Cf. United States v. Padilla, No. CR 09-3598 JB, 2010 WL 4337819, at *8 (D.N.M. Sept. 3, 2010)(Browning, J.)(ordering the production of the United States' witness list thirty days before trial because defendants raised a strong inference that the identities "of confidential informants who will be called as witnesses may aid the Defendants.").  Accordingly, the Court will not order the United States to produce the investigative notes early, as Harry requests.

**IT IS ORDERED** that the Defendant Myron Harry's Motion and Memorandum to Compel Investigative Notes and Early Disclosure of Jencks Material, filed August 31, 2012 (Doc. 85), is granted in part and denied in part.  The Plaintiff United States of America must turn over any investigative notes which contain statements from witnesses after those witnesses testify at trial at the latest, and earlier, if the statements would raise a question as to Harry's guilt.  The

Court will not order the production of the investigative notes thirty days before trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
   United States Attorney
Kyle T. Nayback
David Adams
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

John F. Samore
Albuquerque, New Mexico

       *Attorney for the Defendant*