# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                   No. CR 10-1915 JB

MYRON HARRY,

      Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on the Sealed United States' Motion in Limine to Bar Evidence Under Rule 412, filed September 28, 2012 (Doc. 96)("MIL").  The Court held hearings on March 29, 2013 and April 10, 2013.   The primary issues are whether the Court should exclude, under rule 412 of the Federal Rules of Evidence: (i) evidence that Jane Doe was touching, hugging, and/or sitting beside Defendant Myron Harry on the night he allegedly assaulted her; and (ii) evidence that Doe appeared in the presence of Harry and others at one point in the evening, before the alleged assault, partially undressed.  The Court concludes that evidence of Doe's alleged touching, hugging, and/or sitting beside Harry is not evidence of a specific instance of sexual behavior between Doe and Harry and, therefore, is not admissible under rule 412(b)(1)(B). The only relevance that Doe's touching, hugging, and/or sitting beside Harry may have is to

---

[1] In its Sealed Memorandum Opinion and Order, filed May 1, 2013 (Doc. 148)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO.  See Sealed MOO at 1 n.1.   The Court gave the parties ten calendar days to provide notice of any proposed redactions.  See Sealed MOO at 1 n.1.   The parties have not contacted the Court or made any filings within CM/ECF, the Court's Case Management/Electronic Case Files, to indicate that they have any proposed redactions.  Consequently, the Court is now refiling the Sealed MOO in an unsealed form.

demonstrate that Doe somehow had a sexual predisposition towards casual sex, and, the Court, therefore, will prohibit Harry from introducing that evidence under rule 412(a).   Similarly, evidence that Doe appeared partially undressed on the night of the incident is evidence of her sexual predisposition, and the Court, therefore, will prohibit Harry from introducing that evidence at trial through any medium except through his own testimony, if he takes the stand.   The Court, therefore, will grant the MIL.   Additionally, the Court will not allow Harry to introduce into evidence a text message that he purportedly sent the morning after the incident, in which he describes Dow as being "all over" him at the party.    On the other hand, if Harry takes the stand, he may testify regarding Doe's behavior towards him at the party, before the incident.   If Harry discovers additional evidence which would render either Doe's touching, hugging, and/or sitting beside Harry, or her appearance partially undressed admissible, Harry may notify the Court in accordance with 412(c), and the Court will, at that time, evaluate Harry's intended purpose for the evidence.

## FACTUAL BACKGROUND

The United States accuses Harry of sexually assaulting Doe during a party the night of May 5-6, 2010, in Shiprock, New Mexico.   See Indictment at 1, filed June 24, 2010 (Doc. 14).   The Court previously made findings of fact for Harry's Motion to Suppress Evidence Based on Spoliation or Incompleteness, filed June 26, 2012 (Doc. 75).   See Memorandum Opinion and Order at 2-16, filed February 19, 2013 (Doc. 114).   The Court incorporates those findings of fact by reference herein.   At the hearing on the Defendant's Motion to Suppress Evidence Based on Spoliation or Incompleteness, filed June 26, 2012 (Doc. 75), Harry questioned Dmitiri Wauneka, who hosted the party, whether Doe was "hitting on" Harry during the party.   Transcript of

Hearing at 86:24-87:4 (Samore, Wauneka)(taken September 29, 2012)("Suppression Tr.").[2] Wauneka did not recall Doe being flirtatious with Harry during the party.   See Suppression Tr. at 87:2-4 (Samore, Wauneka).   Harry asked Wauneka whether Doe was sitting beside or touching Harry during the party, and whether Harry was touching Doe during the party, before the alleged incident.   See Suppression Tr. at 87:5-9 (Samore, Wauneka).   Wauneka stated that Doe was sitting beside Harry during most of the party, but was not specific regarding whether the two were "hugging" or otherwise touching.   Suppression Tr. at 87:5-9, 17-19 (Samore, Wauneka).   Harry asked Wauneka whether Doe appeared, at one point during the party, wearing only her underwear to cover her lower body, and Wauneka stated that she did appear at one point only partially clothed.   See Suppression Tr. at 86:21-23 (Samore, Wauneka).

## PROCEDURAL BACKGROUND

On June 24, 2010, a grand jury indicted Harry for having knowingly engaged in a sexual act with Doe, who was physically incapable of declining participation and could not communicate her unwillingness to engage in the sexual act, in violation of 18 U.S.C. §§ 1153, 2242(2), and 2246(A).   See Indictment at 1.   Trial in this matter is presently set for May 6, 2013, at 9:00 a.m. See Agreed Order to Vacate and Reset Trial and Extend the Time for the Filing of Pre-Trial Motions at 4, filed February 28, 2013 (Doc. 12).

The United States requests the Court to "bar introduction or mention of any evidence that the victim in this matter engaged in prior sexual contacts or has some sexual predispositions under Rule 412."   MIL at 1.   The United States asserts that Harry may attempt to "introduce evidence

---

[2] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited version.   Any final transcripts may contain slightly different page and/or line numbers.

of alleged prior sexual acts or sexual predispositions of Jane Doe."   MIL at 1.   The United States

believes that Harry may attempt to introduce evidence that Doe was hugging Harry the night of the

incident, and that she "was in the presence of the Defendant and others while only partially

clothed."   MIL at 1.   The United States requests that the Court bar "evidence or mention of Doe's

sexual past."   MIL at 2.   The United States asserts that rule 412 of the Federal Rules of Evidence

bars "sexual assault defendants from suggesting that their victims have engaged in prior sexual

contacts or have some sexual predispositions."   MIL at 2.   The United States asserts that Doe's

"sexual behavior" is inadmissible, including her behavior "up to not only the crimes charged, but

the time of trial on those charges."   MIL at 2 (citing Richmond v. Embry, 122 F.3d 866, 871-76

(10th Cir. 1997)).   The United States notes that Harry has not yet filed a notice, as rule 412

requires, of his intention to introduce evidence of Doe's sexual behavior, and, thus, informs the

Court that it filed the MIL preemptively "in the interest of saving the Court valuable time."   MIL

at 3.   The United States asserts that barring evidence of Doe's sexual behavior does not violate

Harry's Confrontation Clause rights, because the Court has "'wide latitude to impose reasonable

limits on such cross examination based on concerns about, among other things, harassment, [and]

prejudice . . . .'"   MIL at 3 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).   The

United States asserts that Doe has "very little sexual history or predispositions at all," and that

Harry is seeking to introduce evidence of her sexual behavior only as a "smear tactic."   MIL at 3.

     In response, Harry informs the Court that he is "unaware of any relevant or material

evidence regarding [Doe's] 'sexual past,'" and concedes that he will not attempt to introduce

evidence of Doe's sexual past at trial.   Sealed Response to Prosecution's Motion in Limine to Bar

Evidence Under Rule 412 at 1, filed January 19, 2013 (Doc. 107)("Response").   Harry asserts,

nonetheless, that the "evening and early morning in question may be relevant and material to issues of guilt or innocence and especially credibility."   Response at 1.   Harry informs the Court that he will draw the Court's attention to any evidence that implicates rule 412 before trial.   See Response at 1.

