## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                      No. CR 10-1915 JB

MYRON JIM HARRY,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the United States' Motion *In Limine* to Introduce Excited Utterance of Sexual Assault Victim, filed March 27, 2013 (Doc. 130)("MIL"). The Court held a hearing on April 10, 2013.   The primary issue is whether the Court should admit a statement that Jane Doe made to Shanitra Foster, a friend, allegedly moments after Defendant Myron Jim Harry raped Doe as an excited utterance.   The Court will grant the MIL, because the statement that Doe made to Foster was uttered after an alleged rape, a startling event; uttered while Doe was still under the stress of excitement from the event, as she was crying hysterically; and is related to the event, because she reported to Doe that a man had raped her.

## <u>FACTUAL BACKGROUND</u>

Plaintiff United States of America accuses Harry of sexually assaulting Doe during a party the night of May 5-6, 2010, in Shiprock, New Mexico.   <u>See</u> Indictment at 1, filed June 24, 2010 (Doc. 14).   The Court previously made findings of fact for Harry's Motion to Suppress Evidence Based on Spoliation or Incompleteness, filed June 26, 2012 (Doc. 75).   <u>See</u> Memorandum Opinion and Order at 2-16, filed February 19, 2013 (Doc. 114).   The Court incorporates those findings of fact by reference herein.

The United States asserts that, "[w]ithin a short time frame" after the alleged incident in the early morning hours of May 6, 2010, the United States asserts that Doe called Foster.   MIL at 1. During this telephone call, Doe was "crying hysterically and told [Foster] that a guy had raped her at Chaco Apartments."   MIL at 1-2.

## PROCEDURAL BACKGROUND

On June 24, 2010, a grand jury indicted Harry for having knowingly engaged in a sexual act with Doe, who was physically incapable of declining participation and could not communicate her unwillingness to engage in the sexual act, in violation of 18 U.S.C. §§ 1153, 2242(2), and 2246(A).   See Indictment at 1.   Trial in this matter is set for May 6, 2013, at 9:00 a.m.   See Agreed Order to Vacate and Reset Trial and Extend the Time for the Filing of Pre-Trial Motions at 4, filed February 28, 2013 (Doc. 12).   On March 27, 2013, Plaintiff United States of America filed the MIL, requesting the Court to determine the admissibility of the statement that Doe made to Foster.   The United States asserts that this statement "is admissible because it is an excited utterance that does not otherwise violate the Confrontation Clause."   MIL at 2.

The United States argues that the statement from Doe to Foster is "a classic, black-letter excited utterance."   MIL at 2.   The United States sets forth the requirements for the excited-utterance exception to the rule against hearsay: "that (1) there was a startling event; (2) the statement was made while the declarant was under the stress of excitement from this event; and (3) the statement related to this event."   MIL at 2 (citing Fed. R. Evid. 803(2); Woodward v. Williams, 263 F.3d 1135, 1140 (10th Cir. 2001)).   The United States says that all three prongs are met in this case, because (i) "it is beyond serious dispute that any rape qualifies as a startling event," MIL at 2, (ii) "the surrounding circumstances indicate that Jane Doe was still under the

stress of the event, the rape had occurred immediately prior to the statement, and the victim was crying hysterically when she made the phone call to her friend," MIL at 3, and (iii) the statements which Doe made during the telephone call reported that "a guy had raped her," MIL at 1-2.   The United States asserts that "there is no precise amount of time between the event and the statement beyond which the statement cannot qualify as an excited utterance," MIL at 3 (citing United States v. Ledford, 443 F.3d 702, 711 (10th Cir. 2005)), and that the "time lapse between the startling event and declaration" in this case "was marginal" and "can be measured in minutes," MIL at 3. The United States also argues that the statement does not violate the Confrontation Clause of the Sixth Amendment to the Constitution of the United States of America, because "the declarant will testify at trial and be subject to cross-examination," and even if Doe did not testify, the statement is not testimonial.   MIL at 4.   "[T]he statement was made to her friend for the purpose of seeking assistance with an ongoing emergency."   MIL at 4-5.

Harry calls into question the truth of the statement Doe allegedly made to Foster: "Thirty-five months after the events of May 6, 2010, the Government has produced a witness who allegedly heard a statement . . . ."  Response to Government's Motion in Limine to Introduce Excited Utterance, at 1, filed April 9, 2013 (Doc. 133)("Response").   He notes that the five friends who were present with Doe in the apartment when the incident occurred did not mention the telephone call.   See Response at 2.   He states that he has not been given an opportunity to interview this new witness, Response at 1 (citing Ake v. Oklahoma, 470 U,S. 68 (1985)), and that, in situations of "noncompliance with the discovery obligation," the district court has authority to "permit the discovery or inspection, grant a continuance, prohibit the party from introducing evidence not disclosed, or enter any other order that is just under the circumstances," Response

at 2 (quoting <u>United States v. Burke</u>, 571 F.3d 1048, 1055 (2009)).

