IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                  No. CR 10-1915 JB

MYRON HARRY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Pre-Trial Motion in Limine, filed May 5, 2013 (Doc. 158)("MIL"). The Court heard the MIL during trial on May 6, 2013. The primary issues are whether evidence of a conversation that took place between Stephanie Johnson, who owns the home where Defendant Myron Harry allegedly assaulted Jane Doe, and Christina Padilla, Harry's girlfriend, and evidence of Padilla's reaction to seeing Doe after the conversation are relevant to the current case. Because the conversation between Johnson and Padilla is either irrelevant to or inadmissible hearsay, and because Padilla's reaction to seeing Doe is either irrelevant or requires the admission of inadmissible hearsay, the Court will grant the MIL.

## FACTUAL BACKGROUND

The United States accuses Harry of sexually abusing Doe during a party on the night of May 5, 2010, and the morning of May 6, 2010, in Shiprock, New Mexico. See Indictment at 1, filed June 24, 2010 (Doc. 14)("Indictment"). The Court previously made findings of fact for Harry's Motion to Suppress Evidence Based on Spoliation or Incompleteness, filed June 26,

2012 (Doc. 75).  See Memorandum Opinion and Order at 2-16, filed February 19, 2013 (Doc. 114).  The Court incorporates those findings of fact by reference herein.

At the Grand Jury, Plaintiff United States of America questioned Johnson, at whose home Harry allegedly assaulted Doe, regarding the incident.  See Transcript of Grand Jury Proceedings at 38:18-39:15 (Johnson)(taken June 23, 2010)("Grand Jury Tr.").[1]  Johnson testified that she contacted Harry's girlfriend, Christina Padilla, the morning after the incident, and told her to come to the apartment of Johnson and Johnson's fiancé, Dimitri Wauneka.  See Grand Jury Tr. at 45:10-45:29 (Johnson).  Johnson stated that, when Padilla arrived at the apartment, Johnson "told her what had happened."  Grand Jury Tr. at 45:25-46:1 (Johnson).  Johnson stated that Padilla "just broke down."  Grand Jury Tr. at 46:1 (Johnson).  Johnson testified that Padilla did not believe Johnson at first, and, thus, Johnson told Padilla to ask Doe, who was still at the apartment, about the incident.  See Grand Jury Tr. at 46:6-46:11 (Johnson).  Johnson stated that Padilla went upstairs and tried to speak with Doe, but could not converse with her.  See Grand Jury Tr. at 46:13-46:16 (Johnson).  Johnson stated that Padilla started crying, said "'I can't do this,'" and left without speaking with Doe.  Grand Jury Tr. at 46:6-46:16 (Johnson).

## PROCEDURAL BACKGROUND

On June 24, 2010, a grand jury indicted Harry for having knowingly engaged in a sexual act with Doe, who was physically incapable of declining participation and could not

---

[1] The Grand Jury Tr. contains two sets of page numbers; one set is in the upper-right-hand corner of the page, and the other is at the bottom-right corner, which is prefaced by the word "Discovery."  Harry refers to the Grand Jury Tr. by the "Discovery" page numbers.  See MIL at 1-2.  The Court will, however, refer to the Grand Jury Tr. by the numbers in the upper-right-hand corner of the transcript.

communicate her unwillingness to engage in the sexual act, in violation of 18 U.S.C. §§ 1153, 2242(2), and 2246(A).  See Indictment at 1.  Trial in this matter is presently set for May 6, 2013, at 9:00 a.m.  See Agreed Order to Vacate and Reset Trial and Extend the Time for the Filing of Pre-Trial Motions at 4, filed February 28, 2013 (Doc. 12).

