**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                       No. CR 10-1915 JB

MYRON JIM HARRY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Opposed Emergency Motion to Compel Defendant to Comply with Rules 16(b)(1)(A), or in the Alternative, Motion In Limine to Exclude Use of Defendant's Witness Interviews, filed April 26, 2013 (Doc. 139)("Motion").   The Court held a hearing on May 2, 2013.   The primary issue is whether Defendant Myron Harry has an obligation to disclose to Plaintiff United States of America recordings and transcripts from interviews that Harry's private investigator conducted of witnesses that the United States intends to call at trial and which Harry intends to use for cross-examination purposes.   Because Harry does not intend to call during his case-in-chief any of the witnesses whom his private investigator interviewed, because the United States may call the witnesses at trial, because Harry intends to use the recordings and transcripts for cross-examination to impeach the witnesses, and because the recordings and transcripts are exempt from discovery as work product, the Court will deny the Motion.

## FACTUAL BACKGROUND

The United States accuses Harry of sexually abusing Doe during a party on the night of May 5, 2010, and the morning of May 6, 2010, in Shiprock, New Mexico.   See Indictment at 1,

filed June 24, 2010 (Doc. 14).   The Court previously made findings of fact for Harry's Motion to Suppress Evidence Based on Spoliation or Incompleteness, filed June 26, 2012 (Doc. 75).   See Memorandum Opinion and Order at 2-16, filed February 19, 2013 (Doc. 114).   The Court incorporates those findings of fact by reference herein.

## PROCEDURAL BACKGROUND

The United States filed the Motion on April 26, 2013, requesting the Court to compel Harry to disclose recordings and transcripts from interviews Harry that, or his agent, conducted with witnesses whom the United States may call at trial.   See Motion at 1.   In the alternative, the United States requests that the Court prohibit Harry from using the recordings or transcripts at trial.   See Motion at 1.   The United States contends that Harry's agent, Gary Ainsworth, interviewed a number of witnesses to the alleged sexual assault.   See Motion at 1.   See also Transcript of Hearing, taken May 2, 2013, at 41:4-41:9 (Nayback)("Tr.").[1]   The United States believes that Ainsworth interviewed a number of people who attended the party at which the alleged assault occurred.   See Motion at 1.   Most of the people interviewed by Ainsworth are witnesses that the United States intends to call at trial.   See Motion at 1.   The United States also believes that Ainsworth either recorded or transcribed these interviews, and that Harry has copies of the recordings and transcripts.   See Motion at 1. The United States asserts that it requested copies of the recordings and transcripts, but Harry maintains that he does not need to disclose the recordings or transcripts of interviews until after the United States' witness, who was interviewed, has testified.   See Motion at 1-2.

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final version may have slightly different page and/or line numbers.

The United States argues that rule 16(b)(1)(A) of the Federal Rules of Criminal Procedure requires a defendant to "'permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places or copies or portions of any of these.'"   Motion ¶ 1, at 2 (quoting Fed. R. Crim. Proc. 16(b)(1)(A)). The United States contends that it is presumed that Ainsworth's interviews have been "reduced to transcripts" and that these transcripts are "discoverable to the Government, under the reciprocal discovery rules."   Motion ¶ 1, at 2.   The United States argues that it is also entitled to the interview recordings to evaluate the accuracy of the transcripts.   See Motion ¶ 1, at 2.   The United States asserts that "the spirit of the Discovery rules is intended to minimize surprise at trial."   Motion ¶ 2, at 2.   The United States maintains that it has disclosed all of the materials which Jenks v. United States, 353 U.S. 657 (1957), requires and that it has essentially "opened its file[s] to the Defendant."   Motion ¶ 2, at 2.   The United States quotes the syllabus from United States v. Nobles, 422 U.S. 225 (1975)("Nobles"), for the proposition that "the prosecution, as well as the defense, can invoke the federal judiciary's inherent power to require production of previously recorded witness statements that facilitate full disclosure of all the relevant facts." Motion ¶ 2, at 2 (quoting Nobles, 422 U.S. at 225 (syllabus)).   The United States argues that the interview transcripts might "provide critical insight into the issues of credibility of witnesses" and that, if Harry intends to use the transcripts at trial, the "United States has a right to a reasonable amount of time to evaluate the evidence, including comparing any transcript to the recording taken of the witness."   Motion ¶ 2, at 2.

The United States argues that Harry's refusal to disclose the transcripts until after the witnesses testify lacks support in the Rules of Criminal Procedure, and "runs counter to the spirit of reciprocal discovery which is to avoid surprise" and prevent ambush tactics by either party.

Motion ¶ 3, at 3.   The United States contends that Harry is holding onto the interview transcripts "to surprise the United States at trial."   Motion ¶ 4, at 3.   The United States asserts that, if Harry "confirms that he does not intend to, and will not, use any" of the interview transcripts "during cross-examination of Government witnesses," then the Motion "should be rendered moot." Motion ¶ 4, at 3.

Harry responds by arguing that Nobles[2] is the "solitary case cited in support of" the Motion, and that it "is readily distinguished on at least seven grounds" and "provides no support for the Government's claim."   Defense's Response to Opposed Emergency Motion to Compel Defendant to Comply with Rules 16(b)(1)(A) or, in the Alternative Motion In Limine to Exclude Use of Defendant's Witness Interviews at 1, filed May 3, 2014 (Doc. 155)("Response").   Harry argues that the defendant in Nobles was accused of "armed robbery where identity was the critical issue."   Response ¶ 1, at 1.   Harry asserts that the information that the prosecution sought in Nobles was requested "during trial, during the Defense presentation, not pre-trial."   Response ¶ 2, at 1.   Harry argues that the private investigator in Nobles did not record the statements of two key eyewitnesses, but "only had his written report that he provided to Defense counsel," and that the prosecution sought  copies of these reports to "impeach testimony of the Defense investigator" and not because of a potential "impeachment of the Prosecution witnesses by the Defense." Response ¶¶ 3-4, at 1-2.   Harry maintains that the defense attorney in Nobles "only wanted to disclose the favorable portions of the report for purpose of his examination and any impeachment, while the trial court" had told him to "submit the entire report to be reviewed en camera," if he

