IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                  No. CR 10-1915 JB

MYRON JIM HARRY,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on: (i) the United States Sentencing Memorandum, filed April 11, 2014 (Doc. 225)("U.S. Memo."); and (ii) the Defendant Harry's Sentencing Memorandum, filed April 17, 2014 (Doc. 226)("Harry Memo."). The Court held a sentencing hearing on May 7, 2014. The primary issues are: (i) whether Defendant Myron Harry should receive a downward variance from his Guideline sentence, and (ii) whether the Court should sentence Harry to the high end of the Guideline sentencing range. The Court will not vary from the Guideline sentencing range and will sentence Harry to a sentence on the lower end of the Guideline range -- 151 months of imprisonment followed by ten years of supervised release.

**FACTUAL BACKGROUND**

      The Court takes its facts from the Presentence Investigation Report, disclosed August 12, 2013 ("PSR"), that the United States Probation Office ("USPO") prepared. The USPO gets its facts for the PSR through investigative reports which the Navajo Nation Division of Public Safety prepared and from Plaintiff United States of America's discovery material. See PSR ¶ 4, at 3.

1. **<u>Harry's Personal Characteristics</u>.**

Harry is a twenty-seven year-old male American Indian. See PSR at 2. Harry's parents divorced in 1994 or 1995. See PSR ¶ 38, at 8. The divorce was difficult for Harry, and he was put into counseling as a young child. See PSR ¶ 39, at 8. Harry, however, has not been diagnosed with any psychological disorder. See PSR ¶ 45, at 9. Harry's father was an alcoholic and was abusive, although there is no evidence that he physically abused his children. See PSR ¶¶ 39, 41, at 8-9. Harry graduated from high school in 2005 and attended college at New Mexico State University in Las Cruces, New Mexico, from 2006 to 2007. See PSR ¶ 49, at 10. Harry's only asset is a 2006 Hyundai Sonata, worth approximately $12,000. See PSR ¶¶ 57-58, at 11-12.

Harry has cohabitated with Christina Padilla since 2008, and they have a three year-old daughter. See PSR ¶ 42, at 9. Government assistance, and her family and Harry's family, support Padilla. See PSR ¶ 42, at 9. On June 7, 2010, Harry was diagnosed with Polysubstance Dependence and Impulse Control Disorder NOS (Not Otherwise Specified). See PSR ¶ 48, at 9-10. Harry was convicted of Criminal Damage to Property in 2008 in Farmington, New Mexico. See PSR ¶ 31, at 7. The conviction arose from Harry punching a fence at a restaurant/brewery because he was mad, as a result of his high level of intoxication, that no one would leave the establishment with him. See PSR ¶ 31, at 7. That conviction resulted in a $78.00-$100.00 fine and ten days in jail. See PSR ¶ 31, at 7. Harry has no other criminal history other than traffic offenses in 2005 and 2007 for "No Tail-lamps, Mandatory Seatbelts, and Financial Responsibility for which he was fined." PSR ¶ 34, at 7.

2. **<u>The Offense of Conviction</u>.**

On the evening of May 5, 2010, Stephanie Johnson and Dimitri Wauneka threw a small social gathering at their apartment in Shiprock, New Mexico. See PSR ¶ 5, at 3. Jane Doe, along

with approximately eight other individuals, including Harry, consumed alcohol that night. See id. ¶ 7, at 3. Doe knew Harry from high school. See PSR ¶ 7, at 3. One of the bedrooms in the apartment was designated as a room in which the female guests were sleep, and Doe went to sleep in this bedroom on an airbed. See id. ¶ 6-7, at 3. Elysia Murphy was sleeping on the same airbed next to Doe. See PSR ¶ 9, at 4. Doe awoke to find Harry on top of her, having vaginal intercourse and kissing her on her lips. See id. ¶ 7, at 3. Murphy awoke to sounds of grunting and rapid movement of the airbed. See PSR ¶ 9, at 4. Murphy saw that Doe's eyes were closed and that Harry was on top of Doe engaging in sexual intercourse. See id. ¶ 9, at 4. Murphy instructed Harry to get off Doe, and Harry quickly got up and pulled up his pants. See PSR ¶ 9, at 4. Harry attempted to pull up Doe's panties, but Murphy instructed Harry to leave the room, which he did. See id. ¶ 9, at 4.

