UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                                                CR 10-1915 JB/JHR
                                                                        CIV 17-0590 JB

MYRON JIM HARRY,

    Defendant-Movant.

## MAGISTRATE JUDGE'S PROPOSED
## FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Petitioner/Defendant Myron Jim Harry's ("Petitioner" or "Mr. Harry") Motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, filed on May 26, 2017. (Doc. 267).[1] Petitioner argues that he received ineffective assistance of counsel during the plea negotiation stage, and should be granted post-conviction relief. The Court held an evidentiary hearing pursuant to 28 U.S.C. § 2255(b) on March 7, 2018, at 2:00 p.m. Having thoroughly reviewed the evidence, the submissions of the parties, the record before the Court, and the relevant law, the undersigned recommends[2] that Mr. Harry's motion be denied, because he has not stated a plausible claim that he received ineffective assistance of counsel.

### BACKGROUND AND PROCEDURAL FACTS

A criminal complaint was filed on May 24, 2010 against Mr. Harry for violating 18 U.S.C. §§ 1153 and 2242(2)(A)(B), for sexual abuse in Indian country. (Doc. 1). The factual background for the criminal matter has been discussed at length in the Court's Memorandum

---

[1] Citations to "Doc." are to the document number provided in the underlying criminal case, CR 10-1915 JB/JHR.
[2] The Honorable James O. Browning referred this case to the undersigned's predecessor to recommend an ultimate disposition on June 6, 2017. (Doc. 269). The undersigned was assigned to the case on September 18, 2017.

1

Opinion and Order on Defendant's Motion to Suppress Evidence Based on Spoliation or Incompleteness, filed on February 19, 2013 (Doc. 114), and in Mr. Harry's Tenth Circuit appeal, *United States v. Harry*, 816 F.3d 1268, 1272-1275 (10th Cir. 2016). A full factual background is therefore unnecessary; however, for purposes of the motion in front of this Court, some of the background facts will be useful. The undersigned will therefore recite a summary of the relevant facts.

On May 6, 2010, Mr. Harry and Jane Doe attended a social gathering at a mutual friend's apartment in Shiprock, New Mexico. (Doc. 249 at 51:19 to 52:14). In the early morning hours, Mr. Harry went into the spare bedroom where Ms. Doe was sleeping, and penetrated her vaginally with his penis. (Doc. 1 at 3-4; Doc. 250 at 16:8 to 17:2). A female guest who was sleeping on the air mattress next to Ms. Doe was awakened by sounds and movement on the mattress, saw that Ms. Doe was sleeping, and demanded that Mr. Harry leave immediately. (Doc. 1 at 3-4; Doc. 250 at 136:20 to 138:19). Ms. Doe had a rape kit completed later that day which revealed several tears as well as Mr. Harry's DNA in her vagina. (Doc. 250 at 44:20 to 45:2; 109:2 to 113:21; 198:11-22). Mr. Harry, unaware of the discovery of his DNA, informed Navajo Nation criminal investigator, Jefferson Joe, that he had not entered the room on the night in question. (*Id.* at 202:18-21; Doc. 251 at 76:20 to 77:22).

During litigation, both the United States and Mr. Harry filed several pretrial motions. Many of Mr. Harry's motions were denied, (*see, e.g.,* Doc. 75; Doc. 114; Doc. 138; Doc. 145; Doc. 236; Doc. 85; Doc. 113; Doc. 108), while many of the United States' motions were granted. (*See* Doc. 96; Doc. 167; Doc. 148; Doc. 130; Doc. 228; Doc. 129; Doc. 197). Prior to trial, the United States and Mr. Harry engaged in plea negotiations. The parties discussed these plea negotiations before the Court, and agreed that there had been informal, preliminary plea

negotiations, one of which was reduced to writing. Mr. Samore further stated that the parties had done their best to resolve the case through plea bargaining, but were ultimately unsuccessful; Mr. Harry agreed that this was his understanding as well. (Doc. 249 at 13:18 to 15:13).