At the hearing, the Court inquired whether Harry agreed that he would not introduce evidence that implicates rule 412 at trial.   See Transcript of Hearing (taken March 29, 2013) at 3:16-20 (Court)("Mar. 29 Tr.").   Harry informed the Court that he had not yet decided whether he will attempt to introduce evidence of Doe's behavior during the eight hours before the incident. See Mar. 29 Tr. at 4:4-8 (Samore).   Harry informed the Court that he has no plans or intention of introducing evidence outside of the eight-hour time span immediately preceding the incident at the party.   See Mar. 29 Tr. at 4:9-13 (Samore, Court).   Harry stated that he does not believe that the evidence the United States has highlighted -- that Doe was flirting with Harry or she appeared partially unclothed -- would implicate rule 412.   See Mar. 29 Tr. at 4:16-25 (Court, Samore). Harry informed the Court that he is not alleging that he had sex with Doe earlier in the evening. See Mar. 29 Tr. at 4:25-5:1 (Samore).   Harry informed the Court that he cannot explain how Doe's flirtation with Harry could be relevant to the charges against him "without betraying possible defenses."   Mar. 29 Tr. at 5:2-6 (Court, Samore).   Harry stated that he does not think any of the evidence which the United States has highlighted would implicate rule 412.   See Mar. 29 Tr. at 5:13-16 (Samore).

The Court stated that it is inclined to believe that the evidence the United States has highlighted is 412 evidence.   See Mar. 29 Tr. at 5:17-18 (Court).   The Court stated that cases applying rule 412 have construed its prohibition rather broadly, and it is thus inclined to prohibit

Harry from introducing the evidence to which the United States points.  See Mar. 29 Tr. at 5:19-6:4 (Court).  The United States asserted that, under Richmond v. Embry, the "sexual behav[ior] of [a] victim is protected from unwarranted intrusions . . . .  And it covers the time period up to not only the crimes charged but the time of trial on those charges."  Mar. 29 Tr. at 7:14-28 (Nayback).  The Court stated that it is inclined to find that neither Doe's flirting with Harry at the party, nor her appearance wearing her underwear, is permissible evidence under rule 412.  See Mar. 29 Tr. at 9:1-8 (Court).

Harry informed the Court that he does not believe that evidence of Doe flirting with Harry and appearing in her underwear is the only evidence that is relevant from the eight hours preceding the incident, but he did not disclose what other evidence, if any, regarding Doe's behavior the night of the party he may seek to introduce.  See Mar. 29 Tr. at 9:12-17 (Samore).  Harry also asserted that case law does not bar 412 evidence occurring "in the last eight hours before the incident when young people are drinking."  Mar. 29 Tr. at 9:18-25 (Samore).  The Court responded that a victim's possession of contraceptives on the night of an alleged sexual assault is not admissible under rule 412, and, therefore, the Court is not inclined to believe that the temporal proximity of Doe's actions changes the 412 analysis.  See Mar. 29 Tr. at 10:9-17 (Court).

At the April 10, 2013 hearing, the United States informed the Court of additional evidence that it requests the Court to prohibit Harry from introducing at trial.  See Transcript of Hearing (taken April 10, 2013) at 7:6-18 (Nayback)("Apr. 10 Tr.").  The United States stated that it expects that Harry may attempt to introduce a text message at trial, in which Harry stated that Doe was "all over" him at the party before the incident.  Apr. 10 Tr. at 7:12-18 (Nayback)(citing

Government Exhibit S18).[3]   The United States asserted that Harry could not introduce the text message, as it was "inadmissible hearsay," and a self-serving statement, and, therefore, not an admission against interest under rule 801(d)(2) of the Federal Rules of Evidence.   Apr. 10 Tr. at 7:19-22 (Nayback).   The United States stated that it believes the statement in the text message implicates rule 412 as well.   See Apr. 10 Tr. at 8:1-2 (Nayback).   The United States contended that the text message is not necessary as part of the rule of completeness or to rebut other statements.   See Apr. 10 Tr. at 8:4-8 (Nayback).

Harry asserted that "[a]nything that is part of the defense, Judge, whether it's under the rule of completeness or in a statement that is offered, be it in writing or be it in an interview of the prosecution, comes in . . . ."   Apr. 10 Tr. at 9:6-12 (Samore).   Harry asserted that excluding the text in Government Exhibit S18 is "very similar . . . to . . . giving a statement to an officer that is introduced except for excluding the things that the client said that is . . . defensible or that is part of his defense."   Apr. 10 Tr. at 9:13-20 (Samore).   Harry asserted that the United States' attempt to "edit my own . . . statement" is "not just wrong it's error."   Apr. 10 Tr. at 10:8-10 (Samore).   The Court responded that Harry would not be allowed to put a federal agent on to testify about Harry's self-serving statements.   See Apr. 10 Tr. at 11:15-18 (Court).   Harry responded that "I think I could if it's part of our defense."   Apr. 10 Tr. at 11:19-20 (Samore).

The Court inquired of Harry whether the statement must be admitted to satisfy the rule of completeness.   See Apr. 10 Tr. at 12:1-6 (Court).   Harry responded that, if his other statements are admitted, but not the statement in Government Exhibit S18, "it would be like . . . if the agent

---

[3] Government Exhibit S18 was an exhibit at the Suppression Hearing, specifically a photograph of a text message on Wauneka's cellular telephone, which reads: "From: Myron  I knw. She was all over me the whole nite.  I remember that.  ilmygirls :] CB: 505-486-0099 May 6, 6:29 am [sic]".   Government Exhibit S18; Suppression Tr. at 25:4-28:7 (Adams, Joe).

were just to testify what my guy said, but not say what the agent was saying to set him up . . . ." Apr. 10 Tr. at 12:17-24 (Samore).[4]   Harry contended that the Court cannot "put in just the inculpatory statements without putting in the whole context."   Apr. 10 Tr. at 12:24-25 (Samore). The Court inquired how Harry's statement in the text message differs from the other evidence that the United States requests the Court to exclude under rule 412.   See Apr. 10 Tr. at 14:3-9 (Court). Harry responded that the United States cannot "edit the messages and take out the part that may be interpreted as at least a little bit exculpatory," and that it is the Court's duty to keep lawyers from picking and choosing amongst exculpatory and inculpatory statements.   Apr. 10 Tr. at 14:10-21 (Samore).   See id. at 14:23-24 (Samore).

The United States asserted that case law plainly allows the Court to "excise out self-serving statements made by the defendant."   Apr. 10 Tr. at 17:1-3 (Nayback).   The United States contended that the rule of completeness only requires statements be introduced that are "relevant to an issue in a case and necessary to clarify or explain the portion already received."   Apr. 10 Tr. at 17:9-13 (Nayback).   The United States conceded that Harry is "free to [take] the witness sta[nd] and say how [Doe] was hitting on him all night[,] that he remembers that she [] invited him in the room for consensual sex [] and he doesn't know why she's now claiming rape. . . .   [H]e's free to disc[uss] that."   Apr. 10 Tr. at 17:21-18:1 (Nayback).   The United States contended, nonetheless, that the Federal Rules of Evidence do not allow Harry to introduce the statement in Government Exhibit S18 because the statement is "inadmissible hearsay."   Apr. 10 Tr. at 18:2-5 (Nayback).