Harry argues that the statement is not a "classic black letter" excited utterance statement. Response at 2.   He says there is no evidence that Doe made the telephone call or statement within an hour of the alleged rape and that such a fact should not be presumed.   <u>See</u> Response at 2. "Nothing separates this alleged statement from any other post-event statement made hours, days, months, or years after the event."   Response at 2.   He argues that the statements "appear more likely to be a narrative to the proposed witness, rather than the 'spontaneous' bursts which might conceivably be admissible under very different circumstances."   Response at 4 (quoting <u>United States v. Iron Shell</u>, 633 F.2d 77, 86 (8th Cir. 1980); <u>United States v. Knox</u>, 46 M.J. 688, 695 (U.S. Navy--Marine Corps App. 1997).

Although Harry says that he could conduct cross-examination on the statement, such examination would be "of little value to a jury's search for truth since the utterance risks confusion, division, and explore the outer reaches of probative value."   Response at 2 (citing Fed. R. Evid. 403).   Finally, he argues that, because the United States "belatedly produced this witness" and is also responsible for losing evidence that was subject to the denied Defense Motion to Exclude, the Court should not admit this additional evidence.   Response at 4.

The Court held a hearing on April 10, 2013.   Harry reiterated his concern that the United States is introducing this statement late in the process and that he would need an opportunity to interview the witness.   <u>See</u> Transcript of Hearing at 22:23-23:1 (Samore), taken April 10, 2013, filed May 9, 2013 (Doc. 177)("Tr.").   He argued that the statement that Doe made to Foster does not fit the standard of an excited utterance, because it was not the first opportunity Doe had to make a statement regarding the alleged rape, and that the United States is attempting to use cases

- 4 -

where children make excited utterances and then project those cases onto adults, but that those cases do not apply to adults.   See Tr. at 23:2-24 (Samore).   He contended that, because Doe was with five or six friends at the apartment, the first opportunity to make an excited utterance was with those friends.   See Tr. at 24:3-8.   The United States asserted that it mentioned Foster in the victim's report that it disclosed to Harry on July 9, 2010, as part of discovery, and so Harry had the report three years earlier.   See Tr. at 24:17-20 (Adams)(referring to Government Exhibit 4 to the Hearing, Letter from Kenneth J. Gonzales and Kyle T. Nayback to John F. Samore, sent July 9, 2010 ("Initial Discovery Letter").

The parties disagreed as to how much time elapsed between the alleged assault and the telephone call to Foster.   The United States said that Doe made the telephone call eleven minutes after the assault, based on the victim's report to Investigator Jefferson Joe.   See Tr. 24:18-25:2. In the report, Doe approximated that the sexual assault took place at 5:45 a.m., and Joe saw an outgoing telephone call on Doe's telephone to Foster at 5:56 a.m.   See Tr. 25:10-23 (Adams). The United States argued this time frame is well within the time for an excited utterance, as demonstrated in United States v. Ledford, 443 F.3d at 711, where a court admitted a female victim's statement made to an officer within a half-hour after a domestic altercation, see Tr. 26:1-6 (Adams), and in United States v. Pursley, 577 F.3d 1204 (10th Cir. 2009), where the court admitted statements that an adult male made to the hospital over an hour after he was assaulted in a jail cell, see Tr. 27:16-20.   Harry disagreed that the call took place eleven minutes after the assault, because the investigative report with Foster indicated that she recalled the telephone call around 6:30 a.m., almost an hour after the assault.   See Tr. 29:13-18 (Samore); Criminal Investigator Report from Shanitra Rose Foster Interview, filed March 27, 2013

(Doc. 103-1)("Foster Report").  He said that the United States had not presented any cellular telephone records, and so he did not know if Doe tried calling several times before Foster answered at 6:30 a.m..  See Tr. at 29:19-22 (Samore).   Harry contended that the Foster Report also states that Foster noticed several missed calls from Doe before 6:30 a.m., which Harry said may explain why the United States said the call took place at 5:56 a.m.   See Tr. 35:16-19 (Samore).   The United States said that it thought that Joe would be able to testify that the call took place at 5:56 a.m. based on the telephone's record of the duration of the call, but even if the call took place within forty-five minutes after the assault, the call took place within a reasonable time frame to come within the excited utterance rule.   See Tr. 36:1-23 (Adams)(directing the Court to the second page of the Initial Discovery Letter, which indicates that Doe called Foster "at 5:56 am," and that "[t]he time (5:56 am) was on her phone").

Harry argued that the main problem with the statement is not the lapse of time, but that this was not the first opportunity for Doe to talk about the assault.   See Tr. 29:23-30:11 (Samore).   He explained that a statement "may qualify as an excited utterance, but not an admissible excited utterance because of what's happened in the interim," and that "[t]he whole idea of excited utterance . . . is that there is no time to fabricate, that there is no time to take other information, that it is spontaneous."   Tr. at 30:21-31:4 (Samore).   The Court said it seemed odd to say that a person could have "an excited utterance with five of your friends, and because you pick up a cell phone and call a sixth friend that all of a sudden that that's not admissible."   Tr. at 31:6-11 (Court).   The United States agreed with the Court's analysis and said that whether a statement is an excited utterance depends on whether the person is still "under the stress of the excitement" rather than on the ability to fabricate.   Tr. at 33:12-23 (Adams, Court).

## LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible."   Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., No. CIV 10-0698 JB/RHS, 2013 WL 311846, at *13 (D.N.M. Jan. 18, 2013)(Browning, J.)(citing Fed. R. Evid. 802).   Under rule 801(c) of the Federal Rules of Evidence, "'[h]earsay' means a statement that: **(1)** the declarant does not make while testifying at the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement."   Fed. R. Evid. 801(c).   Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination."   United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999).   A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including to impeach a witness.   See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay.   If admitted for impeachment purposes, however, it is not hearsay.").