      Harry requests that the Court and the United States identify Doe as the "alleged victim," or by her given name, but that the Court not refer to Doe, or allow the United States to refer to Doe, as "victim," except during "Final Argument, Rebuttal Argument, or in the absence of the jury."  MIL ¶ 1, at 1.  Harry requests that the Court "confirm on the record that the ambiguous references in the investigative notes regarding . . . previous incidents involving [Johnson] or another hearsay rumor about [Harry's] high school days" will not be introduced at trial, because the United States did not file any motion to introduce evidence under rule 404(b) of the Federal Rules of Evidence.  MIL ¶ 2, at 1.  Harry requests that the Court not allow the United States to refer to itself as "representing the people of the United States" and, rather, require the United States to refer to itself by a neutral term, such as "the Government."  MIL ¶ 3, at 1 (internal quotations omitted).  Harry also requests that the Court exclude "any conservation post-incident with Christina Padilla"; Harry asserts that any reference to this conservation with Harry's girlfriend is irrelevant.  MIL ¶ 4, at 2.

      Before the trial began on May 6, 2012, the Court noted, at a hearing the week before, that the United States agreed to refer to Doe as the "alleged victim," rather than "victim."  Transcript of Trial at 5:17-5:21 (taken May 6, 2013)(Court, Adams)("May 6 Tr.").[2]  See Transcript of

---

[2]The Court's citations to the district court transcripts -- as opposed to the Grand Jury

Hearing at 57:21-57:23 (taken May 2, 2013)(Court, Samore)("May 2 Tr."); id. at 60:16-59:1 (Court, Samore, Nayback).  The United States informed the Court that it will not make any references to the previous incidents involving Johnson or to the rumors regarding Harry's high school days, and, therefore, the Court granted that portion of the MIL.  See May 6 Tr. at 6:2-6:7.  The United States also agreed to refer to itself as "the Government" throughout the proceedings, with the exception that it would refer to the Assistant United States Attorneys working on the case as Assistant United States Attorneys.  See May 6 Tr. at 6:8-6:18 (Court, Adams, Samore).

       Regarding Harry's request to exclude any mention of a conversation with Padilla after the incident, the United States stated that it intends for Johnson to testify that she telephoned Padilla "with[]in minutes of the alleged assault taking place."  May 6 Tr. at 7:2-7:4 (Adams).  The United States stated that it intends for Johnson to testify that Padilla "traveled ten miles to . . . get to the ap[artment] to find out what had taken place and there's a moment when she walks in the house and sees [Doe and] they both breakdown."  May 6 Tr. at 7:6-7:12 (Adams).  Harry contended that this testimony has no relevance under rule 403 of the Federal Rules of Evidence to the charges against him.  See May 6 Tr. at 7:14-7:17 (Samore).  The United States asserted that it is "up for the jury [to] decide what" the evidence means.  May 6 Tr. at 7:22-7:24 (Adams).  The United States asserted that the jury may infer that Padilla "knew something had taken [place]."  May 6 Tr. at 8:3-8:6 (Adams).  The United States asserted that the jury may infer the reason why Padilla would "break down and start crying there with [Doe]."  May 6 Tr. at 8:6-8:8 (Adams).  The United States asserted that Padilla traveling ten miles to go to the scene of the

---

Tr. -- refer to the court reporter's original, unedited version.  Any final transcripts taken in this Court may contain slightly different page and/or line numbers.

incident indicates that "it was important enough for her to travel ten miles to be there," and that testimony regarding Padilla's actions upon arriving at the apartment corroborates Johnson's other testimony that she called Padilla "within minutes of this happening." May 6 Tr. at 8:12-8:21 (Adams). The United States noted that, "instead of exchanging any words," Doe and Padilla "both . . . began to cry." May 6 Tr. at 8:21-8:24 (Adams). Harry asserted that the testimony to which he objects, on page forty-six of the Grand Jury Tr., which dealt with the conversation between Padilla and Johnson after the alleged incident, see Grand Jury Tr. at 46:2-46:18 (Nayback, Johnson), is not what the United States discussed at the hearing, see May 6 Tr. at 9:15-9:17 (Samore).