_____

[2]Throughout his Response, Harry refers to United States v. Nobles as United States v. Noles.   See Defense's Response to Opposed Emergency Motion to Compel Defendant to Comply with Rules 16(b)(1)(A) or, in the Alternative Motion In Limine to Exclude Use of Defendant's Witness Interviews at 1-2, filed May 3, 2014 (Doc. 155).   Because the United States referred to only one case in the Motion, the Court will assume that Harry's references to Noles are intended to refer to Nobles.

wanted the investigator to testify.   Response ¶ 5, at 2.   Harry argues that he does not, at this time, intend to call Ainsworth to testify, but if he decides to call Ainsworth as a witness, he will provide a complete copy of the interview transcript.   See Response ¶ 6, at 2.   Harry argues that, in Nobles, "the unwillingness of the Defense to disclose the full written report of the investigator" led to the exclusion of the investigator's testimony.   Response ¶ 7, at 2.   Harry also argues that the disclosure issues in Nobles were grounded in the right in the Fifth Amendment to the Constitution of the United States of America and in work product, while, in this case, Harry is asserting the Sixth Amendment and "related rights to ensure effective representation in a fair trial."   Response ¶ 8, at 2.

The Court held a hearing on May 2, 2013.   At the hearing, the United States argued that, through conversations with Harry's counsel and with its own witnesses, the United States learned that Harry's private investigator, Ainsworth, had interviewed a number of witnesses in the case and had recorded those interviews.   See Tr. at 40:24-41:9 (Nayback).   The United States maintained that it had opened up its file to Harry, and that Harry is now holding onto recordings and transcripts of interviews with witnesses whom the United States intends to call at trial.   See Tr. at 41:25-42:4 (Nayback).   The United States argued that the transcripts would allow it to "evaluate the credibility of the witnesses."   Tr. at 42:4-42:6 (Nayback).   The United States argued that Nobles gives the Court "discretion to invoke the federal judiciary's inherent power," and to require Harry to produce recordings and transcripts from the interviews.   Tr. at 42:17-42:21 (Nayback).   When asked whether the United States' request would be invading Harry's work product, the United States conceded that, if the Court follows the position that the interviews are work product, it is not entitled to them.   See Tr. 43:13-43:17 (Nayback, Court). The United States maintained that it would need to review the transcripts for inconsistencies with

the witness testimony, so it would be asking for a fifteen-to-thirty-minute recess to review each transcript before beginning redirect examination.   See Tr. 43:17-43:23 (Nayback).

Harry responded by arguing that the interviews were of the United States' witnesses, that the transcripts are for cross-examination, and that there is no authority in the Motion.   See Tr. at 46:15-46:17 (Samore).   Harry contended that he would use the transcripts during cross-examination and, if a United States witness said something contrary to the transcript, he would point it out.   See Tr. at 46:2-46:4 (Samore).   Harry argued that he could not ask the United States what evidence it had for rebuttal of his witnesses before starting the trial, because that would destroy the value of cross-examination.   See Tr. at 44:25-45:2 (Samore).   Harry asserted that it is the policy of the Public Defender's Office not to give prosecutors interviews of the prosecution's witnesses.   See Tr. at 45:5-45:7 (Samore).   Harry argued that handing the transcripts over would violate the Constitution of the United States of America and that his cross-examination would be destroyed if the United States saw the transcripts before cross-examination.   See Tr. at 45:10-45:12 (Samore).   Harry argued that the interviews were of people that he has not listed as potential witnesses and that he is not sure if they will even be United States' witnesses, because the United States has not yet disclosed its witness list.   See Tr. at 45:12-45:17 (Samore).   Harry argued that, for an effective cross-examination, he must use "issues of demeanor or inconsistencies."   Tr. at 46:5-46:9 (Samore).   Harry argued that not disclosing the transcripts is consistent with requiring the United States to carry the burden of proof and with the presumption of innocence.   See Tr. at 46:5-46:11 (Samore).

## LAW REGARDING RULE 16(b)(1)(A) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

Rule 16(b)(1)(A) provides a "reciprocal discovery requirement" between the United States and a criminal defendant.   United States v. Hardy, 586 F.3d 1040, 1043 (6th Cir. 2009).   Rule

16(a)(1)(E) provides criminal defendants with a right to inspect and copy documents and objects that are within the United States' possession, custody or control.   See Fed. R. Crim. P. 16(a)(1)(E).   Rule 16(a)(1)(E) provides:

> **(E) Documents and Objects.** Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> > **(i)** the item is material to preparing the defense;
> >
> > **(ii)** the government intends to use the item in its case-in-chief at trial; or
> >
> > **(iii)** the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).   Once a defendant makes a request under rule 16(a)(1)(E), and the United States has complied with the request, rule 16(b)(1)(A) provides the United States with a right to inspect and copy certain documents in the defendant's "possession, custody, or control," and that the defendant intends to use at trial during his or her case-in-chief.   Fed. R. Crim. P. 16(b)(1)(A).   Rule 16(b)(1)(a) specifically provides:

> **(A) Documents and Objects.** If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:
>
> > **(i)** the item is within the defendant's possession, custody, or control; and
> >
> > **(ii)** the defendant intends to use the item in the defendant's case-in-chief at trial.

Fed. R. Crim. P. 16(b)(1)(A).   Certain information, however, is not subject to disclosure under rule 16(b)(1)(A).

> **(2) Information Not Subject to Disclosure.** Except for scientific or medical reports, Rule 16(b)(1) does not authorize discovery or inspection of:

> (A) reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense; or
>
> (B) a statement made to the defendant, or the defendant's attorney or agent, by:
>
>> (i) the defendant;
>>
>> (ii) a government or defense witness; or
>>
>> (iii) a prospective government or defense witness.

Fed. R. Crim. P. 16(b)(2).   Rule 16(b)(2) is considered to be the "work product exception[] to the general discovery requirements."   Fed. R. Crim. P. 16 advisory committee's notes (1975 enactment).   See United States v. Fort, 472 F.3d 1106, 1123 (9th Cir. 2007)(quoting United States v. Fernandez, 231 F.3d 1240, 1247 (9th Cir. 2000)("Rule 16 of the Federal Rules of Criminal Procedure recognizes the work product privilege." (alterations omitted)).