Doe was referred to the hospital in Farmington, New Mexico, for a sexual assault examination. See PRS at ¶ 8, 3. The examination revealed that Doe suffered numerous tears to her vaginal and anal areas, and a vaginal swab revealed that Harry's DNA was found inside Doe. See PSR ¶ 8, at 3-4. An investigator interviewed Harry on May 11, 2013, and Harry indicated that he was accused of raping Doe, but denied even going into the bedroom where Doe and Murphy were sleeping. See PSR ¶ 10, at 4. At trial, Harry testified that he went into the girls' bedroom to check on Doe, when she pulled him towards her and started kissing him. See PSR ¶ 13, at 4-5. Harry testified that Doe reached for his belt buckle and that he thought she wanted to have sex. See PSR ¶ 13, at 5.

**PROCEDURAL BACKGROUND**

Harry was indicted for sexually abusing Doe during a party on the night of May 5, 2010, and the morning of May 6, 2010, in Shiprock, New Mexico. See Indictment at 1, filed June 24,

- 3 -

2010 (Doc. 14). After a four-day jury trial, Harry was convicted of Sexual Abuse. See Verdict, filed May 9, 2013 (Doc. 182). With regards to sentencing, the PSR calculates a base offense level of 30, which corresponds to that for Criminal Sexual Abuse under U.S.S.G. § 2A3.1(a)(2). See PSR ¶ 20, at 6. The PSR recommends an additional 2 offense levels under U.S.S.G. § 3A1.1(b)(1), because Harry knew or should have known that Doe was a vulnerable victim. See ¶ 22, at 6. The PSR recommends 2 additional offense levels under U.S.S.G. § 3C1.1 for Obstruction or Impeding the Administration of Justice, because Harry initially told investigators that he did not enter the girls' bedroom, and then later testified that he entered the room and had consensual sex with Doe, while several witnesses testified that Doe was asleep at the time and unable to consent to the intercourse. See PSR ¶ 24, at 6. The PSR calculates a total offense level of 34. See PSR ¶ 28, at 6. Based on the 2008 conviction in Farmington, the PSR assesses Harry with a total criminal history score of 1, which establishes a criminal history category of I. See PSR ¶¶ 31-33, at 7. When a criminal history category of I is matched with the total offense level of 34, the Guidelines recommend an imprisonment range of 151 to 188 months. See PSR ¶ 60, at 12. The maximum statutory sentence is a term of life imprisonment. See PSR ¶ 59, at 12. See also 18 U.S.C. § 2242. The PSR notes that there are no factors that appear to warrant a departure from sentencing within the Guideline's range. See PSR ¶¶ 75-76, at 13-14.

The United States requests that the Court impose a sentence of 188 months imprisonment, which is at the high-end of the Guideline range. See U.S. Memo. at 1. The United States recounts the events that occurred on May 5, 2010, including Harry's version of the events, and argues that the jury rejected Harry's version and convicted him. See U.S. Memo. ¶¶ 1-8, at 1-4. The United States contends that 18 U.S.C. § 3553 requires the Court to consider the need for a sentence to: (i) "reflect the seriousness of the offense, to promote respect for the law and to provide

just punishment for the offense"; (ii) "to afford adequate deterrence to criminal conduct"; (iii) "to protect the public from further crimes of the defendant"; and (iv) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  U.S. Memo. ¶ 9, at 4.  The United States argues that the Guideline sentence would promote these factors.  See U.S. Memo. ¶ 9, at 4-5.  The United States notes that the USPO did not find any applicable grounds for departing or varying from the Guidelines.  See U.S. Memo. ¶ 10, 12, at 5.  The United States contends that Harry's education and financial responsibilities are not "particularly unique," and "do not warrant a sentence at the low-end or below the advisory guideline range."  U.S. Memo. ¶ 11, at 5.  The United States argues that Harry attempted to obstruct justice by testifying that the sex between him and Doe was consensual, and that Harry rejected the United States' plea offers.  See U.S. Memo. ¶ 13, at 6.  The United States contends that Harry must "now accept the sentence imposed by the Court which should be at the high-end of the sentencing guideline range."  U.S. Memo. ¶ 13, at 6.  The United States, thus, requests that the Court sentence Harry to a term of 188 months with no less than five years of supervised release.  See U.S. Memo. at 6.