A four-day jury trial commenced on May 6, 2013. Mr. Harry testified that he had had consensual sexual relations with Ms. Doe. (Doc. 251 at 54:6 to 59:22). However, during cross examination, he testified inconsistently that he "wasn't sure if [Ms. Doe] was herself or not, like awake or not awake," (*Id.* at 91:10-16), but that "she was, you know, coherent and moving around," and that was how he knew she was awake. (*Id.* at 91:18-23). He also fatally testified, "I wasn't really aware – or sure what had happened that night. You know, I just thought it was consensual at the time. But ever since this case started going on, yesterday I heard their testimony, and I kind of feel that, you know, I don't think it was; I was mistaken." (*Id.* at 67:8-12). After deliberating for a total of 4 hours 12 minutes,[3] the jury returned with a guilty verdict on May 9, 2013. (Doc. 182).

On May 7, 2014,[4] Petitioner was sentenced to 151 months imprisonment, and ten years supervised release. While the United States asked the Court for the high end of the Sentencing Guidelines set forth in the Presentence Report, (Doc. 225 at 1, 6), Mr. Samore requested a ten-level variance or departure. (Doc. 226 at 4). Judge Browning denied both requests, but stated at the sentencing hearing that he was "troubled by Mr. Harry's lack of honesty throughout this case," that he had not come "to grips with what occurred that night," and even during sentencing had not really accepted responsibility. (Doc. 239; Doc. 247 at 21:19-20; 22:3-6). Mr. Harry submitted a draft Statement for Acceptance of Responsibility to Mr. Samore, in which he stated

---

[3] In Petitioner's Section 2255 Motion, he argues that the weight of the evidence was so heavy that the jury deliberations only lasted 52 minutes. (Doc. 267 at 2, 9). However, Petitioner's calculation is inaccurate because it omits the deliberations that occurred on May 8, 2013, in which the jury deliberated for 3 hours and 20 minutes. (Doc. 251 at 193:20).

[4] Sentencing was continued until May 7, 2014 to allow time for Mr. Harry to undergo a Psychosocial and Psychosexual Evaluation. (Doc. 202; Doc. 203; Doc. 229).

that Ms. Doe had "flirted" with him all night, that she appeared at one point less than fully clothed, and that he was "sure [Doe] wanted to have sex, because she grabbed at [his] belt and [they] were kissing each other." (Doc. 273-3 at 1, 2). However, he also stated he did "not know to this day if she was really interested in having sex." (Doc. 273-2 at 1). Mr. Harry then filed an appeal, represented by Mr. Samore, in which he also argued, in part, that the Court wrongfully precluded evidence that Ms. Doe had "flirted" with him on the night of the incident. *See United States v. Harry*, 816 F.3d 1268, 1271-1272 (10th Cir. 2016). The Tenth Circuit affirmed Petitioner's conviction and sentence. *Id.* at 1284.

Mr. Harry then filed this Petition, alleging that he received ineffective assistance of counsel from Mr. Samore, because Mr. Samore did not advise him to accept a plea offer rather than go to trial. In his declaration accompanying the Petition, he avers that Mr. Samore advised him "not to accept the plea offer because [they] had a strong case if [they] proceeded to trial," and that they could not negotiate another plea after the initial plea negotiations concluded. (Doc. 267-2 at ¶¶ 3, 5). Mr. Harry also alleged that Mr. Samore did not discuss the significance of the lost pretrial motions or the weight of the Government's evidence against him, that he would have entered an "open" guilty plea had he been advised to do so, and that he only maintained his innocence throughout the proceedings because he was moving forward with trial. (*Id.* at ¶¶ 4, 6-7).

In Mr. Samore's affidavit attached to the United States' Response, he countered that he had "thoroughly apprised Mr. Harry of the advantages and detriments of entering a guilty plea…as well as the advantages of proceeding to trial," and denied advising him not to accept a plea offer. (Doc. 273-1 at ¶¶ 9, 15). He also contended that the parties made reasonable efforts at plea negotiation, but came to an impasse over the parties' disagreement as to sex offender

registry. (*Id.* at ¶¶ 4-6, 7, 11). Mr. Samore swore that the United States' written plea offer was for 70-87 months. (*Id.*at ¶ 7).