---

[4] In the Court's Memorandum Opinion and Order dated February 19, 2013, the Court denied the Defendant's Motion to Suppress Evidence Based on Spoliation or Incompleteness, filed June 26, 2012 (Doc. 75), in which Harry requested the Court to suppress certain text messages that Harry sent to Wauneka's cellular telephone on the morning of May 6, 2011.

The Court stated that the rule of completeness does not appear to require the statement be admitted, and, therefore, the Court cannot properly force the United States to introduce the statement.   See Apr. 10 Tr. at 18:7-14 (Court).   The Court further stated that, if Harry attempts to introduce the statement, it would be hearsay and not within any exception.   See Apr. 10 Tr. at 18:13-17 (Court).   The Court stated that it is inclined to not admit the statement.   See Apr. 10 Tr. at 18:23-19:4 (Court).   Harry responded that not introducing the statements is akin to denying his right to cross-examine witnesses and is withholding relevant evidence.   See Apr. 10 Tr. at 20:1-17 (Samore).

### LAW REGARDING RELEVANT EVIDENCE

The threshold issue in determining the admissibility of evidence is relevance.   As a baseline, under the Federal Rules of Evidence, all evidence that is relevant is admissible -- unless another law or rule excludes the evidence -- and any evidence that is not relevant is not admissible. See Fed. R. Evid. 402.   The standard for relevance is very liberal.   See United States v. Leonard, 439 F.3d 648, 651 (10th Cir. 2006)("Rule 401 is a liberal standard.")(citing United States v. McVeigh, 153 F.3d 1166, 1190 (10th Cir. 1998)).   The evidence need only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   Fed. R. Evid. 401.   See United States v. Leonard, 439 F.3d at 651.   "[A] fact is 'of consequence' when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict," but it need only to have "any tendency" to do so.   United States v. Jordan, 485 F.3d 1214, 1218 (10th Cir. 2007).   See United States v. Leonard, 439 F.3d at 651; United States v. McVeigh, 153 F.3d at 1190.   Although the threshold burden is low, the rules

do "not sanction the carte blanche admission of whatever evidence a defendant would like.   The trial judge is the gatekeeper under the Rules of Evidence."   United States v. Jordan, 485 F.3d at 1218.

### RELEVANT LAW REGARDING THE RULE OF COMPLETENESS

"Rule 106 sets forth the rule of completeness."   United States v. Christy, No. CR 10-1534 JB, 2011 WL 5223024, at *3 (D.N.M. Sept. 21, 2011)(Browning, J.).   Rule 106 states: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106.   Accord Kangley v. United States, 788 F.2d 521, 533 (9th Cir. 1986).   By allowing the other party to present the remainder of the writing or recorded statement immediately rather than later on cross-examination, this rule avoids the situation where a statement taken out of context "creates such prejudice that it is impossible to repair by a subsequent presentation of additional material." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 171 n.14 (1988).   Accord United States v. Cruz-Calixto, 39 F. App'x 565, 567 (9th Cir. 2002)(unpublished); United States v. Oseby, 148 F.3d 1016, 1025 (8th Cir. 1998)("The advisory committee notes to Rule 106 state that one of the considerations for this rule is to avoid 'the misleading impression created by taking matters out of context.'"); United States v. Rubin, 609 F.2d 51, 63 (2d Cir. 1979)("The notes had been used extensively and quoted from copiously by Rubin's counsel on his cross-examination of Cox, possibly leaving a confusing or misleading impression that the portions quoted out of context were typical of the balance."); United States v. Young, No. CR-09-140-B-W, 2010 WL 1461558, at *3 (D. Me. Apr. 9, 2010).   "Rule 106 by its terms does not apply to oral conversations, but only to

- 10 -

writings and recorded statements." United States v. Christy, 2011 WL 5223024, at *3 (citing Fed. R. Evid. 106).   As the United States Court of Appeals for the Tenth Circuit has stated: "The rule of completeness, however, does not necessarily require admission of [an entire statement, writing or recording.]   Rather, only those portions which are 'relevant to an issue in the case' and necessary 'to clarify or explain the portion already received' need to be admitted."   United States v. Lopez-Medina, 596 F.3d 716, 735 (10th Cir. 2010).   The United States Court of Appeals for the Seventh Circuit has applied a four-part test to determine whether to allow evidence under rule 106: "(1) does [the evidence] explain the admitted evidence, (2) does it place the admitted evidence in context, (3) will admitting it avoid misleading the trier of fact, and (4) will admitting it insure a fair and impartial understanding of all of the evidence."   United States v. Velasco, 953 F.2d 1467, 1475 (7th Cir. 1992).   Discussing the rule of completeness, the United District Court for the Central District of California provided guidance on when a related statement should be admitted to rebut a misleading impression:

> The Rule of Completeness "does not compel admission of otherwise inadmissible hearsay evidence."   However, the Rule of Completeness was designed to prevent the Government from offering a "misleadingly-tailored snippet."   The Rule of Completeness warrants admission of statements in their entirety when the Government introduces only a portion of inextricably intertwined statements.
>
> Statements are inextricably intertwined when the meaning of a statement, if divorced from the context provided by the other statement, is different than the meaning the statement has when read within the context provided by the other statement.   Under those circumstances, a court must take care to avoid distortion or misrepresentation of the speaker's meaning, by requiring that the statements be admitted in their entirety and allowing the jury to determine their meaning.

United States v. Castro-Cabrera, 534 F. Supp. 2d 1156, 1160 (C.D. Cal. 2008)(citation omitted).

Accord United States v. Coughlin, 821 F. Supp. 2d 8, 30 (D.D.C. 2011)("Coughlin is correct,

however, that regardless of whether this evidence is inadmissible hearsay or not, he can introduce it under the rule of completeness."); United States v. Peeples, No. 01 CR 496, 2003 WL 57030, at *3 (N.D. Ill. Jan. 7, 2003).