1.      **Law Regarding Rule 803(1).**

Rule 803(1) provides an exception to the rule against hearsay for "[a] statement describing an event or condition, made while or immediately after the declarant perceived it."   Fed. R. Evid. 803(1).   "By its own terms, application of Rule 803(1) has three distinct requirements: i) the statement must describe or explain the event perceived; ii) the declarant must have in fact perceived the event described; and iii) the description must be 'substantially contemporaneous' with the event in question."   United States v. Mejia-Valez, 855 F. Supp. 607, 613 (E.D.N.Y.

- 7 -

1994)(Korman, J.).   "The present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures." Brown v. Keane, 355 F.3d 82, 89 (2d Cir. 2004).   "'The underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication.'"   United States v. Jones, 221 F.3d 1353, 2000 WL 1089533, at *4 (10th Cir. 2000)(unpublished table decision)(quoting United States v. Parker, 936 F.2d 950, 954 (7th Cir. 1991)).   "The admissibility of spontaneous utterances -- one ground relied on by the state trial court -- was recognized by the Supreme Court over a century ago in Insurance Co. v. Mosley, 75 U.S. (8 Wall.) 397, 406-07 . . . (1869)." Martinez v. Sullivan, 881 F.2d 921, 928 (10th Cir. 1989).

### 2.   Law Regarding Rule 803(2)

Rule 803(2), commonly referred to as the excited utterance exception, provides an exception to the exclusion of hearsay statements for "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."   Fed. R. Evid. 803(2).   The United States Court of Appeals for the District of Columbia has noted that "[t]he rationale underlying the 'excited utterance' exception is that 'excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable.'"   United States v. Alexander, 331 F.3d 116, 122 (D.D.C. 2003)(quoting United States v. Brown, 254 F.3d 454, 458 (3d Cir. 2001)).   "Thus, to qualify as an excited utterance, the declarant's state of mind at the time that the statement was made must preclude conscious reflection on the subject of the statement." United States v. Alexander, 331 F.3d at 122 (quoting United States v. Joy, 192 F.3d 761, 766 (7th

Cir. 1999))(internal quotations and changes omitted).   The United States Court of Appeals for the

Tenth Circuit, in United States v. Smith, 606 F.3d 1270 (10th Cir. 2010), set forth a district court's

required analysis for whether a statement is admissible under the excited utterance exception:

> The so-called excited-utterance exception has three requirements: (1) a startling
> event; (2) the statement was made while the declarant was under the stress of the
> event's excitement; and (3) a nexus between the content of the statement and the
> event.   There is no precise amount of time between the event and the statement
> beyond which the statement cannot qualify as an excited utterance.   Admissibility
> hinges on a statement's contemporaneousness with the excitement a startling event
> causes, not the event itself.   There is no hard time limit that must be met under
> Rule 803; what is relevant is whether the declarant is still under the excitement of
> the startling event.

606 F.3d at 1279 (citations omitted)(internal quotation marks omitted).   The Tenth Circuit has

noted:

> Courts consider a range of factors in determining whether a declarant made a
> statement while under the stress of a particular event.   Among the more relevant
> factors are: the amount of time between the event and the statement; the nature of
> the event; the subject matter of the statement; the age and condition of the
> declarant; the presence or absence of self-interest; and whether the statement was
> volunteered or in response to questioning.

United States v. Pursley, 577 F.3d 1204, 1220 (10th Cir. 2009).   "Permissible subject matter of

the statement is [not] limited . . . to description or explanation of the event or condition . . . .   [T]he

statement need only relate to the startling event or condition, thus affording a broader scope of

subject matter coverage."   United States v. Frost, 684 F.3d 963, 973 (10th Cir. 2012)(first

brackets in original)(quoting Fed. R. Evid. 803 Advisory Comm. Notes).   "If the trial court has

access to a recording of the declarant's statement, it may also consider the declarant's 'tone and

tenor of voice' in determining whether the declarant made that statement while under the stress of

excitement."   United States v. Alexander, 331 F.3d 116, 123 (D.C. Cir. 2003)(quoting United

States v. Woodfolk, 656 A.2d 1145, 1151 n.16 (D.C. 1995)(collecting cases)).

The United States Court of Appeals for the Second Circuit has provided an analysis of the

similarities and subtle differences between the present sense impression and excited utterance

exceptions to the rule against hearsay:

> As defined by the Federal Rules of Evidence, a present sense impression is a
> statement "describing or explaining an event or condition made while the declarant
> was perceiving the event or condition, or immediately thereafter."   Rule 803(1),
> Fed. R. Evid.   Such statements are considered to be trustworthy because the
> contemporaneity of the event and its description limits the possibility for
> intentional deception or failure of memory.   See United States v. Brewer, 36 F.3d
> 266, 272 (2d Cir. 1994).
>
> The hearsay exception for excited utterances is premised on a similar,
> though distinct, assumption that the reliability of a statement increases as
> opportunity for reflection by the declarant decreases.   An "excited utterance" is
> "[a] statement relating to a startling event or condition made while the declarant
> was under the stress of excitement caused by the event or condition."   Rule 803(2),
> Fed. R. Evid.   As we have explained, "[t]he rationale for this hearsay exception is
> that the excitement of the event limits the declarant's capacity to fabricate a
> statement and thereby offers some guarantee of its reliability."   [United States v.]
> Tocco, 135 F.3d [] [116,] 127[ (2d Cir. 1998)].   Unlike present sense impressions,
> "[a]n excited utterance need not be contemporaneous with the startling event to be
> admissible."   Id.   Rather "[t]he length of time between the event and the utterance
> is only one factor to be taken into account in determining whether the declarant
> was, within the meaning of rule 803(2), 'under the stress of excitement caused by
> the event or condition.'"   United States v. Scarpa, 913 F.2d 993, 1017 (2d Cir.
> 1990).
>
> . . . .
>
> Thus while the hearsay exception for present sense impressions focuses on
> contemporaneity as the guarantor of reliability, and requires that the hearsay
> statement "describe or explain" the contemporaneous event or condition, Rule
> 803(1), Fed. R. Evid., the excited utterance exception is based on the psychological
> impact of the event itself, and permits admission of a broader range of hearsay
> statements -- i.e. those that "relate to" the event.   Rule 803(2), Fed. R. Evid.

United States v. Jones, 299 F.3d 103, 112 & n.3 (2d Cir. 2002).

In Maples v. Vollmer, No. CIV 12-0294 JB/RHS, 2013 WL 1681234 (D.N.M. March 31, 2013)(Browning, J.), the plaintiff's "then-boyfriend's daughter" called 911; in response, the defendant officers arrived at the plaintiff's residence.  2013 WL 1681234, at *1.  The plaintiff was in his front yard when the officers arrived; when he tried to walk away from them, the officers chased the plaintiff, who then fled from the officers.  See 2013 WL 1681234, at *1.  The officers tackled the plaintiff when they caught up to him, and the plaintiff alleged that the officers used excessive and unnecessary force.  See 2013 WL 1681234, at *1.  The plaintiff filed a motion in limine, asking the Court to prohibit the defendants or their witnesses from disclosing the contents of the 911 call.  See 2013 WL 1681234, at *2.  The Court concluded that the call was admissible under rule 803(2), noting that it satisfied the three requirements of the excited-utterance exception to the rule against hearsay:

> The second and third requirements of the excited utterance analysis cannot reasonably be challenged under the circumstances surrounding S. Lane's 911 call: (i) S. Lane's statements were contemporaneous with the event, and there is thus no lapse of time here between the startling event to which S. Lane's statements relate and the statements; and (ii) there is a nexus between the statements' content and the event, as S. Lane's statements detail the event in real time, explain why the event prompted her to call 911, and describe Maples to the 911 operator.

2013 WL 1681234, at *16.   The remaining issue was whether the event to which they relate -- the plaintiff's "attempt to allegedly wrongfully gain access" to his residence and his "coming after" the caller's father -- was "a startling event or condition."   2013 WL 1681234, at *16.

> Professor Stephen A. Saltzburg explains that courts have been quite liberal in finding that an event is startling for purposes of rule 803(1):
>
> > In most cases it is not seriously disputed that the event to which the excited utterance relates is in fact a startling event. Occurrences

- 11 -

such as accidents, fights, and physical crimes are generally deemed startling events. However, admissibility under the Rule is not limited to events describing such clearly upsetting occurrences. The Courts have been quite expansive in finding that an event triggered a startled statement is in fact a startling event.

4 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, Fed. Rules of Evid. Manual § 803.02[3][b], at 803-18 (9th ed.2006)(footnotes omitted).   Professor Saltzburg cites to David v. Pueblo Supermarket, 740 F.2d 230 (3d Cir.1984), as an "e.g." example to support his proposition that courts have been quite expansive in finding a startling event.   In David v. Pueblo Supermarket, the United States Court of Appeals for the Third Circuit held that a woman observing another woman, to whom she was not related, "who was eight months pregnant fall directly on her stomach . . . would reasonably qualify as a 'startling occasion.'"   740 F.2d at 235. Another example to which Professor Saltzburg cites is United States v. Beverly, 369 F.3d 516 (6th Cir.2006), in which the United States Court of Appeals for the Sixth Circuit held that "viewing the photograph of the individual that [the declarant] recognized as her husband committing a bank robbery was a startling event."   369 F.3d at 540.

2013 WL 1681234, at *16.   The Court noted that the caller believed that the plaintiff was not supposed to be at his residence, "he had left the hospital when he should not have, that she was 'pretty sure' he was in the hospital because he was suicidal, and that she believed [the plaintiff] was at the residence because he was coming after her father," concluding that "[t]hese events are at least as startling as observing an unrelated person, even a pregnant person, slip in a grocery store." 2013 WL 1681234, at *16.