## **LAW REGARDING THE RELEVANCY OF EVIDENCE**

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence." Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403). "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")). "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'" United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127

(D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).  Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(internal quotation marks omitted).  "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."  Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).  The "[e]xclusion of otherwise admissible evidence under Rule 403 'is an extraordinary remedy and should be used sparingly.'"  United States v. Smalls, 752 F.3d 1227, 1238 n.4 (10th Cir. 2014)(quoting United States v. Tan, 254 F.3d at 1211).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States

v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(citation omitted).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.  See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999).  "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)).  Rather, "[t]o be <u>unfairly</u> prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee notes).

## **LAW REGARDING HEARSAY**

"Hearsay testimony is generally inadmissible."  Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., No. CIV 10-0698 JB/RHS, 2013 WL 311846, at *13 (D.N.M. Jan. 18, 2013)(Browning, J.)(citing Fed. R. Evid. 802).  Under rule 801(c) of the Federal Rules of Evidence, "'[h]earsay' means a statement that: **(1)** the declarant does not make while testifying at

the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).  Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination."  United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999).  A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including impeaching a witness.  See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay.  If admitted for impeachment purposes, however, it is not hearsay.").

## ANALYSIS

The Court will grant the MIL.  Because the United States agreed to refer to Doe as "alleged victim," to not introduce evidence of prior incidents involving Johnson or evidence of a "hearsay rumor about [Harry's] high school days," and to refer to itself with a neutral term, such as the "Government," the Court will grants the MIL as to those issues.  MIL ¶¶ 1-3 at 1. Additionally, because Johnson's conversation with Padilla is hearsay and Padilla's reaction to the conversation would only be relevant to bolstering this hearsay statement, the Court will grant the MIL as to that issue.  See MIL ¶ 4, at 2.  The Court will, thus, require the United States to refer to itself as "the Government," or another neutral term, and refer to Doe as the "alleged victim," except during closing arguments.  The Court will also prohibit the United States from introducing evidence of prior incidents between Johnson and Harry, evidence of a rumor

regarding Harry from high school, evidence of the conversation between Johnson and Padilla, and Padilla's reaction after the conversation.

The United States did not object to Harry's first three requests in the MIL and voluntarily agreed to abide by them. See May 6 Tr. at 5:17-5:21 (Court, Adams); id. at 6:2-6:18 (Court, Adams, Samore); May 2 Tr. at 57:21-57:23 (Court, Samore).  The Court will, therefore, grant the MIL as to those issues and will prohibit the United States from referencing the previous incidents between Johnson and Harry, and from referencing a rumor concerning Harry from his high school days.  Furthermore, the Court will require the United States to refer to Doe as "alleged victim" or her real name, and not as "victim," and will require the United States to refer to itself as "the Government" or another neutral term.

The Court will also not allow the United States to introduce evidence of Padilla's interactions with Johnson and Doe on May 6, 2013, after the incident.  The United States contends that this evidence is relevant, because Padilla breaking down into tears after speaking with Johnson and seeing Doe would allow the jury to infer that Padilla knew something had taken place. See May 6 Tr. at 8:3-8:6 (Adams).  Padilla only knew something had taken place, however, because Johnson told her. See Grand Jury Tr. at 45:25-46:1 (Johnson).  Johnson testified before the Grand Jury that she told Padilla "what had happened," presumably meaning that Johnson told Padilla that Harry assaulted Doe, which has been Johnson's testimony throughout the proceedings. Grand Jury Tr. at 45:25-46:1 (Johnson).  After Johnson told Padilla what happened, Padilla saw Doe and then started to cry. See Grand Jury Tr. at 46:13-46:15 (Johnson).  This evidence of Padilla's conversation with Johnson and reaction to seeing Doe

after talking to Johnson is either not relevant to the charges against Harry or is hearsay without an exception.