A defendant's duty to disclose under rule 16(b)(1)(A) does not arise until the United States first complies with the defendant's request under rule 16(a)(1)(E).   See United States v. McVeigh, 954 F. Supp. 1141, 1149 (D. Colo. 1997)("Compliance with such a request [under rule 16(a)(1)(E)] triggers the defense obligation to provide reciprocal discovery under Rule 16(b)").   Once a party has a duty to disclose under rule 16(a)(1)(E) or rule 16(b)(1)(A), that duty continues throughout the case as additional evidence is discovered.   See United States v. McVeigh, 954 F. Supp. at 1149 (citing Fed. R. Crim. P. 16(c)).   Rule 16(c) provides:

> (c) **Continuing Duty to Disclose.** A party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court if:
>
>> (1) the evidence or material is subject to discovery or inspection under this rule; and
>>
>> (2) the other party previously requested, or the court ordered, its production.

Fed. R. Crim. P. 16(c).   A defendant's obligations under Rule 16(b)(1)(A) apply only to evidence that he or she "intends to use . . . in the defendant's case-in-chief at trial."   Fed. R. Crim. P. 16(b)(1)(A).   If a defendant refuses to disclose evidence required under rule 16(b)(1)(A), the trial court may order the defendant to disclose the evidence or prohibit the defendant from introducing the undisclosed evidence at trial.   See Fed. R. Crim. P. 16(d)(2).   See also United States v. Rodriguez Cortez, 949 F.2d 532, 546 (1st Cir. 1991)("It is within the trial court's discretion to exclude evidence for non-compliance with 16(b)(1)(A).").

## ANALYSIS

The Court will deny the Motion.   The interview recordings and transcripts are from interviews of witnesses whom the United States may call at trial.   Rule 16(b)(1)(A) requires disclosure only of evidence that Harry intends to use during his case-in-chief.   Harry does not intend to use the recordings or transcripts during his case-in-chief, but instead, Harry intends to use the recordings and transcripts during cross-examination for impeachment purposes. Additionally, the work-product doctrine in rule 16(b)(2)(B) protects the recordings and transcripts. The Court will, thus, deny the Motion, will not require Harry to disclose the transcripts or recordings, and will permit Harry to use the recordings and transcripts during cross-examination.

## I.     THE RECORDINGS AND TRANSCRIPTS ARE NOT PART OF HARRY'S CASE-IN-CHIEF.

Harry does not intend to use the transcripts during his case-in-chief, and thus, the recordings or transcripts are not discoverable under rule 16(b)(1)(A).   See Fed. R. Crim. P. 16(b)(1)(A).   Black's Law Dictionary[3] defines case-in-chief as (i) "[t]he evidence presented at

---

[3]Rule 16 does not define the term case-in-chief.   See Fed. R. Crim. P. 16.   Several courts rely on Black's Law Dictionary to define the term case-in-chief as it is used in rule 16.   See United States v. Swenson, 298 F.R.D. 474, 476-77 (D. Idaho Feb. 10, 2014)(Winmill, J.); United States v. Kaur, No. CR 08-CR-428 KAM, 2009 WL 1296612, at *3 n.3 (E.D.N.Y May 7,

trial by a party between the time the party calls the first witness and the time the party rests"; or as (ii) "[t]he part of a trial in which a party presents evidence to support the claim or defense." Black's Law Dictionary 244 (9th ed. 2009).[4]   Several courts have adopted the second definition of case-in-chief to hold that a defendant's case-in-chief can include cross-examination of a government witness if the cross-examination is intended to support a claim or defense.   See United States v. Hsia, 2000 WL 195067, at *2 ("Defendant's cross-examination of government witnesses, and the evidence introduced during that cross-examination, certainly may be used to support her defense . . . [and] is properly seen as part of defendant's case-in-chief if it buttresses her theory of the case."); United States v. Swenson, 298 F.R.D. at 476-77 ("[W]hen cross examining a government witness, a defendant is asserting the defense that the government cannot prove the required elements of the crime charged and thus is required to disclose any evidence it seeks to use to establish the failure of proof.").   See also United States v. Young, 248 F.3d 260,

---

2009)(Matsumoto, J.); United States v. Daniels, No. 3:06-10-1, 2007 WL 709326, at *4 (W.D. Pa. Mar. 2, 2007)(Gibson, J.); United States v. Hsia, No. CR. 98-0057 PLF, 2000 WL 195067, at *2 (D.D.C. Jan. 21, 2000)(Friedman, J.).

[4]The Advisory Committee's notes to rule 16 are not particularly useful in determining the definition of the term case-in-chief.   The Advisory Committee's notes to the prior version, which uses the term "evidence in chief," states: "Subdivision (b)(1)(A) provides that the defendant shall disclose any documents and tangible objects which he has in his possession, custody, or control and which he intends to introduce in evidence in his case in chief."   Advisory Committee's notes Fed. R. Crim. P. 16 (1974 Amendments).   The Advisory Committee's notes to the current rule state:

> Amended Rule 16(b)(1)(B) includes a change that may be substantive in nature. Rule 16(a)(1)(E) and 16(a)(1)(F) require production of specified information if the government intends to "use" the information "in its case-in-chief at trial."   The Committee believed that the language in revised Rule 16(b)(1)(B), which deals with a defendant's disclosure of information to the government, should track the similar language in revised Rule 16(a)(1)[, which deals with the United States' disclosure requirements].

Advisory Committee's notes Fed. R. Crim. P. 16 (2002 Amendments)(alterations and emphasis in original).

269-70 (4th Cir. 2001)(holding that the district court did not error in excluding a video tape that defendant attempted to introduce during cross-examination, because the district court could have concluded that the defendant was attempting to circumvent rule 16(b)(1)(A) by introducing non-impeachment evidence through cross-examination).