Harry requests that the Court "exercise its discretion and depart up to ten levels from the Guideline sentence exposure in the PSR."  Harry Memo. at 5.  Harry notes that, after being charged with violating 18 U.S.C. § 2242(2), he was released from custody and remained in full compliance with the conditions of release, remained fully employed, and lived in an apartment with Padilla and their child until his conviction.  See Harry Memo. at 1.  Harry argues that federal district courts are free to deviate from the Guidelines to tailor individual sentences, and that the Guidelines are not mandatory, but are only one factor that a court must consider in imposing a sentence.  See Harry Memo. at 2.  Harry contends that no rule requires extraordinary

circumstances to justify a sentence outside the Guidelines.  See Harry Memo. at 2.  Harry notes that a Forensic Psychological Risk Assessment Evaluation, which was performed on Harry on March 6, 2013, indicates that alcohol abuse was the controlling factor in the criminal activity for which Harry was convicted.  See Harry Memo. at 3.  Harry also contends that he submitted a Statement for Acceptance of Responsibility and Version, but that he is not requesting a 3 levels decrease in offense levels under § 3E1.1 of the Guidelines.  See Harry Memo. at 3.

Harry asserts that he has an exceptional record, which the PSR documents.  See Harry Memo. at 3.  Harry notes that he graduated from high school and attended college, that he maintained employment throughout his early adulthood, that he supported his family, and that he has a scant criminal history.  See Harry Memo. at 3.  Harry contends that he comes from a good family and has remained a "solid citizen" throughout the case's pendency.  Harry Memo. at 4.  Harry notes that he has "never in his life had a domestic violence allegation" made against him, which may be because of the violence that his birth father committed and that Harry witnessed as a small child.  Harry Memo. at 4.  Harry argues that the Court should depart from the sentencing Guidelines, because the Guidelines range "came in greatly higher than the seriousness of the offense" and because of the lack of violence.  Harry Memo. at 4.  Harry contends that a variance would "still promote respect for the law, deter criminal conduct, and show respect for the victim." Harry Memo. at 4.  Harry argues that the "Court and the parties will rarely, if ever, have a more explicit example of 'aberrant conduct'" under U.S.S.G. § 5K2.20.  Harry Memo. at 5 (quoting U.S.S.G. § 5K2.20).  Harry asserts that, when the criminal conduct drastically conflicts with the life a person has led, the Court should vary the sentence to fit the act and the defendant.  See Harry Memo. at 5.  Harry argues that the Court should depart 10 levels from the Guidelines offense level and "set a sentence sufficient but not greater than necessary to respect the law, recognize the

gravity of the criminal conduct, and reflect the favorable prospects for rehabilitation." Harry Memo. at 5.

The Court held a sentencing hearing on May 7, 2014. See Transcript of Hearing (taken May 7, 2014)("Tr.").[1]  At the hearing, the United States requested that the Court allow Doe to address the Court, which it did allow. See Tr. at 3:9-3:15 (Nayback, Doe, Court). Doe described how she has consistently been reminded of Harry's crime against her and how she feels that Harry "should pay for what he did through time in the state penitentiary." Tr. at 3:22-4:1 (Doe). Doe stated that it "was just overwhelming" that Harry would come into the room where she was and do what he did and that he would maintain throughout the trial that the sex was consensual, when it was not. Tr. at 4:3-4:6 (Doe). Doe stated that she hopes that she can put it all behind her and that she can move forward with her life. See Tr. at 4:6-4:8 (Doe). Doe noted that the assault impacted her life and took her away from her school work. See Tr. at 4:9-4:10 (Doe). Doe concluded by saying that nobody "ever wants to be sexually assaulted" and that she does not "think that anybody ever should be." Tr. at 5:9-5:10 (Doe).