At the evidentiary hearing on March 7, 2018, Mr. Harry testified that his counsel communicated a plea to him for six to seven years, but he did not accept the plea, "[b]ecause at that time, it seemed like a lot of years to [him]," and he did not want to plead to anything that would require him to register as a sex offender (Doc. 288 at 5:17 to 6:13; 18:17-22). Mr. Harry also testified that he rejected a second plea offer for "ten to seven years," because that also "seemed like a lot of time," and Mr. Samore informed him that he had a 50/50 chance of beating the case. (*Id.* at 8:13 to 9:12). He reiterated that Mr. Samore did not explain that he could plead guilty without a plea agreement, nor did he advise him to plead guilty, although Mr. Samore did tell Mr. Harry, "'Everything matches everything towards you, and it's most likely you'll get found guilty, but you've still got a shot at arguing in some cases.'" (*Id.*at 11:3 to 12:2). Mr. Samore did not, however, tell him to reject the plea and go to trial. (*Id.* at 17:10-13). While Mr. Harry stated that he did not want to plead guilty to something that was "irrelevant," nor did he want to plead to anything at all, he would have pled guilty early if Mr. Samore explained that the evidence against him was substantial. (*Id.* at 13:20 to 14:8; 19:3-5).

Mr. Samore then testified that he kept channels of communication open with the United States in this case, but that the parties never got close to a resolution, because Mr. Harry was adamant about not accepting sex offender registration. (*Id.* at 33:23 to 35:4). He claims he had suggested an assault plea to avoid sex offender registration, but the United States would not accept such a plea. (*Id.* at 36:2-13). He further testified that he never advises a client to reject a plea and go to trial, but informs them that the odds are always against the defendant in criminal

5

cases. (*Id.* at 41:7-24). As such, he emphasized that he never would have indicated that Mr. Harry had a 50/50 chance of beating his case. (*Id.* at 46:24 to 47:10).

## **LEGAL STANDARD**

Pursuant to 28 U.S.C. § 2255, a federal prisoner who:

> claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a). Relief is available under Section 2255 only if "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted). The court must presume "that the proceedings leading to the conviction were correct," and the burden is on the movant to demonstrate otherwise. *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

## **ANALYSIS**

### I. **Mr. Samore's performance during plea negotiations was reasonable.**

The framework for assessing the merits of an ineffective assistance of counsel claim involves two steps: The first step requires the Court to "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Strickland v. Washington*, 466 U.S. 668, 690 (1984); the second step requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

*Strickland* recognized that the "availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges." *Id.* at 690. Therefore, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," and as such, counsel are afforded a "strong presumption that [their] conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings," including arraignments, post-indictment lineups, and the plea bargaining process. *Missouri v. Frye*, 566 U.S. 134, 140 (2012); *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."). The two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). "Surmounting *Strickland's* high bar is never an easy task," and "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" and instead "look to contemporaneous evidence to substantiate a defendant's express preferences." *Lee v. U.S.*, 137 S. Ct. 1958, 1967 (June 23, 2017) (internal citations omitted).

In *Missouri v. Frye*, the Court held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." 566 U.S. at 145. However, the Court declined to refine that general holding, recognizing that plea bargaining is often dependent on a particular defense attorney's personal style, and it was therefore "neither prudent nor practicable to try to elaborate or define

7

detailed standards for the proper discharge of defense counsel's participation in the process." *Id*. Subsequent cases have brought particular refinement to the standard of counsel's representation during the plea stage. For example, when defense counsel has failed to advise a client about an easily determinable legal issue, such as "succinct, clear, and explicit" language of a removal statute that a conviction will result in deportation, counsel's representation is constitutionally deficient under *Strickland*. *Padilla v. Kentucky*, 559 U.S. 356, 368–69 (2010).