A related concept to the rule of completeness is the principle that, "[w]hen a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible." Tanberg v. Sholtis, 401 F.3d 1151, 1166 (10th Cir. 2005). "Permissible does not mean mandatory, however; the decision to admit or exclude rebuttal testimony remains within the trial court's sound discretion." Tanberg v. Sholtis, 401 F.3d at 1166. This principle reflects the general proposition that "[c]ross examination 'may embrace any matter germane to the direct examination, qualifying or destroying, or tending to elucidate, modify, explain, contradict, or rebut testimony given in chief by the witness.'" United States v. Burch, 153 F.3d 1140, 1144 (10th Cir. 1998). "[W]hether or not rebuttal evidence is admissible depends on whether the initial proof might affect the case and whether the rebuttal evidence fairly meets the initial proof." Richie v. Mullin, 417 F.3d 1117, 1138 (10th Cir. 2005)(alteration in original). The Tenth Circuit has recognized that, when the rebuttal evidence is "otherwise inadmissible," it must both: (i) "be reasonably tailored to the evidence it seeks to refute"; and (ii) "[t]here must be a nexus between the purported rebuttal evidence and the evidence that the purported rebuttal evidence seeks to rebut." Richie v. Mullin, 417 F.3d at 1138 (quoting United States v. Stitt, 250 F.3d 878, 897 (4th Cir. 2001)). In a case where a wife was seeking damages for loss of companionship in the context of an excessive force claim, the Tenth Circuit stated that the wife's claim for damages opened the door to evidence of the deceased husband's prior domestic abuse conviction and arrest. See Lounds v. Torres, 217 F. App'x 755, 758 (10th Cir. 2007)(unpublished)("[E]vidence of Alford's

2002 conviction and 2003 arrest for domestic abuse of Ms. Fuston-Lounds was offered not to show

his character, but for the proper purpose of rebutting Ms. Fuston-Lounds' claim for damages.").5

### RELEVANT LAW REGARDING RULE 412 OF THE FEDERAL RULES OF EVIDENCE

Rule 412 of the Federal Rules of Evidence states, in relevant part:

**(a) Prohibited Uses.** The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:

**(1)** evidence offered to prove that a victim engaged in other sexual behavior; or

**(2)** evidence offered to prove a victim's sexual predisposition.

**(b) Exceptions.**

**(1) Criminal Cases.** The court may admit the following evidence in a criminal case:

. . .

**(B)** evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; . . . .

Fed. R. Evid. 412 (bold in original).  The rule also requires the following procedure before

evidence may be admitted under rule 412(b): (i) the party seeking to introduce the evidence must

file a motion fourteen days before trial that specifically describes the evidence and states the

---

5 Lounds v. Torres is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .   However, if an unpublished opinion . . .  has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."   United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that Lounds v. Torres has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

party's purpose for offering the evidence; (ii) the party must notify the victim, or the victim's

guardian or representative; and (iii) the court must hold a hearing in camera to assess admissibility.

See Fed. R. Evid. 412(c).

Until 1994, rule 412 was applicable only in criminal proceedings; plaintiffs in civil

sexual-harassment suits had to rely on rule 404 if they sought to exclude evidence of past sexual

behavior, arguing that it was being offered as evidence of propensity.   See Ferencich v. Merritt,

79 F. App'x. 408, 414 (10th Cir. 2003)(unpublished).   With the passage of the 1994 amendment,

however, the Committee recognized

> [t]he need to protect alleged victims against invasions of privacy, potential
> embarrassment, and unwarranted sexual stereotyping, and the wish to encourage
> victims to come forward when they have been sexually molested do not disappear
> because the context has shifted from a criminal prosecution to a claim for damages
> or injunctive relief.

Fed. R. Evid. 412 advisory committee's note to the 1994 amendments.   "As amended in 1994,

Rule 412 generally precludes evidence of an alleged victim's 'sexual behavior' or 'sexual

predisposition' in civil and criminal proceedings involving allegations of sexual misconduct."

Ferencich v. Merritt, 79 F. App'x. at 414.

As the Advisory Committee, and Professors Charles Wright and Kenneth Graham,

recognize, the rule has at least two underlying functions.   The first function is to promote the

reporting of sexual assaults and other sexual misconduct by vitiating the victim's fear that, by

reporting the incident, he or she will be opening up his or her private life to be put on display

through the course of discovery and at trial.

> The manifest function of Rule 412 is protection of the privacy of the rape
> victim; this is justified in terms of fairness to her and by the instrumental argument
> that this will further the interests of the state by encouraging victims to report the
> crime and to cooperate with the prosecution of rapists.

23 Charles Alan Wright & Kenneth W. Graham, <u>Fed. Prac. & Proc. Evid.</u> § 5384, at 543 (1st ed. 1980).   <u>See</u> Fed. R. Evid. 412 advisory committee's note to the 1994 amendments ("By affording victims protection in most instances, the rule . . . encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders.").   The rule's second function is more subtle: to combat the sexual stereotyping of victims, "<u>i.e.</u>, to prevent the jury from subverting the substantive law of rape by making the guilt of the defendant turn on the jury's assessment of the moral worth of the victim."   Wright & Graham, <u>supra</u> § 5384, at 544. <u>See</u> Fed. R. Evid. 412 advisory committee's note to the 1994 amendments ("The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process.").   It is with these two goals in mind that courts should analyze rule 412 questions.

Rule 412 is a rule of evidence, meaning that it primarily controls admissibility, as distinguished from discoverability, of certain information.   <u>Compare</u> Fed. R. Evid. 101 (defining the scope of the Rules of Evidence), <u>with</u> Fed. R. Civ. P. 26(b)(defining the scope of discovery). Rule 26(b)(1) of the Federal Rules of Civil Procedure generally governs the scope of discovery, and allows discovery of any admissible evidence and discovery of anything "reasonably calculated to lead to the discovery of admissible evidence."   Fed. R. Civ. P. 26(b)(1).   <u>See</u> <u>In re Cooper Tire & Rubber Co.</u>, 568 F.3d 1180, 1189 (10th Cir. 2009); Fed. R. Evid. 412 advisory committee's note to the 1994 amendments ("The procedures set forth in subdivision (c) do not apply to discovery of a victim's past sexual conduct or predisposition in civil cases, which will be continued to be governed by Fed. R. Civ. P. 26.").   One might therefore conclude that rule 412 restricts discovery

only insofar as a court predicts that certain discovery would uncover evidence excludable under rule 412, and thus that such discovery is not "reasonably calculated to lead to the discovery of admissible evidence."   The Advisory Committee, however, indicated that the policies underlying rule 412 will often justify a court in issuing a protective order limiting discovery of information that may fall within rule 412's protections.   See Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.").

> In order not to undermine the rationale of Rule 412 . . . courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality.   Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery. . . .   Confidentiality orders should be presumptively granted as well.

Fed. R. Evid. 412 advisory committee's note.   See United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, No. CIV 08-0501 JB/ACT, 2010 WL 1141361, at **5-6 (D.N.M. Mar. 8, 2010)(Browning, J.)(limiting a party's scope of discovery in a Title VII civil rights matter, because the party discovery requested failed rule 412(b)(2)'s balancing test); Giron v. Corr. Corp. of Am., 981 F. Supp. 1406, 1407 (D.N.M. 1997)(Hansen, J.)("In recognition of the policy rationale for the rule, the Court will impose certain restrictions on discovery to preclude inquiry into areas which will clearly fail to satisfy Rule 412(b)(2)'s balancing test, even though this Court will later decide what evidence is ultimately admitted.").