## LAW REGARDING THE CONFRONTATION CLAUSE

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."   U.S. Const. amend. VI.   In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court of the United States held that, consistent with the Sixth Amendment, "[t]estimonial [hearsay] statements of witnesses absent from trial [are admissible] only where the declarant is

unavailable, and only where the defendant has had a prior opportunity to cross-examine."  541

U.S. at 59.   In Davis v. Washington, 547 U.S. 813 (2006), the Supreme Court further elaborated

on what a "testimonial" statement is:

> Statements are nontestimonial when made in the course of police interrogation
> under circumstances objectively indicating that the primary purpose of the
> interrogation is to enable police assistance to meet an ongoing emergency.   They
> are testimonial when the circumstances objectively indicate that there is no such
> ongoing emergency, and that the primary purpose of the interrogation is to establish
> or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822.   The Tenth Circuit has restated this rule, defining a testimonial statement as "a

'formal declaration made by the declarant that, when objectively considered, indicates' that the

'primary purpose of the [statement is] to establish or prove past events potentially relevant to later

criminal prosecution.'"   United States v. Morgan, --- F.3d ---, 2014 WL 1378207, at *9 (10th Cir.

April 9, 2014)(alteration in original)(quoting United States v. Smalls, 605 F.3d 765, 777-78 (10th

Cir. 2010)).   Accord United States v. Chaco, 801 F.Supp.2d 1200, 1209-10 (D.N.M.

2011)(Browning, J.)(discussing developments in Tenth Circuit precedent on the test regarding

what qualifies as a testimonial statement).

In Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), the Supreme Court addressed

whether the admission of a sworn affidavit by a forensic chemist, who testified in the affidavit that

the substance which police seized from the defendant was cocaine of a certain amount, violated the

Confrontation Clause.   See 557 U.S. at 307.   The Supreme Court first found that such affidavits

were testimonial, because they were "made under circumstances which would lead an objective

witness reasonably to believe that the statement would be available for use at a later trial," and

because, under Massachusetts law, the sole purpose of the affidavit was to provide prima facie

evidence of the content of the substance seized.   557 U.S. at 310.   The Supreme Court then used

the affidavit introduced by the prosecution to outline its concerns regarding the lack of

cross-examination when such affidavits are introduced as evidence:

> The affidavits submitted by the analysts contained only the bare-bones statement that "[t]he substance was found to contain: Cocaine."   At the time of trial, petitioner did not know what tests the analysts performed, whether those tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed.   While we still do not know the precise tests used by the analysts, we are told that the laboratories use "methodology recommended by the Scientific Working Group for the Analysis of Seized Drugs," At least some of that methodology requires the exercise of judgment and presents a risk of error that might be explored on cross-examination.

557 U.S. at 320.   Because there was no opportunity to cross-examine on these issues, the Supreme

Court concluded that introduction of the affidavit violated the defendant's rights under the

Confrontation Clause.   See 557 U.S. at 329 ("The Sixth Amendment does not permit the

prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such

evidence against Melendez-Diaz was error.").   The Supreme Court has since extended this

holding to "forensic laboratory report[s] containing a testimonial certification -- made for the

purpose of proving a particular fact -- through the in-court testimony of a scientist who did not sign

the certification or perform or observe the test reported in the certification."   Bullcoming v. New

Mexico, 131 S. Ct. 2705, 2710, 2715 (2011)("Accordingly, the analysts who write reports that the

prosecution introduces must be made available for confrontation even if they possess 'the

scientific acumen of Mme. Curie and the veracity of Mother Teresa.'").

Except in rare cases, the prosecution's use of live or recorded video testimony without the

defendant having the ability to confront the witness face-to-face violates a defendant's

Confrontation Clause rights -- absent a showing of unavailability and prior opportunity to confront

- 14 -

the witness.   See United States v. Sandoval, No. 04-2362, 2006 WL 1228953, *7-9 (D.N.M. Mar.

7, 2006)(Browning, J.).   In Maryland v. Craig, 497 U.S. 836 (1990) -- which was decided before

Crawford v. Washington -- the Supreme Court rejected a Confrontation Clause challenge to a

Maryland statute that allowed a child witness in a child molestation case, under certain

circumstances, to testify via a one-way closed circuit television, which did not allow the witness to

view the defendant.   See 497 U.S. at 860.   While upholding the constitutionality of a child's

testimony outside the defendant's presence, the Supreme Court in Maryland v. Craig recognized

that the "central concern of the Confrontation Clause is to ensure the reliability of the evidence

against a criminal defendant by subjecting it to rigorous testing in the context of an adversary

proceeding before the trier of fact."   497 U.S. at 845.[3]

The Supreme Court in Maryland v. Craig recognized that the context of an adversary

proceeding before the trier of fact involved "[t]he combined effect of these elements of

confrontation -- physical presence, oath, cross-examination, and observation of demeanor by the

trier of fact" that "is the norm of Anglo-American criminal proceedings."   497 U.S. at 846.   The

Supreme Court in Maryland v. Craig also acknowledged the peculiar power of face-to-face

confrontation in that "face-to-face confrontation enhances the accuracy of fact finding by reducing

the risk that a witness will wrongfully implicate an innocent person," 497 U.S. at 846 (citing Coy

v. Iowa, 487 U.S. 1012, 1019-20 (1988)), and that "face-to-face confrontation forms 'the core of

the values furthered by the Confrontation Clause,'" Maryland v. Craig, 497 U.S. at 847 (quoting

California v. Green, 399 U.S. 149, 157 (1970)).

_____

[3] The Supreme Court has since distanced itself from this holding that the purpose of the
Confrontation Clause is to ensure the reliability of evidence.   See Crawford v. Washington, 541
U.S. at 61.