To be relevant, evidence must have "a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401. The conversation between Johnson and Padilla would be relevant to show that Harry assaulted Doe, and Padilla's reaction of crying after seeing Doe would be relevant to show that Padilla believed Johnson's account. Certainly, the events of what occurred that night between Harry and Doe are relevant to the case, and the veracity of Johnson's testimony and the truthfulness of her account are relevant as well. Using the conversation and Padilla's reactions for these purposes, however, would be impermissible hearsay. See Fed. R. Evid. 801, 802. Johnson's statements to Padilla would need to come into evidence for their truth, because her state of mind -- a non-hearsay purpose -- is not an issue in this case. See Fed. R. Evid. 801. Johnson's statements to Padilla concerning "what had happened," Grand Jury Tr. at 45:25-46:1 (Johnson), would need to come into evidence to prove what had happened that night -- i.e., for the truth of the matter asserted. See Fed. R. Evid. 801(c)(2).[3] Because rule 802 prohibits out-of-court statements coming into evidence for the truth of the matter asserted, and because there are

---

[3]Using evidence of Padilla's reaction to seeing Doe to prove that Padilla believed that Johnson's account was true would require Johnson's statements to come into evidence for their truth. While Padilla's reaction by itself may not be hearsay, without Johnson's statements, it is not relevant. See Fed. R. Evid. 401. Admitting evidence of Padilla's reaction to show the truth of Johnson's statements, while at the same time excluding Johnson's statements, would be confusing. Evidence that a statement is true, without evidence of the statement itself, results in the evidence not making any fact of consequence more or less probable, see Fed. R. Evid. 401, and would likely lead to jury confusion, see Fed. R. Evid. 403. Padilla's reaction to seeing Doe would, thus, only be relevant to show the veracity of Johnson's statements if Johnson's statements were also admitted into evidence.

no applicable exceptions under rules 803 or 804, Johnson's conversation with Padilla and Padilla's reaction to seeing Doe after the conversation are either inadmissible as hearsay or inadmissible because they require the admission of inadmissible hearsay to be relevant.  See Fed. R. Evid. 802.

The Court notes that, taken by themselves, Johnson's conversation and Padilla's reaction may not be hearsay.  For instance, the United States may argue that Johnson's conversation with Padilla is being admitted to show the effect on the listener and not to prove the truth of the statements.  Additionally, the United States might argue that Padilla crying after seeing Doe is non-verbal action that is also non-assertive.  Cf. Fed. R. Evid. 801(a) ("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.").  The evidence would then be offered to prove Padilla's emotional and mental state. While this purpose would cause the evidence to be non-hearsay, the Court concludes it would also cause the evidence to be irrelevant.  Evidence of the effect that Johnson's statements had on Padilla, or of Padilla's emotional and mental state does not make any fact "of consequence" more or less probable.  Fed. R. Evid. 401.  Padilla's mental state and the effect that Johnson's words had on Padilla are irrelevant to whether Harry sexually assaulted Doe.  Indeed, a girlfriend who is told in the early morning that her boyfriend sexually assaulted a mutual friend can be expected to have an emotional response.  That Padilla was emotionally troubled by Johnson's statements, and that she could not bring herself to speak with Doe, does not, however, prove anything of consequence in this case.  It is equally likely that Padilla cried after speaking with Johnson because of the troubling nature of the news or because Padilla believed the news was

true. Either reason causes the evidence to be inadmissible. The only relevant purpose for the evidence is inadmissible hearsay, and any non-hearsay purpose is irrelevant. The Court concludes that it will not admit evidence of Padilla's conversation with Johnson and Padilla's reaction to seeing Doe after the conversation, because it is either hearsay without an exception or it is irrelevant.

**IT IS ORDERED** that the Defendant's Pre-Trial Motion in Limine, filed May 5, 2013 (Doc. 158), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Kyle T. Nayback
David Adams
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

John F. Samore
Albuquerque, New Mexico

    *Attorney for the Defendant*