This Court takes a different view.  The Court concludes that rule 16(b)(1)(A)'s drafters intended for the word "case-in-chief" to have a more restrictive meaning -- the more traditional "part of a trial in which a party presents evidence to support the claim or defense."[5]  Black's Law Dictionary 244 (9th ed. 2009).  For a defendant, his or her case-in-chief comes after the United States rests.  A defendant never has to put on a case-in-chief or present any evidence at all, and often does not.  As the Honorable Hugo L. Black, Associate Justice for the Supreme Court of the United States, famously stated, "[t]hroughout the process the defendant has a fundamental right to remain silent, in effect challenging the States at every point to: 'Prove it!'"  Williams v. Florida, 399 U.S. 78, 112 (1970)(Black, J., dissenting).  If rule 16(b)(1)(A)'s drafters meant the entire case could be the case-in-chief, it did not need to use the phrase case-in-chief, because the limitation would be meaningless.

Courts have repeatedly used the term case-in-chief to refer to the part of a trial between the time that a party calls its first witness and when it rests.  See, e.g., United States v. Dunnigan, 507 U.S. 87, 89 (1993)("The case in chief for the United States consisted of five witnesses . . . .");

---

[5]"The rules of statutory construction apply to the Federal Rules . . . ."  In re Kubler, No. CR 11-0048, 2012 WL 394680, at *11 (D.N.M. Jan. 25, 2012)(Browning, J.). Accord Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)(applying the *expressio unius est exclusio alterius* canon when interpreting rule 9(b) of the Federal Rules of Civil Procedure); Hillis v. Heineman, 626 F.3d 1014, 1017-18 (9th Cir.2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure.").  This includes that cannon that "[s]tatutory construction must begin with the language employed by [the writer] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."  Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985).

Lytle v. Household Mfg., Inc., 494 U.S. 545 549 (1990)(stating "[a]t the close of Lytle's case in chief . . . ."); Messer v. Kemp, 474 U.S. 1088, 1089 (1986)(Marshall, J., dissenting)(noting that defense counsel "put on no case in chief," even though defense counsel cross-examined the state's witnesses); Smalis v. Pennsylvania, 476 U.S. 140, 141 (1986)(stating "[a]t the close of the prosecution's case in chief . . . ."); Meachum v. Longval, 460 U.S. 1098, 1099 (1983)("The Supreme Judicial Court appointed a special master, who found that during the presentation of the prosecution's case-in-chief, the trial judge told Longval's defense attorney . . . ."); United States v. Havens, 446 U.S. 620, 632 (1980)("Thus, almost any time an accused takes the stand, the prosecution will have an opportunity to enhance its case in chief."); Blair v. Kentucky, 449 U.S. 962, 963 (1980)(Brennan, J., dissenting)(stating "at the close of the Commonwealth's case in chief"); Blakley v. Florida, 444 U.S. 904, 905 (1979)(White, J., dissenting)(stating "[o]n direct examination in the State's case in chief a police officer testified . . . ."); Cantrell v. Forest City Publ'n, 419 U.S. 245, 251 (1974)(stating "[a]t the close of the petitioners' case-in-chief . . . ."); Walder v. United States, 347 U.S. 62, 66 (1954)("[T]he Government could no more work in this evidence on cross-examination than it could in its case in chief . . . .").  Courts regularly differentiate between a party's case-in-chief and its cross-examination of another party's witnesses.  See, e.g., Ramdass v. Angelone, 530 U.S. 156, 183 n.2 (2000)(Stevens, J., dissenting)("Virginia brought up the crime in its cross-examination rather than its case in chief . . . ."); Walder v. United States, 347 U.S. at 66 (1954)("[T]he Government could no more work in this evidence on cross-examination than it could in its case in chief . . . ."); United States v. Sanders, 743 F.3d 471, 474 (7th Cir. 2014)("It applies to the prosecution's case-in-chief and to the examination of most witnesses, but not to cross-examination of the defendant."); United States v. Romero-Lopez, 695 F.3d 17, 24 (1st Cir. 2012)(stating "during the government's case-in-chief,

rather than bring the incident up solely during its cross examination"); Griffin v. Bell, 694 F.3d 817, 821 (7th Cir. 2012)(stating "use still photographs extracted from the video in his case-in-chief, [and] in his cross-examination of defense witnesses"); Strickland Tower Maint., Inc. v. AT&T Commc'n, Inc., 128 F.3d 1422, 1430 (10th Cir. 1997)(stating "set unfair time limits on the presentation of AT&T's case-in-chief and on AT&T's cross-examination"); Kelly's Auto Parts, No. 1, Inc. v. Boughton, 809 F.2d 1247, 1253 (6th Cir. 1987)(stating "whether during a party's case-in-chief, during cross-examination, or during rebuttal"); United States v. Lambert, 580 F.2d 740, 743 (5th Cir. 1978)("[I]t was developed through the Government's cross examination, its case-in-chief, and on rebuttal . . . ."); McQueen v. Swenson, 498 F.2d 207, 220 (8th Cir. 1974)(stating "would have proved helpful to the defendant either on cross-examination or in his case-in-chief"); Application of Byrd, 219 F.2d 221, 222 (9th Cir. 1955)("[R]ecordings were offered as a part of the cross-examination of petitioner, whereas they should have been used as a part of the State's case in chief.").

Courts that have defined rule 16(b)(1)(A)'s use of the term "case-in-chief" more broadly, and in a manner contrary to the traditional definition of the word, have relied on a definition from the Seventh Edition of the Black's Law Dictionary.   In United States v. Hsia, the Honorable Paul L. Friedman, United Sates District Judge for the District of District of Columbia, used the Seventh Edition of the Black's Law Dictionary to define the term "case-in-chief" to mean "the part of a trial in which a party presents evidence to support its claim or defense."   2000 WL 195067, at *2 (quoting Black's Law Dictionary 207 (7th ed. 1999))(alterations omitted).[6]   Using this definition,

---

[6]In United States v. Hsia, Judge Friedman interpreted the prior version of rule 16, which used the term "evidence in chief" rather than "case-in-chief."  2000 WL 195067, at *1.  The Advisory Committee's notes defined "evidence in chief" as evidence that a defendant "intends to introduce in evidence in his case in chief."   Advisory Committee's Notes rule 16 (1974 Amendments).  Judge Friedman defined "evidence in chief" as "case-in-chief" and used the

Judge Friedman determined that "evidence introduced during . . . cross-examination, certainly may be used to support [the defendant's] defense," and, as such, is part of the defendant's case-in-chief.   United States v. Hsia, 2000 WL 195067, at *2.   In reaching this conclusion, Judge Friedman did not cite to any cases that define "case-in-chief" in the same manner.   United States v. Hsia, 2000 WL 195067, at *2.   Judge Friedman did no more than conclude that the definition provided in the Seventh Edition of Black's Law Dictionary is broad enough to cover certain evidence introduced during cross examination.   United States v. Hsia, 2000 WL 195067, at *2.