The United States noted that Harry had not objected to the PSR's calculations and that the top end of the Guidelines range is 188 months imprisonment. See Tr. at 5:18-5:20 (Nayback). The United States maintained that it is not asking for a variance from the Guidelines range, but that it believes that a 188 month sentence is warranted, because of the crime's egregious nature and because of the sentence's deterrent effect. See Tr. at 5:20-5:25 (Nayback). The United States noted that Harry has changed his story about what happened that night, has continuously denied responsibility, and has obstructed justice. See Tr. at 6:11-6:25 (Nayback). The United States argued that, in Harry's Statement of Responsibility, Harry is not actually taking responsibility for

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited versions. Any final transcript may contain slightly different page and/or line numbers.

his actions, because he states that he misread Doe's signals and that he was not thinking clearly at the time. See Tr. at 7:12-8:9 (Nayback). The United States contended that there is no rationale to Harry's request for the Court to vary 10 levels. See Tr. at 9:15-9:17 (Nayback). The United States argued that the Court should impose a fine on Harry equal to the value of Harry's 2006 Hyundai Sonata, because his name is on the vehicle. See Tr. at 31:24-32:4 (Nayback).

Harry argued that the case was a close one that came down to Harry's testimony. See Tr. at 12:5-12:11 (Samore). Harry argued that his conduct was not egregious, and noted that the Court, the United States, and his counsel see again and again homicides and second-degree murders in which defendants receive less time than the United States requests in this case. See Tr. at 12:23-13:5 (Samore). Harry noted that he is not asking for a departure for an acceptance of responsibility, but that his Statement of Responsibility indicates what happened at trial during cross-examination, which resulted in the verdict against him. See Tr. at 13:21-14:6 (Samore). Harry initially indicated that his 2006 Hyundai Sonata was still in his possession and that the car is in his name, see Tr. at 15:13-15:19 (Harry, Court); id. at 30:23-40:24 (Harry, Court), but later noted that the car is also in his girlfriend's name as well, see id. at 31:7-31:16 (Samore, Harry, Court).

## LAW REGARDING THE UNITED STATES SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, thus making the Guidelines sentencing ranges effectively advisory. See 543 U.S. at 245. In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous

factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551. To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference. See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that

the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted). A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007). Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[2] guideline sentence. See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

---

[2]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the guideline ranges are advisory. Gall v. United States, 522 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory[.]"); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."). The Court must consider the guidelines, see Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from

---

the Guidelines . . . ."), and must accurately calculate the guideline range, see Gall v. United States, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated guideline range. See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

> The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).
>
> . . . .
>
> The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, No. CR 10-1919-002, 2014 WL 3377695, at *20-21 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

- 11 -

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.). The Supreme Court recognized, however, that the sentencing judge is "in a superior position to find facts and judge their import under § 3553(a) in each particular case." 552 U.S. at 89. Applying § 3553(a)'s factors, the Court has found that the case of an illegal immigrant who re-enters the United States so as to be able to provide for his two children and two siblings was not materially differentiated from other re-entry cases, and, thus, no variance from the guidelines sentence was warranted. See United States v. Alemendares-Soto, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.). On the other hand, in United States v. Jager, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court found that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction." 2011 WL 831279, at *14.

## ANALYSIS

The Court does not believe that a variance from the Guideline range is warranted and concludes that Harry should receive a sentence on the lower end of the Guidelines range. The Court has reviewed the PSR's factual findings with care, and, there not being any objections, adopts them as its own. The Court has also considered the sentencing Guidelines applications in the PSR, and, there not being any objections to those, the Court will adopt those as its own as well.

The Court has considered the factors set forth in 18 U.S.C. § 3553(a)(1)-(7). Harry's offense level is 34, and his criminal history category is I. The Guideline imprisonment range is 151 to 188 months. In arriving at a sentence, the Court has taken into account not only the Guidelines, but also other sentencing goals as well. Specifically, the Court has considered the Guidelines sentencing range established for the applicable category of offense committed by the applicable category of defendant. Both parties, however, are seeking something different than the low end of the Guideline range.