While Mr. Harry complains *post hoc* that Mr. Samore did not explain that he could enter an open plea and that he did not understand the Government's weight of evidence against him, he concedes that Mr. Samore communicated all plea offers to him, taking him out of the purview of *Frye*. Beyond that, Mr. Harry admits that he understood the proceedings in his case, (Doc. 288 at 6:14 to 8:12; 14:22-25), that Mr. Samore informed him he would likely get convicted at trial and never told him to reject the plea and go to trial. (*Id.* at 25:6-12; 16:14 to 17:13). Given *Strickland's* strong presumption that counsel performs reasonably, Mr. Harry's bald allegation that Mr. Samore failed to advise him to make an open plea given the weight of evidence against him is insufficient to show that Mr. Samore's performance was deficient in light of the undisputed evidence that Mr. Harry understood Mr. Samore's explanation of the proceedings and his likelihood of conviction, and that Mr. Samore never advised him to reject a plea.

Even accepting Mr. Harry's allegations as true, Mr. Samore acted reasonably in not advising him to enter an open plea, because Mr. Harry did not wish to plead guilty to anything at all. Mr. Harry's *post hoc* complaint that he would have pled guilty had Mr. Samore explained the weight of the evidence against him is simply not credible, because, as discussed above, Mr. Harry conceded that Mr. Samore had informed him that he would most likely get convicted at trial.

Further, Mr. Harry agreed at trial that the parties had made diligent attempts at plea negotiations but could not reach a resolution, and maintained his innocence through sentencing.

In short, Mr. Harry has not demonstrated that Mr. Samore performed unreasonably by not advising him to plead guilty given the weight of the evidence against him, because he admits both that: (1) Mr. Samore had advised him that he would likely get convicted at trial, and (2) he did not wish to plead guilty "to anything" at the time.

**II.     Defendant suffered no prejudice as a result of his counsel's performance.**

Even if Mr. Harry could show that Mr. Samore's performance was deficient, he cannot show that he was prejudiced by this performance. In analyzing prejudice at the plea negotiations stage, the Court "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Ultimately, "[i]n the context of pleas, a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. To do so, a defendant must prove two factors: (1) "a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel;" and (2) "a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Frye*, 566 U.S. at 147. The second showing is "of particular importance because a defendant has no right to be offered a plea…nor a federal right that the judge accept it." *Id.* at 148 (citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977)).

*Frye's* companion case, *Lafler*, held that "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting

9

in a conviction on more serious charges or the imposition of a more severe sentence." 566 U.S. at 168. The defendant there proved prejudice because he had previously expressed acceptance of guilt and a willingness to accept the Government's plea offer, but because of defense counsel's erroneous legal advice, he proceeded to trial and received a much higher sentence. *Id.* at 174; *see also*, *Lee v. U.S.*, 137 S. Ct. at 1969 (finding that because the defendant's contention that he would not have accepted a plea but for counsel's deficient advice was "backed by substantial and uncontroverted evidence," he demonstrated prejudice). Two relevant considerations are involved at this stage: "a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions;" and "any information concerning the crime that was discovered after the plea offer was made." *Lafler*, 566 U.S. at 171-172

While the fact of a defendant's guilt does not foreclose his right to effective assistance of counsel, *id*. at 169, his steadfast contention of innocence throughout the criminal case strongly suggests that he would not have accepted an earlier plea offer for purposes of determining whether he suffered prejudice in a *Lafler/Frye* inquiry. In a case very similar to Mr. Harry's, a criminal defendant argued that his counsel was ineffective, in part, for "encouraging him to reject the state's offer." *Atkinson v. Schmidt*, 486 Fed. Appx. 713, 714 (10th Cir. 2012) (unpublished). In rejecting this argument, the Tenth Circuit distinguished the holding in *Lafler*, because although Atkinson suffered prejudice in receiving a greater sentence, he ultimately "acknowledged his sexual encounter with the victim, but contended before, during, and after trial that it was consensual." *Id.* at 716. In other words, because he had not expressed an earlier willingness to accept guilt, "Atkinson was unable to meet the 'but for' requirement that he would have accepted the plea," and therefore did not suffer prejudice. *Id*.