The Advisory Committee's notes explain specific forms of evidence that rule 412 governs. Under rule 412(a)(1)'s prohibition, the Advisory Committee explains that other sexual behavior "connotes all activities that involve actual physical conduct, i.e. sexual intercourse or sexual

- 16 -

contact." Fed. R. Evid. 412 advisory committee's note.   Furthermore, rule 412(a)(2) prohibits "evidence . . . relating to the alleged victim's mode of dress, speech, or life-style," unless the matter is civil and rule (b)(2)'s balancing test is satisfied.   Fed. R. Evid. 412 advisory committee's note.   See Ferencich v. Merritt, 79 F. App'x at 415 (allowing evidence in a Title VII civil matter that a plaintiff showed her tongue ring to her supervisor, and that the supervisor interpreted the display as "flirting, because of its perceived sexual use," because the evidence "was relevant to both the issue of whether his sexual conduct was 'unwelcome'" and whether the plaintiff's employer knew that she was being harassed, and because the evidence's probative value substantially outweighed its prejudicial effect).   Additionally, prohibited "behavior" includes "activities of the mind, such as fantasies or dreams."   Fed. R. Evid. 412 advisory committee's note.   On the other hand, under rule 412(b)(1)(B), a defendant may introduce "evidence of prior instances of sexual activities between the alleged victim and the accused, as well as statements in which the alleged victim expresses an intent to engage in sexual intercourse with the accused, or voiced sexual fantasies involving that specific accused" to prove that an alleged victim consented to sex with the accused.   Fed. R. Evid. 412, advisory committee's note.   See United States v. Ramone, 218 F.3d 1229, 1234-35(10th Cir. 2000)(finding that evidence that a victim engaged in sexual acts with inanimate objects with a defendant accused of aggravated sexual abuse of the victim involving the use of inanimate objects "squarely fits within" rule 412(b)(1)(B)'s scope of admissible evidence).   Under rule 412(b)(1)(C), a court may properly admit "statements in which the victim has expressed an intent to have sex with the first person encountered on a particular occasion," so as to protect an accused's due-process and Confrontation Clause rights.   Fed. R. Evid 412, advisory committee's note (citing Olden v. Kentucky, 488 U.S. 227 (1988)).

Applying these principles, the Tenth Circuit has found that a district court did not abuse its discretion or commit plain error in a rape case by excluding evidence that a victim was partially undressed in the presence of two other men, who were not defendants in the case.   See United States v. Pablo, 696 F.3d 1280, 1299 (10th Cir. 2012).   In United States v. Pablo, the defendant and his co-defendant were both accused of raping the victim several hours after a dance, which the three of them attended, at which the defendant asserted the victim was partially undressed with two other men.   See 696 F.3d at 1298-99.   The defendant asserted that the evidence was admissible for two purposes: (i) to demonstrate that someone other than the defendant caused the victim's physical injuries; and (ii) to demonstrate the victim's level of intoxication at the time.   The Tenth Circuit explained that the evidence did not fall within rule 412(b)(1)(A)'s exception, because the defendant did not proffer that the victim engaged in non-consensual or otherwise extremely violent sex with other men on the night of the alleged rape, and only non-consensual or extremely violent sex could have caused the victim's vaginal injuries.   Because the defendant could proffer only that the evidence would demonstrate that the victim had consensual sex with other men on the night in question, the Tenth Circuit held that the evidence was not admissible under rule 412(b)(1)(A).   Additionally, to the extent that the defendant argued that the evidence was admissible to demonstrate the victim's level of intoxication on the night of the incident, the Tenth Circuit held that the district court properly excluded the evidence under rule 412(a).   The Tenth Circuit explained that the district court had "legitimate reasons to perceive that [Defendant] Pablo sought to introduce this evidence for . . . impermissible purposes, arguing apparently that her intoxication enhanced her predisposition toward casual sex."   696 F.3d at 1299.

In United States v. Pablo, the district court also excluded the defendant's evidence that, on

the night of the rape, the victim made sexual advances toward his co-defendant, "namely, caressing his leg and penis through his pants and trying to kiss him."   696 F.3d at 1299-1300. The defendant asserted that the victim made a sexual advance on the co-defendant "a significant period of time before the rape occurred," while the victim and the co-defendant were riding in a car with others on the night in question.   696 F.3d at 1299-1300, 1300 n.22.   The defendant and co-defendant were accused of kidnapping the victim and raping her, in a separate car, later that night.   See 696 F.3d at 1284-86.   On appeal, the defendant argued that the exclusion of this evidence violated his due-process right to present a defense.   Although the Tenth Circuit reviewed the district court's exclusion of the evidence under a plain error standard, because the defendant had not raised a 412(b)(1)(C) argument before the district court, the Tenth Circuit determined that the evidence had little probative value regarding the victim's consent, because the alleged sexual advances occurred "some time before the alleged rape and in a different location from where the rape occurred."   696 F.3d at 1300-01.   Additionally, the defendant was allowed to present other evidence at trial regarding the victim's consent, including that the victim's boyfriend became jealous of the co-defendant when the victim and the co-defendant spoke at the dance.   See 696 F.3d at 1301.

The Court has previously allowed, in accordance with rule 412, limited discovery regarding victims' social history in a Title VII civil rights matter.   In United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, the Court allowed defendants accused of discrimination and sexual harassment to question the victims whether they had dated co-workers, and if so, which co-workers the victims had dated.   The Court did not allow the defendants to inquire into the victims' sexual relationships.   The Court explained that a limited line of questioning regarding the

victims' dating history would not violate the policy rationales underlying rule 412 and would not implicate the victims' sexual predisposition, because a dating relationship is not necessarily equated with a sexual relationship.   See 2012 WL 1141362, at **5-6.

## RELEVANT LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible."   Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., No. CIV 10-0698 JB/RHS, 2013 WL 311846, at *13 (D.N.M. Jan. 18, 2013)(Browning, J.)(citing Fed. R. Evid. 802).   Under rule 801(c) of the Federal Rules of Evidence, "'[h]earsay' means a statement that: **(1)** the declarant does not make while testifying at the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement."   Fed. R. Evid. 801(c).   Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination."   United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999).   A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including to impeach a witness.   See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay.   If admitted for impeachment purposes, however, it is not hearsay.").