- 15 -

The Supreme Court explained in Maryland v. Craig that the Confrontation Clause "reflects a preference for face-to-face confrontation at trial," but that the preference "must occasionally give way to considerations of public policy and the necessities of the case."   497 U.S. at 849 (internal quotation marks omitted).   The Supreme Court emphasized that the preference for face-to-face confrontation is strong, and that a defendant's Sixth Amendment confrontation right "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured."   497 U.S. at 850.

While the issue is decidedly less clear, it is unlikely that a violation of a defendant's Confrontation Clause rights occur when he calls one of his own witnesses who is aligned with him by videoconference or telephonically.   See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." (emphasis added)).   Cf. United States v. Olguin, 643 F.3d 384, 392 (5th Cir. 2011)("The Sixth Amendment guarantees the right to confrontation against a party testifying against him, not against others.").   The need for "adversariness" is not present when the witness is aligned with the defendant.   Maryland v. Craig, 497 U.S. at 845.   The Supreme Court spoke in Crawford v. Washington about the need for the defendant to have "an adequate opportunity to cross-examine" a witness to satisfy the Confrontation Clause, a need which is not present when the witness is aligned with the defendant.   See 541 U.S. at 58.   The Federal Rules of Evidence, for example, generally do not permit a party to ask leading questions -- a key tool of cross examination -- of a

witness aligned with the party calling the witness.   <u>See</u> Fed. R. Evid. 611(c).[4]   A defendant might

also waive a Confrontation Clause challenge by calling his own witness by videoconference or

telephonically.   <u>See</u> <u>United States v. Lopez-Medina</u>, 596 F.3d 716, 730-734 (10th Cir.

2010)("Prior to <u>Crawford</u>, we held there was 'no doubt' a defendant could waive his rights under

the Confrontation Clause.   The parties do not argue <u>Crawford</u> changed this rule.").

Like many constitutional rights, a defendant may choose to waive his Confrontation Clause

rights.   In 1969, the Supreme Court recognized that a defendant may waive his Confrontation

Clause rights and that defendants commonly do so when pleading guilty.   <u>See</u> <u>Boykin v.

Alabama</u>, 395 U.S. 238, 270 (1969)("Several federal constitutional rights are involved in a waiver

that takes place when a plea of guilty is entered in a state criminal trial. . . .   Third, is the right to

confront one's accusers.").   The Tenth Circuit has recognized that, both before and after the

Supreme Court's decision in <u>Crawford v. Washington</u>, a defendant may knowingly waive his

Confrontation Clause rights at trial.   <u>See</u> <u>United States v. Lopez-Medina</u>, 596 F.3d at 730-734

(recognizing that Confrontation Clause rights may be waived at trial "at least where there is an

explicit waiver").   Specifically, the Tenth Circuit stated: "Prior to <u>Crawford</u>, we held there was

'no doubt' a defendant could waive his rights under the Confrontation Clause.   The parties do not

argue <u>Crawford</u> changed this rule."   <u>United States v. Lopez-Medina</u>, 596 F.3d at 731 (citations

omitted).   The Tenth Circuit has held in prior cases that a defendant's counsel can stipulate to the

admissibility of evidence that would otherwise violate the Confrontation Clause if doing so "was a

---

[4] Rule 611(c) of the Federal Rules of Evidence provides: "(c) **Leading Questions.**
Leading questions should not be used on direct examination except as necessary to develop the
witness's testimony. Ordinarily, the court should allow leading questions: (1) on
cross-examination; and (2) when a party calls a hostile witness, an adverse party, or a witness
identified with an adverse party."   Fed. R. Evid. 611(c).

matter of prudent trial strategy."   Hawkins v. Hannigan, 185 F.3d 1146, 1155 (10th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit has recognized that such a waiver can be

permissible in the context of the prosecution admitting a videotaped deposition of one of its

witnesses.   See Earhart v. Konteh, 589 F.3d 337, 344 (6th Cir. 2009).   The Sixth Circuit in that

case relied on one of its prior decisions where it had permitted such a waiver:

> The State relies upon our holding in Bailey v. Mitchell, 271 F.3d 652 (6th Cir.
> 2001), to argue that Earhart waived his right to contest the admission of the
> videotape deposition.   In Bailey, we held that a criminal defendant waived his
> right to confrontation by entering into a quid pro quo agreement with a state
> prosecutor.   Id. at 657.   The petitioner in Bailey had agreed to allow the State to
> admit the videotape deposition if the prosecutor would consent to the defendant's
> motion for a continuance.   Id.   Importantly, the Ohio state courts found as a
> factual matter that Bailey had made an explicit deal with the prosecutor for the
> admission of the videotape.   Id.

Earhart v. Konteh, 589 F.3d at 344.   Notably, the Tenth Circuit's case in United States v.

Lopez-Medina involved an oral waiver on the record in open court.   See 596 F.3d at 731 ("It is

clear from this statement [to the judge] that defense counsel intentionally relinquished his (or

rather, his client's) confrontation right through his questioning of Johnson.").

## ANALYSIS

The United States argues that the statement Doe made to Foster the morning of the alleged

rape is a classic excited utterance, because it fits all three prongs of the rule, namely that there was

a startling event, that the declarant made the statement while under the stress of excitement from

the event, and that the statement related to the event.   Harry argues that the statement is not an

excited utterance, particularly because it was not Doe's first opportunity to report the alleged rape.