In United States v. Swenson, the Honorable B. Lynn Winmill, Chief District Judge for the District of Idaho, concluded that a defendant's case-in-chief includes cross-examination if "a defendant is asserting the defense that the government cannot prove the required elements of the crime charged."   298 F.R.D. at 477.   To reach this conclusion, Judge Winmill relied on United States v. Hsia and on an article, which states that "'Rule 16 defines a defendant's case-in-chief as occurring whenever a defendant presents evidence for a nonimpeachment purpose, both during and after the government's case.'"   United States v. Swenson, 298 F.R.D. at 476 (quoting Sara Kropf, Andrew George, William C. Cleveland, & Julie Rubenstein, The 'Chief' Problem with Reciprocal Discovery Under Rule 16, 34 The Champion 20 (Sept./Oct. 2010)("The 'Chief' Problem").   The article cited by Judge Winmill does not argue that a defendant's case-in-chief should encompass cross-examination, but instead notes that, because of United States v. Hsia, case-in-chief includes cross-examination and recommends that practitioners disclose cross-examination evidence to avoid the "risk that a court will follow Hsia's reasoning."   The 'Chief' Problem at 22-23.   The article's authors argue that the definition from United States v. Hsia "conflicts with the notion that . . . a criminal defendant has no obligation to present any case at

Black's Law Dictionary definition of "case-in-chief" to determine scope of the evidence covered by rule 16.   See United States v. Hsia, 2000 WL 195067, at *2.

all" and is contrary to the "most logically sound" definition of case-in-chief.   The 'Chief' Problem
at 22-23.   Despite this criticism of United States v. Hsia's definition, Judge Winmill adopted the
definition, because the defendants had not "presented any case law supporting their narrow
reading" that case-in-chief refers only to the part of a trial between the time the party calls the first
witness and the time the party rests.   United States v. Swenson, 298 F.R.D. at 476-77.

        In United States v. Young, the United States Court of Appeals for the Fourth Circuit held,
in an opinion that Judge Luttig wrote, and Judge Michael joined,[7] that the district court did not
abuse its discretion in excluding an audiotape that the defendant attempted to introduce during
cross-examination, but which the defendant did not disclose to the United States.   See 248 F.3d at
269-70.   The Fourth Circuit noted that the defendant's attempt to introduce the audiotapes on
cross-examination "could have been interpreted by the district court as an effort to circumvent the
court's unambiguous discovery order" and as an effort to "escape disclosure when his true intent
was to introduce the tape as 'evidence in chief.'"   248 F.3d at 269-70.   The Fourth Circuit held
that it could not conclude that "the district court abused its discretion when it ruled that [the
defendant]'s failure to disclose the audiotapes violated Rule 16."   United States v. Young, 248
F.3d at 269-70.   The Fourth Circuit did not, however, define what constituted a defendant's
case-in-chief -- or "evidence in chief" as the prior rule 16 stated -- nor did the Fourth Circuit
explain why evidence introduced during cross examination fell within rule 16's disclosure
requirements.   See United States v. Young, 248 F.3d at 269-70.

        In United States v. Young, the Fourth Circuit did not explain its decision, but held only that
the district court did not abuse its discretion.   See 248 F.3d at 270.   The holding in United States

---

        [7]Judge Widener concurred in the result and the opinion but opposed the majority opinion's
holding that transcripts of audiotape recordings could be read to the jury.   See United States v.
Young, 248 F.3d 260, 275 (4th Cir. 2001)(Widener, J., concurring).

v. Young may be explained by the fact that the Fourth Circuit was applying the previous version of rule 16, which used the term evidence in chief.   See 248 F.3d at 270.   Unlike Judge Friedman in United States v. Hsia, the Fourth Circuit did not define evidence in chief as "case-in-chief." Compare United States v. Hsia, 2000 WL 195067, at *2 (defining evidence in chief as case-in-chief), with United States v. Young, 248 F.3d at 260 (not defining evidence in chief).   The Advisory Committee's Notes to the 2002 Amendments state that the change from "evidence in chief" to "case-in-chief" "may be substantive in nature."   Advisory Committee's Notes Fed. R. Crim. P. 16(b)(1)(B) (2002 Amendments).   The term "evidence in chief" may have, as the Fourth Circuit held, encompassed both a party's case-in-chief as well as a party's non-impeachment cross-examinations.   See United States v. Young, 248 F.3d at 270.   Even if the term evidence in chief encompassed all non-impeachment evidence -- including cross-examination -- this broad term does not mean that the term case-in-chief does as well.   The Fourth Circuit in United States v. Young indicated that a party's case-in-chief encompasses the time in which a party calls its first witness until it rests by repeatedly using the term "case-in-chief" in that manner.   See United States v. Young, 248 F.3d at 270 (stating "during defense counsel's cross-examination of Henderson in the government's case-in-chief"; "exclusion of the tape in his own case-in-chief"; "impeach Henderson during the government's case-in-chief"; "before the close of the government's case-in-chief").   Thus, the Fourth Circuit appears to have correctly indicated a distinction between "evidence in chief" and "case-in-chief."   Advisory Committee's Notes Fed. R. Crim. P. 16(b)(1)(B) (2002 Amendments)(noting that change from "evidence in chief" to "case-in-chief" may be a "substantive in nature").   United States v. Young should likely be interpreted as holding that evidence in chief may encompass both a party's cross-examination and

a party's traditional case-in-chief, while case-in-chief encompasses only the time between which a party calls its first witness and the party rests.