As for the United States' request for a sentence at the high end of the Guideline range, see U.S. Memo. at 6, the Court does not believe that Harry's conduct was sufficiently egregious to warrant the high end. The Court's usual practice is to sentence at the low end of the Guidelines unless there are some aggravating factors that counsel for the sentence to rise higher into a greater sentence. Here, the Court does not see those additional factors. The offense is a very serious one; however, the low end of the Guidelines reflects sufficiently the seriousness of the offense. In emphasizing respect for the law and after comparing Harry's offense to other offenses that come before the Court, the Court concludes that a low end of the Guideline sentence is appropriate. The Court, thus, concludes that a sentence of 151 months, which is at the low end of the Guidelines, is appropriate.

As to Harry's request for a variance, the Court believes that there are five factors that place some downward pressure on the sentence, but that a Guideline range is still appropriate. Eleven factors, however, call for upward pressure. One of the troubling things in this case is that the heavy drinking blurred so much of what occurred that night. The incident occurred at a drunken party, where there was far too much alcohol consumed. These circumstances place some downward pressure on the sentence. Additionally, the Court has carefully studied the Forensic

Psychological Risk Assessment Evaluation that was performed on Harry, the PSR, and Harry's background, and the Court finds that Harry does not have any significant criminal history. Harry is educated, has some college experience, and has useful skills. Essentially, Harry has a lot with which to work while on supervised release; the Court can substitute supervised release for more incarceration. These five factors put downward pressure on the sentencing. There are other factors, however, that continue to keep Harry's sentence within the Guideline range. First is the seriousness of the offense. Doe's testimony at the Sentencing Hearing underscores better than anything the Court could say about the offense's seriousness. Second is Harry's lack of honesty throughout the case. Harry told a different story to the investigator than he gave at trial, both of which are contrary to the jury's finding, which the Court is bound to follow. Third is that Harry has not fully come to grips with what occurred that night and still refuses to accept responsibility for his actions. Harry's Statement of Responsibility is not an acceptance of responsibility, but rather an explanation and excuse for his conduct. The Court believes that its Guidelines sentence promotes respect for the law and provides a just punishment that reflects the jury's findings. Harry has not accepted responsibility for his conduct, and a 151 month sentence affords adequate deterrence at both the specific level and general level in light of the jury's verdict. The Court must both protect the public and avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. The Forensic Psychological Risk Assessment Evaluation emphasizes the problem that Harry has with alcohol and shows that Harry will have to come to grips with his problem. Incarceration cannot be used to cure an alcohol problem, but can alleviate the risk posed to society. If Harry can address his alcohol problem, he can reduce the chances of recidivism. There are, thus, eleven factors that call for upward pressure on the Guidelines range, and five that put downward pressure. The Court believes that all of these

factors create pressure for the sentence to be within the Guidelines, and the Court concludes that the facts that counsel for a Guideline sentence outweigh the factors for a variance. The Court concludes that it cannot justify a 10-level downward variance or any downward adjustment at all. The Court, thus, concludes that a punishment set forth in the Guidelines is appropriate for this sort of offense.

After reviewing the kinds of sentences and the range established by the Guidelines, the Court concludes that a sentence at the low end of the Guideline range of 151 months is adequate to reflect the seriousness of the offense, promote respect for the law, promote just punishment, afford adequate deterrence at both a specific and general level, protect the public, and avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. In sum, this sentence fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a). The Court also believes that this sentence is reasonable and sufficient without being greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.). The Court will thus sentence Harry to 151 months of imprisonment followed by ten years of supervised release.

**IT IS ORDERED** that the request for a sentence at the high end of the sentencing Guidelines in the United States Sentencing Memorandum, filed April 11, 2014 (Doc. 225), is denied. The Court also denies the request for a downward variance of 10 levels in Defendant Harry's Sentencing Memorandum, filed April 17, 2014 (Doc. 226). The Court will sentence Defendant Myron Harry to 151 months imprisonment followed by ten years of supervised release.

```
                                    _____
                                    UNITED STATES DISTRICT JUDGE
```

*Counsel:*

Damon Martinez
   United States Attorney
Kyle T. Nayback
   Assistant United States Attorney
David Adams
   Special Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

John F. Samore
Albuquerque, New Mexico

    *Attorney for the Defendant*