Similarly, in *Osley v. United States*, the Eleventh Circuit found that while the defendant's insistence of innocence both before and after trial was "not dispositive on the question of whether he would have accepted the government's plea offer," it made it more difficult to believe that he would have accepted a plea offer. 751 F.3d 1214, 1224-25 (11th Cir. 2014); *see also*, *Hill v. United States*, No. 1:10-CR-224-LSC-TMP, 2014 WL 6773045, at *3 (N.D. Ala. Dec. 2, 2014) ("In light of Hill's continued insistence before and after trial of his innocence, there is no 'reasonable probability' that he would have pled guilty had his attorney worked harder to secure an offer of a plea agreement."); *but see United States v. Scribner*, 832 F.3d 252, 260 (5th Cir. 2016) (reversing the district judge's finding that there was no reasonable probability that the defendant would have pled guilty based on the defendant's dogged insistence of innocence, because the magistrate judge, to whom the district judge deferred judgment as to credibility, determined that the defendant was credible when testifying that he believed he was guilty and would have so pled). Therefore, Osley did not meet his burden of establishing that he was prejudiced and his ineffective assistance claim was properly denied. 751 F.3d at 1225.

At least two other district courts have also concluded that a defendant's insistence of innocence throughout trial makes it less likely that he would have accepted a plea for purposes of establishing prejudice. In *United States v. Clark*, the court rejected the defendant's ineffective assistance claim based on his counsel's alleged failure to advise him about an open plea, because he could not prove by a reasonable probability that he would have accepted such a plea due to his continued insistence that he played a limited role in his charge of marijuana trafficking and was innocent of his cocaine and methamphetamine trafficking charges. No. 09-20119-08-JWL, 2015 WL 5822704, at *4 (D. Kan. Oct. 6, 2015), *appeal dismissed*, 650 F. App'x 569, 572-73 (10th Cir. 2016) (unpublished) (approving of the district court's "persuasive analysis" on the issue of

whether defendant's "trial counsel was ineffective for failing to explain that he could enter an open plea of guilty…and that he suffered prejudice because a plea would have reduced his offense level based on his acceptance of responsibility"), *cert. denied*, 137 S. Ct. 531 (2016). Likewise, in *Mann v. U.S.*, the district court rejected petitioner's argument that his counsel was ineffective for failing to advise him to make an open plea and thereby qualify him for a three-level credit for acceptance of responsibility under U.S.S.G. § 3E1.1, because the sentencing court had determined that he had not admitted all of the relevant conduct and therefore had not actually accepted responsibility. 66 F. Supp. 3d 728, 742 (E.D. Va. 2014).

For these same reasons, Mr. Harry cannot show that he would have entered an open plea but for Mr. Samore's alleged deficient conduct. He admitted during the evidentiary hearing that he rejected the Government's pleas because they "seemed like a lot of time," not because Mr. Samore told him not to accept them. Moreover, like *Atkinson*, Mr. Harry maintained his innocence throughout the proceedings by contending, even at sentencing and through his appeal, that the sex was consensual. His continuous (although at times contradictory) contention of consent undermines his argument that he would have pled guilty but for his counsel's advice. Indeed, the Court noted at sentencing that Mr. Harry had not come to terms with what had occurred and he did not express acceptance of responsibility in his letter to the court seeking to do just that. (Doc. 247 at 22:3-6). As the district courts found in *Clark* and *Mann*, Mr. Samore's failure to explain an open plea was not the 'but for' cause of Mr. Harry proceeding to trial and receiving a greater sentence, because Mr. Harry would not have otherwise pled guilty due to his dogged insistence of innocence.

In sum, the allegations in Mr. Harry's Petition do not meet either *Strickland* prong. Mr. Samore's alleged failure to advise Mr. Harry to plead guilty under an open plea was not

deficient, because he had communicated all pleas to Mr. Harry, fully advised Mr. Harry of his likelihood of conviction, and Mr. Harry nonetheless voluntarily chose not to plead guilty. Mr. Harry likewise has not met his burden of proving that he was prejudiced by Mr. Samore's alleged deficiencies, because his maintained innocence throughout the proceedings, including after trial, strongly indicates that he would not have accepted an open plea, even if he had been so advised.

## CONCLUSION

For the foregoing reasons, the undersigned proposes to find that Mr. Harry's Motion and the record conclusively establish that he is not entitled to the relief he seeks. Consequently, the undersigned recommends that the Court DISMISS Mr. Harry's claim WITH PREJUDICE.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**