Applying these principles, in United States v. Goxcon-Chagal, No. CR 11-2002 JB, 2012 WL 3249473, at **5-6 (D.N.M. Aug. 4, 2006)(Browning, J.), the Court explained that defendants are not allowed "as a general matter" to introduce "their statements through other witnesses, because those statements are hearsay."   2012 WL 3249473, at **5-6 ("Thus, the United States

and the Defendants agree on the general principle that the Defendants' statements to law enforcement officers are inadmissible hearsay."). <u>See</u> 4 Stephen A. Saltzburg, Michael M. Martin, Daniel J. Capra, <u>Fed. Rules of Evid. Manual</u> § 801.02(6)(d), at 801-43 (2006)(regarding rule 801(d)(2), stating: "It follows that a party can never admit a statement in her favor under this rule; the statement must be offered by a part-opponent."). Similarly, in <u>United States v. Chaco</u>, No. CR 10-3463, 2011 WL 3510748 (D.N.M. Aug. 6, 2011)(Browning, J.), the Court prohibited a defendant from introducing, through a law enforcement officer, the defendants' statements denying charges against him. The Court explained that, although Plaintiff United States of America was allowed under rule 801(d)(2) to introduce the defendant's statements, as "party opponent admissions," the defendant's introduction of the statements would be only to "prove the truth of the matter asserted," and thus rule 801(c) prohibits the defendants from introducing the same statements. 2011 WL 3510748, at *2 ("This case involves the credibility of Chaco and Doe. The United States' fear is that Chaco will get his denial in through cross-examination . . . , and then not testify in his case. The law prevents Chaco from so proceeding"). The Court noted, additionally, that the United States did not object to the defendant taking the stand and testifying about his previous denials of the charges, and the Court ruled that the defendant could take the stand and testify to his previous denials without violating the Federal Rules of Evidence's prohibition on hearsay evidence. <u>See</u> 2011 WL 3510748, at **1-2.

## <u>ANALYSIS</u>

The Court will grant the MIL. Evidence that Doe was sitting beside, touching, and/or hugging Harry throughout the party is not evidence of specific sexual behavior between Harry and Doe that would be admissible under rule 412(b)(1)(B). Neither is evidence that Doe appeared

partially unclothed, in the presence of Harry and others, evidence that Harry and Doe engaged in specific sexual behavior.   The only relevance that either piece of evidence would have is to demonstrate that Doe had a sexual predisposition towards casual sex, evidence that rule 412(a)(2) prohibits.   The Court will, therefore, exclude evidence introduced through witnesses other than Harry of Doe's sitting beside, touching, and/or hugging him, and her appearance partially unclothed, during the party.   If, however, Harry develops more evidence that indicates that either Doe's sitting beside, touching, and/or hugging Harry, or her partially clothed appearance, is evidence of specific sexual behavior between Harry and Doe, Harry may make a proper motion under rule 412(c) indicating his intent to introduce that evidence at trial, and the Court will consider Harry's intended use for that evidence at that time.   Additionally, the Court will allow Harry to testify regarding Doe's behavior towards him before the incident, at the party.

## I.     RULE 412(a) PROHIBITS THE PROFFERED EVIDENCE BECAUSE IT IS RELEVANT TO PROVE DOE'S  SEXUAL PREDISPOSITION.

Evidence of Doe's sitting beside, touching, and/or hugging Harry, and her appearance partially unclothed at the party is relevant to demonstrate that Doe has or had a flirtatious nature and/or a predisposition towards casual sex.   Cf. Ferencich v. Merritt, 79 F. App'x at 415 (holding that, in a civil matter, evidence of a plaintiff's sexual predisposition -- specifically her flirtatious nature -- is relevant to demonstrate whether a defendant's alleged sexual harassment was "unwelcome").   Evidence, such as this, that is relevant for proving a victim's sexual predisposition is barred in a criminal matter by rule 412(a)(2).

Harry asserted, at the hearing, that the temporal proximity of Doe's interactions with Harry to the alleged assault distinguish any evidence of her interactions from the night of the party from other cases in which courts prohibit similar evidence under rule 412(a).   See Tr. at 9:18-25

(Samore).   To the contrary, the rules of evidence and Tenth Circuit case law prohibits similar evidence arising from the night of an alleged assault under rule 412.   First, the Advisory Committee's notes expressly prohibit, under rule 412(a), "evidence . . . relating to the alleged victim's mode of dress, speech, or life-style," unless the matter is civil and rule (b)(2)'s balancing test is satisfied.   Fed. R. Evid. 412 advisory committee's note.   Rule 412(a), therefore, prohibits evidence that Doe appeared partially unclothed at the party, in the presence of Harry and others. Second, in United States v. Pablo, the Tenth Circuit upheld a district court's exclusion of evidence that a victim appeared partially unclothed in the presence of two other men at a dance before the defendants allegedly raped the victim.   The defendants asserted that the evidence of the victim's undress was relevant to demonstrate her intoxication on the night of the incident, but the district court excluded the evidence, reasoning that the defendants intended to demonstrate that the victim's intoxication "enhanced her predisposition toward casual sex."   696 F.3d at 1299. Similarly, evidence that Doe appeared partially unclothed before Harry allegedly assaulted her may be relevant to demonstrate her level of intoxication, but her level of intoxication is relevant only for the purpose of arguing that, because Doe was intoxicated, she had an enhanced disposition towards casual sex.   Just as the Tenth Circuit upheld the exclusion of similar evidence in United States v. Pablo, the Court suspects that Harry may intend to introduce evidence of Doe's undress for the prohibited purpose of demonstrating her sexual predisposition, and, on that basis, the Court will prohibit the evidence.

Additionally, because Doe's sitting beside, touching, and/or hugging Harry at the party is not evidence that they engaged in a specific instance of sexual behavior, that evidence may only be relevant to demonstrate that Doe's flirtatious nature indicates her predisposition towards casual

sex.   Rule 412(a) prohibits evidence, such as these incidents, relevant to demonstrate a victim's sexual predisposition.   Neither is evidence that Doe was sitting beside, touching, and/or hugging Harry at the party before he allegedly assaulted her helped by its temporal proximity to the alleged crime.   In United States v. Pablo, the Tenth Circuit upheld a district court's exclusion of evidence that a victim made sexual advances toward a co-defendant for the purpose of proving her consent, including evidence of her "caressing his leg and penis through his pants and trying to kiss him" -- much more explicit advances than could be construed from Doe's sitting beside, touching, and/or hugging Harry.   696 F.3d at 1299-1300.   The alleged sexual advance in United States v. Pablo occurred several hours before the alleged rape, in a different car than where the rape allegedly occurred, and in the presence of other individuals not accused of raping the victim.   See 696 F.3d at 1300, 1300 n.22.   The Tenth Circuit reasoned that, because the advances occurred "some time before the alleged rape and in a different location from where the rape occurred," any probative value the advances had for proving the victim's consent was diminished.   696 F.3d at 1300-01. Here, Doe sat beside Harry, and may have touched, and/or hugged him at the party, in the presence of others not accused of assaulting her, several hours before Harry allegedly assaulted her.   See Memorandum Opinion and Order at 3-4 (finding that the female attendees at the party went to sleep between 1:00 a.m. and 2:00 a.m., and that other guests awoke and accused Harry of raping Doe around 5:00 a.m., indicating that any interactions between Harry and Doe at the party would have occurred at least, approximately, three hours before the alleged assault).   Just as any probative value of the victim's sexual advance in United States v. Pablo was diminished by the few hours of time which passed between the advance and the alleged rape, and because the rape occurred in a different location than the sexual advance, any probative value that Doe sat beside,

- 24 -

touched, and/or hugged Harry during the party is diminished by the time between her conduct and the alleged assault, and because the alleged rape occurred in a bedroom, as opposed to a room where all the attendees were socializing and her alleged flirtatiousness likely occurred.   The Court concludes, therefore, that evidence Doe's sat beside, touched, and/or hugged Harry is inadmissible under rule 412(a), because this evidence demonstrates her sexual predisposition, and because the temporal proximity of her conduct to the alleged assault does not save this evidence from rule 412(a)'s prohibition.