The Court does not see support for Harry's additional requirement that, unless the statement is

made at the first opportunity, it cannot be an excited utterance.   The Court will admit Doe's

statement as an excited utterance, because it meets all three requirements for an excited utterance.

The Tenth Circuit set forth three requirements for whether a statement is admissible under the excited utterance exception: "(1) a startling event; (2) the statement was made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event." United States v. Smith 606 F.3d at 1279 (internal citations and question marks omitted). Harry does not argue about the first and third requirements, and the United States has produced enough evidence to satisfy these two elements. Regarding the first -- that there is a startling event -- the United States says "it is beyond serious dispute that any rape qualifies as a startling event." MIL at 2. Harry does not contest this point, and the Court concludes that the alleged rape was a "startling event." E.g., United States v. Frost, 684 F.3d 963, 973 (10th Cir. 2012)(reviewing for plain error and affirming the district court's holding that an alleged rape victim's statements during a telephone call to her sister satisfied the excited utterance exception because the victim experienced "two startling events: being raped, and being kicked out by [the defendant's mother] in the middle of the night"); United States v. Smith, 606 F.3d at 1279 (reviewing for abuse of discretion and affirming the district court's holding that an alleged rape victim's statements to a neighbor following the incident satisfied the excited utterance exception because "a startling event occurred -- the sexual assault"). The United States has also produced enough evidence regarding the third requirement -- that there is a nexus between the content of the statement and the startling event -- because the police report from March 26, 2013, indicates that Doe told Foster "that a guy at Chaco Apartments had raped her." Foster Report at 1.

Harry argues that the statement is not an excited utterance, because it fails under the second requirement -- that the declarant made the statement while "under the stress of the event's

excitement."   United States v. Smith, 606 F.3d at 1279.   The United States argues that Doe called

Foster within eleven minutes after the incident and that she was crying hysterically when she made

the statement, both factors indicating that Doe was still under the stress of the event's excitement.

Harry disputes how much time had elapsed between the incident and the telephone call, and there

is conflicting evidence on this point.   The United States produced evidence in a police report that

Doe called Foster at 5:56 a.m. and that the time 5:56 a.m. was on Doe's telephone.   See Initial

Discovery Letter at 2.   The United States also attached to its MIL a police report from March 6,

2013, which stated that Foster recalled Doe's telephone call occurring around 6:30 a.m. and that

she noticed multiple missed calls before that time.   See Foster Report at 1.   Harry said at the

hearing that the multiple missed calls may explain the discrepancy in timing, but the United States

said it believed that Joe would testify that the call took place at 5:56 a.m. based on the duration of

the call in Doe's telephone storage.   If Doe made the statement at 5:56 a.m., then it was

approximately eleven minutes after the incident; if she made the statement at 6:30 a.m., then it was

approximately forty-nine minutes after the incident.

The Tenth Circuit has said that "there is no precise amount of time between the event and

the statement beyond which the statement cannot qualify as an excited utterance."   United States

v. Smith, 606 F.3d at 1279.   The important focus is whether the statement is contemporaneous

with the excitement, and not necessarily contemporaneous with the startling event.   See United

States v. Smith, 606 F.3d at 1279.   "There is no hard time limit that must be met under Rule 803;

what is relevant is whether the declarant is still under the excitement of the startling event."

United States v. Smith, 606 F.3d at 1279.   Even assuming Doe made the statement almost an hour

after the incident, it may still be an excited utterance if Doe was under the stress of the excitement

- 20 -

of the event when she made the statement.   See United States v. Smith, 606 F.3d at 1280 (holding

that the victim's statement made "less than two hours after being raped" and while the victim was

"still under obvious stress from the attack" was an excited utterance, and citing other courts'

findings of the excited utterance exception where the time period ranged from three hours to a day

after the startling event)   A court may consider several factors to determine if a victim is still

under the stress of the incident's excitement, including "the amount of time between the event and

the statement; the nature of the event; the subject matter of the statement; the age and condition of

the declarant; the presence or absence of self-interest; and whether the statement was volunteered

in response to questioning."   United States v. Smith, 606 F.3d at 1279 (quoting United States v.

Pursley, 577 F,3d at 1220).

Harry argues that the statement cannot be an excited utterance, because it was not Doe's

first opportunity to make such a statement.   He cites United States v. Rivera, 43 F.3d 1291 (9th

Cir. 1995), for the proposition that the statement be made at the "first opportunity to report."