As for the two other courts that have defined the term case-in-chief in rule 16(b)(1)(A) as applying to cross-examination, United States v. Hsia relied solely on a definition from the 7th Edition of the Black's Law Dictionary and United States v. Swenson relied solely on United States v. Hsia and on an article that criticizes United States v. Hsia.   The rulings in United States v. Hsia and United States v. Swenson, thus, both hinge on Judge Friedman's use of the Black's Law Dictionary to support his definition of case-in-chief.   Judge Friedman relied on the definition in the 7th Edition of the Black's Law Dictionary.   See United States v. Hsia, 2000 WL 195067, at *2.   The full definition from the 7th Edition states: "1. The evidence presented at trial by the party with the burden of proof.   2. The part of trial in which a party presents evidence to support its claim or defense."   Black's Law Dictionary 207 (7th ed. 1999).   The Fifth and Sixth Editions of the Black's Law Dictionary[8] define case-in-chief as "[t]hat part of a trial in which the party with the initial burden of proof presents his evidence after which he rests."   Black's Law Dictionary 216 (6th ed. 1990); Black's Law Dictionary 196 (5th ed. 1979).   The Fifth and Sixth Editions, thus, indicate that "case-in-chief" refers to a definite portion of the trial -- one that it ends when the party rests.   See Black's Law Dictionary 216 (6th ed. 1990); Black's Law Dictionary 196 (5th ed. 1979).   The Eighth and Ninth Editions of the Black's Law Dictionary also indicate that case-in-chief may refer to a specific portion of a trial.   The Eighth and Ninth Editions of the Black's Law Dictionary both define "case-in-chief" as "1. The evidence presented at trial by a party between the time the party calls the first witness and the time the party rests.   2. The part of

---

[8]The Fourth Edition of the Black's Law Dictionary does not contain a definition for case-in-chief.   See Black's Law Dictionary 271-72 (4th Ed. 1968).

a trial in which a party presents evidence to support the claim or defense." Black's Law Dictionary 244 (9th ed. 2009); Black's Law Dictionary 229 (8th ed. 2004). The Eighth and Ninth Editions, thus, contain a definition that refers to a specific portion of a trial: "between the time the party calls the first witness and the time the party rests." Black's Law Dictionary 244 (9th ed. 2009); Black's Law Dictionary 229 (8th ed. 2004). The Seventh Edition, on which Judge Friedman relied, is the only edition that does not define "case-in-chief" in a way that clearly indicates that the term refers to a specific part of trial -- the part in which a party calls witnesses and in which the party rests at the end. The Seventh Edition appears to be an outlier.[9] This Edition is the one on which Judge Friedman relied in United States v. Hsia, see 2000 WL 195067, at *2, and, as a result, on which Judge Winmill relied in United States v. Swenson, see 298 F.R.D. at 476-77. The Seventh Edition's definition is, however, as shown above, contrary to manner in which

---

[9]The definition of "case-in-chief" in the 7th Edition of the Black's Law Dictionary is not necessary incorrect; it is merely too broad if interpreted in the manner that Judge Friedman did in United States v. Hsia. The Seventh Edition, defining "case-in-chief" to refer to the "part of trial in which a party presents evidence to support its claim or defense," encompasses the traditional definition of case-in-chief, which is the part of a trial between the time in which a party calls its first witness until it rests. See Black's Law Dictionary 207 (7th ed. 1999). Interpreting the Seventh Edition's definition to include cross-examination material, however, extends the definition too far.

The 7th Edition's definition may have been broadened to correct the 5th and 6th Editions' definitions, which applied only to the party with the "initial burden of proof." Black's Law Dictionary 216 (6th ed. 1990); Black's Law Dictionary 196 (5th ed. 1979). The 7th Edition may have broadened the definition to recognize that the term "case-in-chief" applies to both the party with the initial burden of proof and to the party without the initial burden of proof. Once the party with the initial burden of proof rests its case-in-chief, the other party may present its case-in-chief. The 7th Edition appears to define case-in-chief broadly to compensate for the 5th and 6th Editions' narrow definitions. The 7th Edition's definition, taken on its face, as Judge Friedman did, see United States v. Hsia, 2000 WL 195067, at *2, is more broad than the traditional manner in which the term had been used. This may be the reason why the editors of the Black's Law Dictionary narrowed the definition in the 8th and 9th Editions. See Black's Law Dictionary 244 (9th ed. 2009); Black's Law Dictionary 229 (8th ed. 2004). The 8th and 9th Editions of the Black's Law Dictionary brings the definition of "case-in-chief" back in line with the manner in which the term has continuously been used by courts. See, e.g., United States v. Dunnigan, 507 U.S. at 89.

numerous courts -- including the Supreme Court of the United States of America -- have continuously used the term.   See, e.g., United States v. Dunnigan, 507 U.S. at 89.

Because the term case-in-chief has continuously been defined and used in a manner that refers to the part of a trial in which a party calls its first witness until it rests, and because there is no indication that the term was intended to be defined in rule 16(b)(1)(A) in a manner contrary to its traditional definition, the Court concludes that the term "case-in-chief," as rule 16(b)(1)(A) used the phrase, refers to evidence that a party presents between the time that the party calls its first witness and the time the party rests.   There could be cases where everyone agrees that, to avoid recalling witnesses, everyone will just ask all of their questions while the witness is present; and the cross-examination is really a direct examination with non-leading questions; and in such cases the defendant's case-in-chief should include that direct examination; but without such circumstances, the Court should treat case-in-chief with its traditional meaning.   This bright-line rule seems particularly right, again that a defendant does not have to put on a case-in-chief at all, and if the defendant does not, it does not appear fair for the Court to nonetheless find that everything the defendant says in the United States' case-in-chief is the defendant's case-in-chief. Using the traditional definition of case-in-chief, the Court finds that the recordings and transcripts are not part of Harry's case-in-chief.   Harry has indicated that he intends only to use the recordings and transcripts during cross-examination.   See Tr. at 46:2-46:4 (Samore).   Even the United States notes that Harry intends to use the recordings and transcripts during cross examination and not during his case-in-chief.   See Motion at 1-2.   Because Harry does not intend to use the recordings and transcripts during his case-in-chief, they are not discoverable under rule 16(b)(1)(A).   See Fed. R. Crim. P. 16(b)(1)(A).