## II.   THE PROFFERED EVIDENCE DOES NOT DEMONSTRATE A SPECIFIC INSTANCE OF DOE'S SEXUAL BEHAVIOR WITH RESPECT TO HARRY.

At the suppression hearing, Harry questioned Wauneka regarding Doe's interactions with Harry at the party before the alleged assault.   Specifically, Harry questioned Wauneka whether Doe was "hitting on" Harry, whether she sat beside him during the party, and whether they were touching and/or hugging during the party.   Suppression Tr. at 86:24-87:4 (Samore, Wauneka). See id. at 87:5-9 (Samore, Wauneka); id. at 87:17-19 (Samore, Wauneka).   Wauneka recalled Harry and Doe sitting beside each other during the party, but did not recall Doe hitting on, touching, or hugging Harry.   See Suppression Tr. at 86:24-87:4 (Samore, Wauneka); id. at 87:5-9 (Samore, Wauneka); id. at 87:17-19 (Samore, Wauneka).   Wauneka stated that Doe appeared at one point, in the presence of Harry and others, partially unclothed.   See Suppression Tr. at 86:21-23 (Samore, Wauneka).

The United States requests the Court to exclude evidence of Doe hugging Harry and appearing partially unclothed at the party.   See MIL at 1.   Harry did not respond to the MIL, but he informs the Court that he is unaware of relevant or material evidence regarding Jan Doe's

sexual past.  See Response at 1.  At the hearing, Harry informed the Court that he does not believe that evidence of Doe flirting with Harry or appearing partially unclothed implicates rule 412.  See Tr. at 4:16-25 (Court, Harry).

The evidence presently before the Court is inadmissible under rule 412.  First, evidence that Doe was sitting beside, touching, and/or hugging Harry during the party is not evidence of a specific instance of sexual behavior that would be admissible under rule 412(b)(1)(B).  Rule 412(b)(1)(B) allows a defendant to introduce "evidence of prior instances of sexual activities between the alleged victim and the accused, as well as statements in which the alleged victim expresses an intent to engage in sexual intercourse with the accused, or voiced sexual fantasies involving that specific accused" to prove that an alleged victim consented to sex with the defendant.  Fed. R. Evid. 412, advisory committee's note.  Evidence that Doe was sitting beside Harry, touching, and/or hugging Harry during the party is not a specific instance of sexual behavior between Harry and Doe in the same manner as a victim's expression of an intent to engage in sexual activity with an accused.  The Tenth Circuit's decision in United States v. Ramone is instructive regarding rule 412(b)(1)(B)'s definition of "'specific instances of sexual behavior.'"  218 F.3d at 1235 (quoting Fed. R. Evid. 412(b)(1)(B)).  In United States v. Ramone, the defendant was accused of using inanimate objects to sexually assault the victim; the Tenth Circuit determined that evidence that the victim and the defendant had a previous sexual relationship which involved the use of inanimate objects to perform sexual acts was "squarely" within rule 412(b)(1)(B)'s category of admissible evidence.  218 F.3d at 1235.  Evidence that Harry and Doe were sitting beside each other, touching, and/or hugging at the party before the alleged assault, on the other hand, does not intimate that the two engaged in a sexual act earlier in

the evening, as Wauneka testified that Doe only sat beside Harry, and there is no evidence that the two touched and/or hugged during the party in a sexual manner.   Neither is Doe's appearance partially unclothed evidence that she and Harry engaged in sexual behavior.   Other individuals present at the party witnessed Doe unclothed, and, therefore, her appearance wearing only underwear on her lower body cannot logically be interpreted as an invitation to Harry specifically to have sex with her.   To construe either category of evidence as evidence that Harry and Doe engaged in specific sexual behavior would require conjecture and speculation.   See Richmond v. Embry, 122 F.3d at 873 (upholding the exclusion of evidence under rule 412 that a victim owned condoms and had a frequent male visitor because the defendant "could offer no testimony the victim had actually used the condoms, or that the victim had engaged in sexual intercourse with the male visitor," and, therefore, to conclude that her ownership of condoms and male visitor indicated sexual activity would require impermissible "conjecture and speculation").   Evidence that Doe was sitting beside, touching, and/or hugging Harry, or that she appeared partially unclothed before Harry and others at the party, is, therefore, not admissible under rule 412(b)(1)(B).

The Court, therefore, grants the MIL.   Evidence that Harry and Doe were touching, hugging, and/or sitting beside each other at the party, and evidence that Doe appeared partially unclothed before Harry and other attendees, is not evidence of a specific instance of sexual behavior between Harry and Doe.   Such evidence would only be relevant to demonstrate that Doe has a flirtatious nature and predisposition towards casual sex, an impermissible form of evidence under rule 412(a).   If, however, Harry develops more evidence or another theory for this evidence that would make it admissible under rule 412(b), or another rule of evidence and not barred by rule

412, Harry may notify the Court, in accordance with rule 412(c), of his intention to introduce this evidence for at trial.

### III.   THE COURT WILL NOT REQUIRE THE UNITED STATES, OR ALLOW HARRY, TO INTRODUCE HIS TEXT MESSAGE DESCRIBING DOE'S CONDUCT BEFORE THE INCIDENT.

A text message purportedly sent from Harry to Wauneka the morning after the incident reads:   "From: Myron   I knw. She was all over me the whole nite.   I remember that.   ilmygirls :] CB: 505-486-0099 May 6, 6:29 am [sic]".   Government Exhibit S18; Suppression Tr. at 25:4-28:7 (Adams, Joe).   This message would inform the jury of nothing more than that Doe was flirting with Harry the night of the incident, evidence that would only be relevant to demonstrate Doe's sexual predisposition, and, therefore, is barred under rule 412.   Additionally, the rule of completeness does not require the United States to introduce this text message, even if the United States introduces other text messages sent from Harry to Wauneka after the incident.   Further, Harry may not introduce this message, because it is hearsay and not within any exception. Prohibiting Harry from introducing the text message does not violate his right to cross-examine witnesses, as the statement is his own, and he may take the stand and clear the record if he wishes to dispel any impression the United States creates from other statements that may be admitted into evidence.   On the other hand, because the United States conceded that Harry may take the stand and testify about Doe's actions towards him at the party, the Court will allow Harry to so testify if he chooses.