Response at 3.   In United States v. Rivera, the Court of Appeals for the Ninth Circuit affirmed the

district court's determination that a statement which the victim made to her mother one-half of an

hour after the rape was an excited utterance, in part because the victim "made the statements

immediately after [the defendant] returned her to her mother."   43 F.3d at 1296 (emphasis in

original).   The Ninth Circuit relied on a Court of Appeals for the Fourth Circuit decision, where

the Fourth Circuit observed that the "time lapse to be considered in [child sexual abuse] cases is

not simply the time between the abuse and the declaration.   Rather, courts must also be cognizant

of the child's first real opportunity to report the incident."   United States v. Rivera, 43 F.3d at

1296 (quoting Morgan v. Foretich, 846 F.2d 941, 947 (4th Cir. 1988)).   In Morgan v. Foretich, the

child victim told her mother almost three hours after the incident that her father sexually abused her.   See 846 F.2d at 945.   Although three hours was a significant length of time between the incident and the statement, the Fourth Circuit noted that it was "the child's first real opportunity to report the incident" and, "[g]iven all of the other factors of trustworthiness present in this case, we find that three hours is well within the bounds of reasonableness and [the victim's] statements were spontaneous declarations."   Morgan v. Foretich, 846 F.2d at 947.   Harry interprets these cases to say that, if the victim did not make statement at the first opportunity, it cannot be an excited utterance.   He misreads, however, what the Fourth and Ninth Circuits have found as a sufficient reason to admit a statement as an excited utterance as a necessary predicate for a statement to be an excited utterance, much like the error the defendant made in United States v. Jennings, 496 F.3d 344 (4th Cir. 2007).   In that case, the defendant sexually assaulted a thirteen-year-old girl during an airline flight.   See 496 F.3d at 346-47.   In the middle of the flight, the defendant got up to go to the bathroom, and then returned and continued the assault.   See 496 F.3d at 346.   Another passenger on the flight asked the flight attendants to move the defendant to another seat, and it was after this change that the victim first made any statements regarding the assault.   See 496 F.3d at 347.   The defendant argued that, because she did not "report the abuse to flight attendants at her earliest opportunity," her later statements to other passengers could not be excited utterances.   See 496 F.3d at 350.   The Fourth Circuit rejected this argument and the defendant's reading of Morgan v. Foretich: "Morgan does not create a rule that requires children to report sexual abuse at the earliest opportunity in order for their statements to be considered excited utterances.   To the contrary, it affirmatively rejected such a mechanical approach to the excited utterance exception." United States v. Jennings, 496 F.3d at 350.   Instead of focusing only on the time between the

- 22 -

incident and the statement, the Fourth Circuit in <u>Morgan v. Foretich</u> "elongated the temporal view courts should take when considering whether a child was in an excited state, and it eschewed the use of the very type of bright-line rule that [the defendant] would have us adopt."   <u>United States v. Jennings</u>, 496 F.3d at 350.

Similarly, Harry's argument -- that because Doe had an earlier opportunity to make a statement regarding the alleged rape, it cannot be an excited utterance -- is misguided.   The Court will instead focus on whether Doe made the statement still under the stress of the event, which would indicate its trustworthiness, and removes the concern that she may have fabricated the statement or incorrectly remembered the events.   <u>See</u> <u>United States v. Jennings</u>, 496 F.3d at 350 ("At bottom, the analysis must focus on whether the declarant's statement was trustworthy by being made in circumstances where it would not be reasonable to conclude that the declarant fabricated the statement or incorrectly remembered the events related.").

In this case, Doe made the statement between eleven and forty-nine minutes after the incident.   Although this is a large time range for when Doe made the statement, there are independent factors that indicate Doe was still under the stress of the event when she made the statement.   The Foster Report indicates that Doe was "crying hysterically," and "was really upset and crying."   Foster Report at 1.   Doe did not make the statements to Foster in response to questioning, but she initiated the telephone call and volunteered the statements to Foster.   <u>See</u> Initial Discovery Letter at 2 ("[Doe] called [Foster] because she was upset and wanted to talk to a friend.]".   The Court concludes that, with the evidence before it, Doe was still under the excitement of the incident when she made the statements to Foster, whether it was eleven minutes or forty-nine minutes after the incident.

Although Harry contended that he was not aware of Doe's statement to Foster until the United States filed its MIL, and thus, did not have an opportunity to interview Foster, the United States established through the Initial Discovery Letter that it disclosed the evidence to Harry on July 9, 2010; at the hearing, Harry stipulated that he received the discovery on that date.  <u>See</u> Tr. at 398:25-39:6 (Samore)(agreeing to admit the Initial Discovery Letter with the attached discovery, and stipulating that he received it on July 9, 2010).  Harry had nearly three years to interview Foster, based on the timing of the Initial Discovery Letter, and, thus, has had a sufficient amount of time to interview the United States' witnesses.

The United States asserted that admitting Doe's statement to Foster would not violate the Confrontation Clause, because "Jane Doe will testify at trial and be subject to cross-examination. The United States also intends to call Shanitra Foster."  MIL at 4.  The United States also contended that Doe's statement to Foster "would not be testimonial, as defined by <u>Crawford</u>, even if she did not testify," because Doe made the statement "to her friend for the purpose of seeking assistance with an ongoing emergency."  MIL at 4-5.  The Court agrees that admitting Doe's statement does not violate the Confrontation Clause, because Doe will testify and be subject to cross-examination, and because her statement is not testimonial.  <u>See</u> <u>Giles v. California</u>, 554 U.S. 353, 376 (2008)(stating that the Confrontation Clause excludes only testimonial statements, and that "[s]tatements to friends and neighbors about abuse and intimidation and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules").

**IT IS ORDERED** that the United States' Motion *In Limine* to Introduce Excited Utterance of Sexual Assault Victim, filed March 27, 2013 (Doc. 130), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
    United States Attorney
Kyle T. Nayback
    Assistant United States Attorney
David Adams
    Special Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

John F. Samore
Albuquerque, New Mexico

       *Attorney for the Defendant*