In any case, every court to consider the issue has found that a defendant's case-in-chief does not include impeachment material.   In <u>United States v. Medearis</u>, 380 F.3d 1049 (8th Cir. 2004), the United States Court of Appeals for the Eighth Circuit, in an opinion that Judge Hamilton wrote, and Judge Wollman joined, held that the district court erred in requiring the defendant to disclose a letter, which a government witness wrote and which the defendant intended to use during cross-examination to impeach the witness.   <u>See</u> 380 F.3d at 1056-58.   The Eighth Circuit noted that rule 16(b)(1)(A) applies only to the defendant's case-in-chief and that impeachment material is not part of a defendant's case-in-chief.   <u>See</u> <u>United States v. Medearis</u>, 380 F.3d at 1057-58.   In <u>United States v. Moore</u>, 208 F.3d 577 (7th Cir. 2000), the United States Court of Appeals for the Seventh Circuit held, in an opinion that Judge Easterbrook wrote, and Judges Flaum and Ripple joined, that a note, which the defendant intended to use "as a prior inconsistent statement by [a government witnesses] that would undermine [the witness's] credibility," was not part of the defendant's case-in-chief under rule 16(b)(1)(A).   208 F.3d at 579.[10]   The Seventh Circuit noted that "[r]ule 16(b)(1)(A) speaks to how the evidence is <u>used</u>, not to how it is

---

[10]In <u>United States v. Moore</u>, the Seventh Circuit interpreted a prior version of rule 16(b)(1)(A), which stated:

> If the defendant requests disclosure under subdivision (a)(1)(C) or (D) of this rule, upon compliance with such request by the government, the defendant, on request of the government, shall permit the government to inspect and copy or photograph books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in chief at the trial.

<u>United States v. Moore</u>, 208 F.3d at 578-79.   While the prior version of Rule 16(b)(1)(A) used the term "evidence in chief" rather than case-in-chief, the Seventh Circuit defined "evidence in chief" to mean "evidence in one's case in chief."   <u>United States v. Moore</u>, 208 F.3d at 579 (internal quotation marks omitted).   The Seventh Circuit's definition of evidence in chief, thus, encompassed similar, if not the same evidence, as the current rule's term of case-in-chief.   <u>See</u> <u>United States v. Medearis</u>, 380 F.3d at 1057 (relying on <u>United States v. Moore</u> to interpret the current version of rule 16(b)(1)(A) as it relates to evidence used during a defendant's case-in-chief).

introduced," and held that, because the defendant "sought to use the note to impeach the testimony of a witness for the prosecution," it was not part of the defendant's case-in-chief under rule 16(b)(1)(A).   United States v. Moore, 208 F.3d at 579.   In United States v. Hsia, Judge Friedman concluded that a defendant's case-in-chief included both a defendant putting on witnesses after the prosecution rests and cross-examination of government witnesses.   See 2000 WL 195067, at *2. Judge Friedman noted, however, that, "if the defendant uses a document merely to impeach a government witness, and not as affirmative evidence in furtherance of her theory of the case, it is not part of her case-in-chief."   2000 WL 195067, at * 2 n.1 ("Indeed, unlike affirmative evidence presented to support her defense, she may not even know she may need to use such impeaching material until after she hears the direct testimony of the witness.").   In United States v. Swenson, the Honorable B. Lynn Winmill, Chief District Judge for the District of Idaho, concluded that a defendant's case-in-chief included cross-examination of a government witness when "a defendant is asserting the defense that the government cannot prove the required elements of the crime charged."   298 F.R.D. at 476-77.   Judge Winmill noted, however, that a "defendant is not required to disclose evidence used to impeach a government witness by, for example, showing a prior inconsistent statement," because impeachment evidence is not part of the defendant's case-in-chief.   United States v. Swenson, 298 F.R.D. at 477.

Harry intends to use the recordings and transcripts as prior inconsistent statements in the event that one of the United States' witnesses testifies contrary to the transcript.   See Tr. at 46:2-46:4 (Samore).   This use is impeachment material.   See, e.g., Kalouma v. Gonzales, 512 F.3d 1073, 1076 n.1 (9th Cir. 2007)(citing United States v. Hale, 422 U.S. 171, 176 (1975))("Prior inconsistent statements are a classic ground to impeach a witness,").   Harry does not intend to introduce the transcripts to "support [a] claim or defense," Black's Law Dictionary 244 (9th ed.

2009), but instead intends to introduce the transcripts solely for the purpose of impeaching a witness that makes an inconsistent statement.   See United States v. Medearis, 380 F.3d at 1057-58.   These recordings and transcripts are not part of Harry's case-in-chief and are, thus, not discoverable under rule 16(b)(1)(A).   See Fed. R. Crim. P. 16(b)(1)(A).

## II.    THE RECORDINGS AND TRANSCRIPTS ARE WORK PRODUCT THAT IS PROTECTED BY RULE 16(b)(2)(C).

The recordings and transcripts are protected work product.   These recordings and transcripts are statements that the United States' witnesses made to Harry's agent, Ainsworth.   See Motion at 1.   Rule 16(b)(2)(B) excludes from discovery under rule 16(b) statements made to "the defendant, or the defendant's attorney or agent, by . . . a government or defense witness; or . . . a prospective government or defense witnesses."   Fed. R. Crim. P. 16(b)(2)(B).   This exclusion under rule 16(b)(2) is intended to protect a criminal defendant's work product.   Fed. R. Evid. 16 advisory committee's notes (1975 enactment).   The United States is seeking the recordings and transcripts from interviews that Harry's agent conducted of several potential witnesses.   See Motion at 1.   The United States is requesting the recordings and transcripts to provide insight into the credibility of the witnesses.   See Motion ¶ 2, at 2.   The United States is, thus, requesting the transcripts to obtain the statements that the potential witnesses made to Harry's agent.   See Motion ¶ 2, at 2.   Rule 16(b)(1)(A)'s reciprocal discovery rule excludes this information from discovery.   See Fed. R. Crim. P. 16(b)(2)(B).   See also United States v. McCloud, No. 4:08-CR-156 CAS, 2008 WL 5082875, at *10 (E.D. Mo. Nov. 25, 2008)(Shaw, J.)("The defendant is not required to disclose the statements of his witnesses prior to the trial of the case."