First of all, the text message from Harry to Wauneka is inadmissible hearsay if Harry attempts to introduce it.   Under rule 801(c) of the Federal Rules of Evidence, "'[h]earsay' means a statement that: **(1)** the declarant does not make while testifying at the current trial or hearing; and

**(2)** a party offers in evidence to prove the truth of the matter asserted in the statement."   Fed. R. Evid. 801(c).   The only purpose which the Court can fathom for which Harry would introduce the text message is for the truth of the matter he asserts: that Doe was "all over" Harry the night of the party.   Government Exhibit S18.   This purpose falls within rule 801(c)'s prohibition, and Harry has not asserted that an exception to the prohibition on hearsay applies.   "[A]s a general matter," parties are prohibited from introducing "their statements through other witnesses, because those statements are hearsay."   United States v. Goxcon-Chagal, 2012 WL 3249473, at *5.   The Court has previously prohibited defendants from introducing their own exculpatory statements through witnesses, rather than taking the stand at trial, and the Court sees no reason to break from those rulings here.   See United States v. Goxcon-Chagal, 2012 WL 3249473, at **5-6 (prohibiting defendants from introducing, through witnesses, exculpatory statements made to law enforcement officers); United States v. Chaco, 2011 WL 3510748, at *2 (in a sexual abuse case, prohibiting a defendant from introducing his previous denials of the charges through a law enforcement officer). Although the United States may introduce the text messages under rule 801(d)(2) as statements by a party opponent, that rule does not reciprocate admissibility to Harry, as the declarant.   See United States v. Chaco, 2011 WL 3510748, at *2 (explaining that the United States may introduce a defendant's previous denials of the charges against him through a witness, but that the defendant may not introduce his previous statements in the same manner).   Accordingly, Harry cannot introduce his statements regarding Doe's behavior at the party through a witness or exhibits.

Second, the rule of completeness does not overcome rule 801's prohibition of the text messages.   Cf. United States v. Coughlin, 821 F. Supp. 2d at 30 ("[R]egardless of whether this evidence is inadmissible hearsay or not, he can introduce it under the rule of completeness . . . .").

The Court previously ruled that it will not suppress text messages purportedly sent from Harry to Wauneka the morning after the incident.   See Doc. 114.   The text messages that the Court is not suppressing are:

> "From: Myron   Whats going on? Im lost! ilmygirls :] CB:505-486-0099 May 6, 5:36 am Stored: May 6, 6:00 am [sic]".   Government Exhibit S13.

> "From: Myron   Ok. I know u dnt. Ill guess I have 2 accept the charges.   I still love u guys though. CB: 505-486-0099 May 6, 6:05 am [sic]".   Government Exhibit S14.

> "From: Myron   Im sorry 4 what I did.   I didn't want 2 disrespect u in ur home. That's all I can say. Im sorry. il mygirls :-] CB:505-486-0099 May 6, 5:53 am [sic]".   Government Exhibit S15

> "From: Myron   Ok. Im sorry. ilmygirls :] CB: 505-586-0099 May 6, 6:15 am [sic]".   Government Exhibit S16

> "From: Myron   I knw. She was all over me the whole nite.   I remember that. ilmygirls :] CB: 505-486-0099 May 6, 6:29 am [sic]".   Government Exhibit S18

> "From: Myron   Well tel bean that Im sorry n That I am an idio n a stupid mafucker. Im sorry.   I wasn't in my right mind 2 do that 2 her.   Im stupid.   That's all I can say.   CB: 505-486-0099 [sic]".     Government Exhibit S19

> "From: Myron   I know. It was me.   I messed up.   I should have known better. Im sorry.   ilmygirls :] CB 505-486-0099 May 6, 6:41 am [sic]".   Government Exhibit S20

Suppression Tr. at 25:4-28:7 (Adams, Joe).[6]   See Doc. 114 at 65.   Rule 106 allows an adverse party to require the introduction of "any other part or any other writing or recorded statement which out in fairness to be considered contemporaneously" with a writing or recorded statement introduced by the other party.   Fed. R. Evid. 106.   One of a court's considerations with the rule of completeness is to avoid "misleading impressions[s] created by taking matters out of context."

---

[6] Government Exhibits S13-S20 are photographs of Wauneka's cellular telephone.   See Government's Exhibit List for Hearing on Defendant's Motion to Suppress Evidence Based on Spoliation or Incompleteness at 2, filed Sept. 18, 2012 (Doc. 91).

Fed. R. Evid. 106 advisory committee's notes.   "The rule of completeness, however, does not necessarily require admission of [an entire statement, writing or recording.]   Rather, only those portions which are 'relevant to an issue in the case' and necessary 'to clarify or explain the portion already received' need to be admitted."   United States v. Lopez-Medina, 596 F.3d at 735. Harry's statements regarding Doe's behavior at the party need not be admitted to avoid creating a misleading impression in the jury.   All of the text messages are Harry's own statements; therefore, the Court is not presented with a concern that might arise if the United States sought to introduce a question from Wauneka but to exclude Harry's response, for example.   Further, even though Harry's statements in the text message regarding Doe's behavior may be relevant whether she consented to casual sex with him, an issue that will be contested at trial, these statements are not "necessary to clarify or explain the portion already received."   United States v. Lopez-Medina, 596 F.3d at 735.   The remainder of the text messages are statements allegedly from Harry that describe himself, his feelings of remorse, and his desire to make amends with Wauneka.   Statements regarding Doe's behavior at the party are not necessary to clarify whether Harry felt as he did or whether Harry apologized to Wauneka.   The Court determines, therefore, that the rule of completeness does not require introduction of Harry's statement in the text message regarding Doe's behavior.

On the other hand, the United States conceded that the Federal Rules of Evidence do not prohibit Harry from taking the stand and testifying to Doe's behavior at the party before the incident.   See Apr. 10 Tr. at 17:21-18:1 (Nayback)(stating that Harry is "free to [take] the witness sta[nd] and say how [Doe] was hitting on him all night[,] that he remembers that she [] invited him in the room for consensual sex [] and he doesn't know why she's now claiming rape. . . .   [H]e's

free to disc[uss] that").  The Court previously allowed, in the absence of an objection by the United States, a criminal defendant to take the stand and testify about his multiple denials of the charges against him.  See United States v. Chaco, 2011 WL 3510748, at *2 ("Chaco also said that, if he takes the stand, he might testify about his denials; the United States did not object to the denials coming in through Chaco in his case.").  While the Court is not making an independent legal analysis whether it would allow Harry to so testify, if the United States objected, the Court will hold the United States to its pretrial concession and allow Harry to testify regarding Doe's behavior towards him, at the party, before the incident occurred.  He may not testify about Doe's general predisposition towards casual sex or about her interactions with other individuals.

IT IS ORDERED that the Sealed United States' Motion in Limine to Bar Evidence Under Rule 412, filed September 28, 2012 (Doc. 96), is granted.  Defendant Myron Harry may not introduce evidence of Jane Doe's sitting beside, touching, and/or hugging Harry at the party through witnesses or through exhibits such as a text message sent from Harry, but he may testify about Doe's behavior towards him at the party if he takes the stand to testify.

---

UNITED STATES DISTRICT JUDGE

Counsel:

Kenneth J. Gonzales
    United States Attorney
Kyle T. Nayback
David Adams
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

John F. Samore
Albuquerque, New Mexico

*Attorney for the Defendant*