(citing Fed. R. Crim. P. 16(b)(2)(B)(ii)).   The recordings and statements are thus protected as work product under Rule 16(b)(2)(B).[11]

The United States' reliance on Nobles for the proposition that a district court can use its inherent power to require the production of a previously recorded witness statement is misplaced. See Motion ¶ 2, at 2.   In Nobles, the defendant's private investigator interviewed a number of eyewitnesses to a bank robbery and prepared a written report of these interviews.   See 422 U.S. at 227-228.   During cross-examination of the United States' witnesses, the defendant used these reports to impeach the witnesses with prior inconsistent statements.   See 422 U.S. at 228.   The district court did not require the defendant to provide the United States with the reports during cross-examination, but ruled that, if the defendant called the investigator to testify about the interviews and the statements that the witnesses made, then the defendant would be required to give the United States the reports.   See 422 U.S. at 228-29.   After the United States rested its case, the defendant called the investigator to testify about the statements that the witnesses made, but the defendant refused to provide the United States with the reports.   See 422 U.S. at 229.   The district court ruled that, because the defendant refused to turn over the reports, the investigator could not testify.   See 422 U.S. at 229.   The Supreme Court held, in an opinion that the Honorable Justice Lewis F. Powell, Associate Justice for the Supreme Court of the United States

---

[11]If this case were a civil case, the recordings and transcripts would undoubtedly be protected as work product.   In Hickman v. Taylor, the defendant hired an attorney who privately interviewed survivors of a tug boat accident.   See 329 U.S. 495, 498.   The plaintiff -- the family members of a person who died in the tug boat accident -- requested in discovery the statements that the survivors made to the defendant's attorney.   See 329 U.S. at 498.   The Supreme Court held that these statements from the interviews were protected from discovery as the work product of the defendants.   See 329 U.S. at 511.   Transcripts and statements from interviews, taken in anticipation of litigation, are protected work product.   See Hickman v. Taylor, 329 U.S. at 511. See also Long Anderson Univ., 204 F.D.R. 129, 137-38 (S.D. Ind. 2001)(Baker, M.J)(finding that transcripts from interviews of eyewitnesses taken by defendant's insurance agent were protected work product).

wrote, that it was within the district court's inherent powers to either require disclosure of the reports or exclude the investigator's testimony.   See 422 U.S. at 231-32.   The Supreme Court did not, however, rely on rule 16 in upholding the district court's ruling.   See 422 U.S. at 234-36. Rather, the Supreme Court held that rule 16 was inapplicable, because both "the language and history of Rule 16 indicate that it addresses only pretrial discovery," while the order of disclosure in Nobles occurred during trial after the prosecution had rested.   422 U.S. at 235.   The Supreme Court quoted the prior version of rule 16(b)(2), which contains the work-product exclusion, to note that work-product protections of rule 16 "would not authorize pretrial discovery of the investigator's report."   422 U.S. at 234 n.8.   The Supreme Court went onto hold that, because rule 16 pertains to pretrial matters only, "Rule 16 imposes no constraint on the District Court's power to condition the impeachment testimony or respondent's witnesses on the production of the relevant portions of his investigative report" at trial.   Nobles, 422 U.S. at 236.[12]   Concerning the argument that the investigator's reports were protected work product, the Supreme Court held that that the defendant waived his work-product protections by calling the investigator to testify about the contents of the reports.   See 422 U.S. at 239-40.

In contrast to Nobles, the United States is requesting disclosure of the recordings and transcripts before trial.   See Motion at 1.   Rule 16 governs this request.   See Nobles, 422 U.S. at 235.   The Supreme Court in Nobles noted that rule 16 would have prohibited disclosure of the reports before trial.   See 422 U.S. at 234 n. 8.   Additionally, in Nobles, the defendant waived his work-product protections by calling the investigator to testify at trial.   See 422 U.S. at 239-40. Harry has stated that he does not intend to call Ainsworth to testify.   See Response ¶ 6, at 2.

---

[12]Because the Supreme Court held that rule 16 did not apply, it did not consider whether the investigator's testimony for impeachment purposes would have been considered part of the defendant's case-in-chief under rule 16(b)(1)(A).   See Nobles, 422 U.S. at 234-236.

Harry has, thus, not waived the work-product protections of rule 16(b)(2).   Cf. Nobles, 422 U.S. at 239-40 ("Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony.").   Because Nobles did not apply rule 16 and because Harry has not waived his work-product protections, Nobles does not support the United States' argument that the Court has some reserves of power to order Harry to disclose the recordings and transcripts.   See Motion ¶ 2, at 2.   Indeed, Nobles indicates that rule 16 prohibits the Court from requiring disclosure before trial.   See Nobles, 422 U.S. at 234 n.8.

The recordings and transcripts of the interviews are not evidence that Harry must disclose under rule 16(b)(1)(A), because Harry does not intend to introduce them during his case-in-chief and because they are excluded from discovery under rule 16(b)(2)(B).   The Court, thus, concludes that Harry is not required to disclose the recordings and transcripts to the United States before trial, and that Harry may use the recordings and transcripts during cross-examination.

**IT IS ORDERED** that the Opposed Emergency Motion to Compel Defendant to Comply with Rules 16(b)(1)(A), or in the Alternative, Motion In Limine to Exclude Use of Defendant's Witness Interviews, filed April 26, 2013 (Doc. 139), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
    United States Attorney
Kyle T. Nayback
    Assistant United States Attorney
David Adams
    Special Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

John F. Samore
Albuquerque, New Mexico

*Attorney for the Defendant*